**Hearing Date: January 31, 2006 at 10:00 a.m.,
Or Such Earlier Date as the Court May establish
Objection Deadline: Three Business Days Prior to Hearing Date at 4:00 p.m.**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Thomas J. Moloney (TM-9775)
Neil P. Forrest (NF-8162)
Jason P. Gottlieb (JG-8398)
*Attorneys for Inter Financial Services, Ltd.*

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 785-9700
Daniel M. Litt (DL-9227; admitted pro hac vice)
Paul B. Bran (PB-5659; admitted pro hac vice)
*Attorneys for Capital Management Select Fund Ltd.*

ANGEL & FRANKEL, P.C.
460 Park Avenue
New York, NY 10022-1906
(212) 752-8000
Joshua Angel (JA-3288)
*Attorneys for Global Management Worldwide Limited; Arbat Equity Arbitrage Fund Limited;
Russian Investors Securities Limited; and Garden Ring Fund Limited*

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
(212) 858-1000
Rick B. Antonoff (RA-4158)
*Attorneys for RB Securities Limited*

SHUTTS & BOWEN LLP
201 South Biscayne Boulevard
1500 Miami Center
(305) 379-9102
Robert Fracasso (RF-2538)
Peter E. Shapiro (PES-4795)

LARRY I. GLICK, P.C.
1305 Franklin Avenue, Suite 180
Garden City, New York 11530
(516) 739-1111
Larry I. Glick (LG-8665)
*Attorneys for GTC Bank Inc.; IDC Financial S.A.; Investment Development Finance Corp/II;*

*Investment & Development Finance Corp.; Oslo International S.A.; Alfredo Skinner–Klee and Alexandra Sol de Skinner-Klee; Ernesto Ruiz Sinibaldi; Christian Klose Pieters and Aida Margarita Rosales de Klose; Hibernia Invest & Finance S.A.; Ralph Hervarac Inc.; Ballery Holdings; Bilston International Inc.; Banco Reformador S.A.; Transcom Bank (Barbados) Ltd.; and Inversiones Sacramento S.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

| | |
|---|---|
| In re | Chapter 11 |
| REFCO INC. et al., | Case Nos. 05-60006 (RDD), et seq. |
| Debtor. | Jointly Administered |

------------------------------------------------------------------------ X

**MOTION TO CONVERT REFCO CAPITAL MARKETS, LTD.'S
CHAPTER 11 PROCEEDING TO A CHAPTER 7
STOCKBROKER LIQUIDATION UNDER SUBCHAPTER III**

The customers whose names appear on the list annexed hereto as Exhibit A, holding in the aggregate approximately $500 million in customer claims, and each a party in interest in the above-captioned case (together, the "Moving Customer Group"), hereby submit this motion (the "Conversion Motion") pursuant to Rules 1017(f), 2009, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to (i) convert the chapter 11 case captioned In re Refco Capital Markets, Ltd., 05-60018 (RDD), which is currently jointly administered with the chapter 11 cases of Refco, Inc. ("Refco") and 22 other subsidiaries thereof (the "Refco Debtors") under Case No. 05-60006 (RDD), to a stockbroker liquidation under sections 109(d) and 1112(b) and subchapter III, chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), and (ii) direct the appointment of an interim trustee for RCM, under Bankruptcy Code chapter 7, subchapter I.

## BACKGROUND

1.  Refco Capital Markets, Ltd. ("RCM") is a corporation organized under the laws of Bermuda but whose principal place of business at all relevant times was in New York. In fact, at all relevant times, RCM's presence in Bermuda was limited to a mailbox address and as a matter of its legal status as an International Business Corporation under Bermudan law, it was not permitted to engage in business in Bermuda. RCM had no employees, but relied on the services of the employees of other Refco entities, whose principal places of business were New York.

2.  On October 10, 2005, Refco announced to the public that it had discovered through an internal review a receivable owed to the Company by an entity controlled by Phillip R. Bennett, Chief Executive Officer and Chairman of the Board of Directors, in the amount of approximately $430 million. Refco further announced to the public that Mr. Bennett, who was then President and CEO of Refco and Refco Group, Ltd., LLC and a director of RCM, and Santo C. Maggio, President and CEO of Refco, LLC and RCM and also a director of RCM, had taken a leave of absence. Bennett was subsequently indicted by a federal grand jury.

3.  On October 13, 2005, Refco announced to the public that in light of recent events, it was unilaterally imposing a 15-day moratorium on all activities of RCM.

4.  On October 17, 2005, Refco and twenty-three of its direct and indirect subsidiaries, including RCM, filed their respective petitions for relief under chapter 11 of the Bankruptcy Code. The Court has entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules, providing for the joint administration of these cases and consolidation for procedural purposes only.

5. Post-filing, RCM has not resumed conducting business, and for a number of reasons, including as a result of the transfers and commitments made in connection with the Man Financial, Inc. acquisition, is incapable of any ongoing business.

6. RCM is a stockbroker (as defined by Bankruptcy Code § 101(53A)). In that connection, RCM has customers (as defined under Bankruptcy Code § 741(2)), and engaged in the business of effecting transactions in securities for the account of others or with members of the general public, from or for their customers' accounts. Based on disclosures by the Refco Debtors, RCM has approximately 3,000 customers.

7. Each member of the Moving Customer Group is a customer of RCM under Section 741(2) because each is (A) an entity with whom RCM has dealt as principal or agent and that has a claim against RCM on account of a security received, acquired, or held by RCM in the ordinary course of RCM's business as a stockbroker, from or for the securities account or accounts of each member of the Moving Customer Group and other customers (i) for safekeeping; (ii) with a view to sale; (iii) to cover a consummated sale; (iv) pursuant to a purchase; (v) as collateral under a security agreement; or (vi) for the purpose of effecting registration of transfer; and/or (B) an entity that has a claim against RCM arising out of (i) a sale or conversion of a security received, acquired, or held as specified above; or (ii) a deposit of cash, a security, or other property with RCM for the purpose of purchasing or selling a security.

8. On December 5, 2005, pursuant to Court order, the Refco Debtors posted on the www.refcodocket.com website certain "Form Agreements" RCM used in its business. These standard form agreements that RCM used in the ordinary course of its business demonstrate that it was a stockbroker. Attached hereto is a selected group of such documents, including the Standard Instructions for Opening an Account for a Corporate Applicant (Exhibit

B), an Account Application for an entity (Exhibit C), an individual (Exhibit D), and a partnership/investment club (Exhibit E), a New Account Worksheet (Exhibit F), a letter to customers notifying the customer of payment of finder fees based on the "commissions, markups, clearing or other fees, or financing charges RCM earns in connection with [introduced] account activity" (Exhibit G), a Limited Trading Authorization for RCM to engage in securities trading for an accountholder (Exhibit H), and a standard form of trade confirmation (Exhibit I).

9. Also included among those form agreements is RCM's "Customer Agreement – Securities Account" (annexed hereto as Exhibit J) (the "Customer Agreement") that is substantially identical in form to the agreements RCM and Refco Securities, LLC entered into with members of the Moving Customer Group and other customers. That Customer Agreement established a stockbroker-customer relationship between RCM and its customers. It provides in the first numbered paragraph that the customer "hereby authorize[s] Refco to purchase, sell, borrow, lend, pledge or otherwise transfer Financial Instruments (including any interest therein) for your account in accordance with your oral or written instructions." Exhibit J. ("Financial Instruments" is defined in the Customer Agreement as "including, without limitation, securities, instruments, and all derivatives thereon." Id.)

10. Members of the Moving Customer Group have been parties to, and have engaged in securities transactions pursuant to, such Customer Agreements with RCM since (inter alia) August 2001 for Inter Financial Services, Ltd. ("IFS"), since June 2004 for Capital Management Select Fund, Ltd. ("CMSF"), since July 1999 for RB Securities Limited ("RBS"), and prior to the petition date for the other members of the Moving Customer Group. For each of these customers, RCM provided directly (and/or made available via the internet) customer account statements reflecting their holdings.

11. RCM dealt with its clients as "customers" and is currently holding assets constituting "customer property" (within the meaning of Bankruptcy Code § 741(4)) that were in the accounts of the Moving Customer Group. The Refco Debtors implicitly acknowledged these facts in an October 27, 2005 letter from the then-President and CEO of Refco entitled "To Our Valued Customers," which was sent to each member of the Moving Customer Group (and many others). (That letter is annexed hereto as Exhibit K.) In the letter, Refco informed RCM customers that with respect to their "accounts," the timetable for returning funds to customers would be determined by the Bankruptcy Court.

12. However, RCM's October 27 letter did not disclose that RCM no longer had sufficient customer property in its possession to return to RCM customers all the customer property once held in the customers' accounts. That disclosure did not occur until December 5, 2005, when the Refco Debtors made a Court-ordered disclosure (annexed hereto as Exhibit L) in which it was acknowledged that RCM held approximately $1.905 billion in assets, against which there were customer claims of approximately $3.675 billion – a shortfall of approximately $1.77 billion.

13. According to disclosures made to specific customers regarding the "coverage ratios" in their individual accounts (also made on December 5, 2005 pursuant to Court order), the shortfall did not affect customers equally. For some customers, including some of those in the Moving Customer Group, RCM asserted that it has retained only a small portion of the customer property listed in their respective customer accounts. For other customers, RCM continued to hold a greater percentage of the securities. Whether a customer falls into one category or the other is totally arbitrary and is unrelated to such customer's actions or legal relationship with RCM.

14. The December 5 Court-ordered disclosure also revealed that the majority of RCM's assets are intercompany claims to customer property, including claims against Refco Global Finance Ltd. and Refco Group Ltd., LLC that as of September 30, 2005 were $2.151 billion and $608 million respectively. On information and belief, neither Refco Global Finance Ltd. nor Refco Group Ltd., LLC are operating entities.

15. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this proceeding is proper under 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**RELIEF REQUESTED**

16. The Moving Customer Group seeks an Order converting this chapter 11 proceeding to a chapter 7 subchapter III stockbroker liquidation pursuant to Bankruptcy Code §§ 1112(b), 109(d), and 741 et seq. In accordance with Bankruptcy Code § 1112(b), there is "cause" for the conversion of RCM's case to a case under chapter 7 and the appointment of a chapter 7 Trustee.[1] See In re G.I.C. Gov't Sec's, Inc., 56 B.R. 105, 106 (Bankr. M.D. Fla. 1985) (involving conversion from chapter 11 proceeding to chapter 7 stockbroker liquidation); see also Varon v. Trimble, Marshall & Goldman, P.C. (In re Euro-Swiss Int'l Corp.), 33 B.R. 872, 876-77 (Bankr. S.D.N.Y. 1983) (case converted from chapter 11 proceeding to chapter 7 commodities broker liquidation because Debtor was ineligible for chapter 11 relief under Bankruptcy Code §109(d)).

---

[1] Under Bankruptcy Code § 1112(b), "on request of a party in interest … and after notice and a hearing … the court shall convert a case under this chapter to a case under chapter 7 … if the movant establishes cause." Section 1112(b) "was designed to weed out inappropriate chapter 11 cases at the earliest possible stage." Collier's on Bankruptcy ¶ 1112.04[2].

7

17. "Cause" exists here because RCM was and is ineligible to be a chapter 11 debtor.[2] Under Bankruptcy Code § 109(d), a stockbroker cannot be a chapter 11 Debtor, and the sole means by which its estate can be administered under the Bankruptcy Code is through the provisions of subchapter III of chapter 7: "[o]nly a person that may be a debtor under chapter 7 of this title **(except a stockbroker or a commodities broker)** … may be a debtor under chapter 11 of this title." (Emphasis added.) RCM is now, and was at the time it filed its voluntary petition, a stockbroker, with thousands of customers.

18. Stockbrokers and commodity brokers can be liquidated only through a chapter 7 liquidation, "and cannot be debtors under chapter 11," because of the "special customer protection deemed necessary in cases involving stockbrokers and commodity brokers":

> Because these complex protective provisions are deemed essential, but are at the same time impossible to incorporate into chapter 11, stockbrokers and commodity brokers are limited to chapter 7 liquidation, under the special subchapters provided, and cannot be debtors under chapter 11.

Collier's on Bankruptcy ¶ 109.05[2] (2005).

19. As an insolvent stockbroker that is unable to meet its obligations or pay its debts as they become due and that does not qualify to be a debtor under chapter 11, RCM should be a debtor in a chapter 7 subchapter III liquidation proceeding. A chapter 7 stockbroker liquidation is necessary and appropriate so that all customers of RCM can be treated equally and can obtain the Congressionally mandated priority treatment with respect to customer property under Bankruptcy Code § 752 and other protections provided to customers under subchapter III

---

[2] A number of the non-exclusive examples of "cause" in § 1112(b)(4) would also be applicable here, but there is no need to address them because of the threshold ineligibility of RCM as a stockbroker to be a debtor under chapter 11. See In re Larmar Estates, Inc., 6 B.R. 933, 936 & n.2 (E.D.N.Y. 1980) ("In determining what constitutes cause for dismissing or converting a Chapter 11 case, the Court is not limited to those grounds enumerated in Section 1112(b). The Legislative history makes this abundantly clear."), citing House Report No. 95-595, 95th Cong., 1st Sess. 405-06 (1977) reprinted in 1978 U.S. Code Cong. and Ad. News pp. 5963, 6362.

of chapter 7. These include, <u>inter alia</u>, Section 747 (subordination of insider and other claims), Section 748 (reduction of securities to money to reduce market risks), and Section 749 (avoidance of certain transfers and treating such property as customer property).[3]

## A SEPARATE TRUSTEE MUST BE APPOINTED FOR RCM

20. Finally, regardless of whether a chapter 11 Trustee is appointed for any of the other Refco entities, there is a substantial need for a separate Trustee for RCM. RCM has a unique interest because, <u>inter alia</u>, it appears, based on the reported intercompany obligations owed to RCM, that its customer property was transferred to other debtors prior to RCM's chapter 11 filing, and based on the report made to the Court at the hearing on December 8, RCM's transfers of customer property have persisted even after the filing of RCM's petition, when such transfers clearly violated Bankruptcy Code § 549.

21. Importantly, another form agreement posted by the Debtors (annexed hereto as Exhibit M) may indicate that as a matter of the ordinary course of business, the Refco Debtors and non-debtor affiliates entered cross-affiliate netting agreements. As a result of such agreements or practices, certain customer property in RCM's possession, custody, or control may have been used to satisfy the obligations between other Refco Debtors and/or non-debtor affiliates, including the so-called regulated entities. Additionally, the likelihood that the closeout of Refco accounts by other entities might disproportionately affect RCM may have been increased by the fact that the RCM "moratorium" was declared four days before the chapter 11 filings by the various Refco entities. It is unclear who, if anyone, would have been looking out for the interests of RCM and its customers when these decisions were made.

---

[3]  Indeed, the very purpose of the stockbroker liquidation provisions is to provide a clear and equitable manner of distributing the assets of the debtor's estate. <u>See</u> <u>Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)</u>, 106 F.3d 1255, 1261 (6th Cir. 1997), <u>citing</u> <u>SEC v. Alan F. Hughes, Inc.</u>, 461 F.2d 974, 977 (2d Cir. 1972).

22.	A single Trustee for RCM and the other Refco Debtors cannot carry out the required fiduciary obligations to investigate, pursue claims, and recover customer property and other assets for RCM and the thousands of RCM customers from nearly all of the other Refco Debtors and non-debtor affiliates.  Under these unique circumstances, a Trustee appointed for RCM and the other Refco Debtors would undoubtedly have impermissible conflicts under Bankruptcy Rule 2009(d).[4]  Any such appointment would also lead to unnecessary inconvenience and expense, because the Moving Customer Group (and presumably others) would immediately seek to disqualify such a Trustee and/or exercise their voting rights under Bankruptcy Rule 2009(b) to replace any such Trustee, to ensure that RCM is controlled by an independent fiduciary that has not existed since RCM's case began.

## WAIVER OF MEMORANDUM OF LAW

23.	Because the legal points and authorities upon which this Motion relies are incorporated herein, the Moving Customer Group respectfully requests that the requirement of service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied by the motion.

24.	No prior request has been made to this or any Court for the relief requested herein.

WHEREFORE, based on the foregoing, the Moving Customer Group respectfully requests that the Court enter an order (substantially in the form set forth in the proposed order attached hereto) (i) converting the chapter 11 case captioned In re Refco Capital Markets, Ltd., 05-60018 (RDD) to a chapter 7, subchapter III stockbroker liquidation under Bankruptcy Code

---

[4]	That Rule provides in pertinent part that "[o]n a showing that creditors … will be prejudiced by conflicts of interest of a common trustee who has been elected or appointed, the court shall order the selection of separate trustees for estates being jointly administered."

§§ 741 et seq., (ii) directing the appointment of an interim trustee for RCM, under Bankruptcy Code chapter 7, subchapter I; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: December 12, 2005

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        By:   /s/ Thomas J. Moloney
            Thomas J. Moloney (TM-9775)
            Neil P. Forrest (NF-8162)
            Jason P. Gottlieb (JG-8398)
            One Liberty Plaza
            New York, New York 10006-1470
            (212) 225-2000
            *Attorneys for Inter Financial Services, Ltd.*


        DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

        By:   /s/ Daniel M. Litt
            Daniel M. Litt (DL-9227; admitted pro hac vice)
            Paul B. Bran (PB-5659; admitted pro hac vice)
            2101 L Street, N.W.
            Washington, D.C. 20037
            (202) 785-9700
            *Attorneys for Capital Management Select Fund Ltd.*


        ANGEL & FRANKEL, P.C.

        By:   /s/ Joshua Angel
            Joshua Angel (JA-3288)
            460 Park Avenue
            New York, NY 10022-1906
            (212) 752-8000
            *Attorneys for Global Management Worldwide Limited; Arbat Equity Arbitrage Fund Limited; Russian Investors Securities Limited; and Garden Ring Fund Limited*

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:    /s/ Rick B. Antonoff
      Rick B. Antonoff (RA-4158)
      Karen B. Dine
      Erica Edman Carrig
      1540 Broadway
      New York, New York 10036
      (212) 858-1000
      *Attorneys for RB Securities Limited*


SHUTTS & BOWEN LLP

By:    /s/ Larry I. Glick
      Robert Fracasso (RF-2538)
      Peter E. Shapiro (PES-4795)
      201 South Biscayne Boulevard
      1500 Miami Center
      (305) 379-9102

      LARRY I. GLICK, P.C.
      Larry I. Glick (LG-8665)
      1305 Franklin Avenue, Suite 180
      Garden City, New York 11530
      (516) 739-1111

      *Attorneys for GTC Bank Inc.; IDC Financial S.A.; Investment Development Finance Corp/II; Investment & Development Finance Corp.; Oslo International S.A.; Alfredo Skinner–Klee and Alexandra Sol de Skinner-Klee; Ernesto Ruiz Sinibaldi; Christian Klose Pieters and Aida Margarita Rosales de Klose; Hibernia Invest & Finance S.A.; Ralph Hervarac Inc.; Ballery Holdings; Bilston International Inc.; Banco Reformador S.A.; Transcom Bank (Barbados) Ltd.; and Inversiones Sacramento S.A.*