UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:                                    :        Chapter 11
                                          :
          REFCO INC., et al.,             :        Case No. 05-60006 (RDD)
                                          :
                    Debtors               :        (Jointly Administered)
-----------------------------------------------------x

Appearances:

MILBANK, TWEED, HADLEY & McCLOY, by Luc. A. Despins, Esq., for the Official
Committee of Unsecured Creditors of Refco Inc. and affiliated debtors.

STROOCK, STROOCK & LAVAN LLP, by Michael J. Sage, for the *Ad Hoc* Committee
of Senior Subordinated Noteholders

### MEMORANDUM OF DECISION ON OFFICIAL COMMITTEE'S MOTION FOR AN ORDER REGARDING ACCESS TO INFORMATION UNDER 11 U.S.C. § 1102(b)(3)(A)

ROBERT D. DRAIN, United States Bankruptcy Judge:

Soon after its appointment, the Official Committee of Unsecured Creditors

(the "Committee") filed a motion to clarify its obligation under section 1102(b)(3)(A) of

the Bankruptcy Code to provide unsecured creditors who are not members of the

Committee with access to information.  Recently enacted as part of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat.

23 (2005) ("BAPCPA"), section 1102(b)(3) states:

> A committee appointed under subsection (a) shall – (A) provide access to
> information for creditors who – (i) hold claims of the kind represented by
> that committee; and (ii) are not appointed to the committee; and (B) solicit
> and receive comments from the creditors described in subparagraph (A);
> and (C) be subject to a court order that compels any additional report or
> disclosure to be made to the creditors described in subparagraph (A).

11 U.S.C. § 1102(b)(3).

BAPCPA does not define the "information" that section 1102(b)(3)(A) requires an official creditors' committee to make available to its constituency (for example, whether it includes information obtained in confidence) or state how it is to be delivered (for example, whether to all unsecured creditors at once, or upon individual creditors' demand), but its language permits a broad construction.[1]  The Committee's motion was based on the fear that section 1102(b)(3)(A) might be interpreted to impose an obligation contrary to other applicable laws and the Committee's fiduciary duties and hamper the Committee's performance under section 1103 of the Bankruptcy Code.

Notwithstanding the possibility of such a broad construction, the Court's first inclination, particularly given the review process contemplated by section 1102(b)(3)(C), the absence from the statute of any adverse consequences for an initial failure to comply, and the qualified immunity accorded official committees and their professionals,[2] was to deny the motion as not raising a case or controversy.  Until a creditor contended that the Committee was being too stingy with information, the Committee could be left to make reasonable efforts to provide access to relevant information consistent with its resources and any conflicting duties.

This is, however, a large and rapidly moving case, and meaningful information may become stale before the completion of litigation over whether and how

---

[1] The legislative history of section 1102(b)(3) does not provide meaningful guidance regarding the type of information to which access must be given, the manner in which it should be communicated or whether an official creditors' committee faces any sanction, other than being subject to a court order compelling the provision of additional information, if the committee's view of the proper scope and means of delivering access to information is too narrow.  The House Report states merely, "Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition, the committee must solicit and receive comments from these creditors and, pursuant to court order, make additional reports or disclosures available to them." H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005).

[2] *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994).

it should be provided.  Moreover, it appears that the Committee's motion did not arise in

a vacuum; unsecured creditors apparently were pressing for information in ways that

raised issues neither expressly addressed by the statute nor, given the section's recent

enactment, the case law.  Under the circumstances, therefore, the Committee's request to

establish parameters for the provision of information under section 1102(b)(3)(A) of the

Bankruptcy Code was appropriate, although, as the law develops, the need for comfort

orders should end.

### Background

Refco, Inc. ("Refco") and its direct and indirect subsidiaries were

providers of execution and clearing services for exchange-traded derivatives and prime

brokerage services in the fixed income and foreign exchange markets.  In 2004, they were

the largest providers of customer transaction volume to the Chicago Mercantile

Exchange, the largest derivatives exchange in the United States.

On October 10, 2005, Refco disclosed that an entity owned by Refco's

CEO and Chairman, Phillip R. Bennett, owed Refco entities approximately $430 million,

and soon Mr. Bennett was arrested and charged with various crimes, including securities

fraud in connection with Refco's initial public offering, which had occurred only two

months earlier.[3]  This news precipitated a crisis of customer confidence in Refco and its

various subsidiaries, which in turn led Refco to impose a moratorium on withdrawals

from its largest unregulated subsidiary, Refco Capital Management, Inc. ("RCM"), and

the filing of voluntary chapter 11 petitions on October 17, 2005 by Refco, RCM and

twenty-two related entities.

---

[3] In addition to Refco's publicly held stock, Refco and several of its subsidiaries have issued or guarantied a large amount of public debt.

Under a new Chief Executive Officer, Refco immediately sought to sell its largest asset, its regulated futures business, on an expedited basis to prevent further erosion of value and satisfy regulators.  At the same time, Refco pursued the sale of other substantial assets and attempted to address the demands of numerous RCM customers to the immediate return of money and securities in which they claimed an interest, while other parties in interest contended that such property was, instead, property of RCM's chapter 11 estate, available to pay all unsecured creditors.

The Committee was appointed on October 28, 2005 and promptly turned its attention to these pressing issues, working closely with the Debtors and their professionals -- particularly on the proposed sales of the regulated futures business and other assets, which involved the exchange of significant confidential information regarding the businesses proposed to be sold, strategies for negotiating with competing bidders and the evaluation of competing bids.  In large part because of this cooperative approach, the regulated futures business was successfully sold.  On its own, but with information provided by the Debtors, the Committee also analyzed the issues raised by RCM's customers' claims to money and securities.  And it also began to investigate the events that precipitated the chapter 11 filings, which entailed a more circumspect approach to information-sharing with the Debtors and others (indeed, the Court granted the Committee's motion for discovery under Bankruptcy Rule 2004 only after the imposition of certain confidentiality requirements in the light of, among other things, an ongoing criminal investigation).

Thus, in the early days of the chapter 11 cases the Committee was engaged in tasks that required it to exchange confidential information with the Debtors and other

parties, develop factual and legal analyses of significant inter-creditor issues, and pursue

an investigation on a confidential basis.  The Committee believed that the premature,

unguarded or selective disclosure of information obtained in performing these tasks not

only could jeopardize the Committee's desired result in each instance, but also might

violate the securities laws (given Refco's public stock and debt) or violate a Court order

(in the case of information obtained pursuant to the Rule 2004 order).

It is not particularly surprising, then, that the Committee moved three days

after its appointment for approval of a protocol for complying with section

1102(b)(3)(A).  On an interim basis it sought an order providing that it was not required

in the first instance to divulge any (i) confidential, proprietary, non-public information

concerning the Debtors or (ii) any other information if the effect of such disclosure would

constitute a waiver of the attorney-client or other privilege of the Committee.  With

minor changes, the Court entered the interim order, which also required the Debtors to

assist the Committee by identifying the proprietary or non-public nature of any

information given to the Committee, pending a final hearing.

The Committee's motion received one response, by an *ad hoc* committee

of holders of approximately $487 million of senior subordinated notes and bank debt.

The *ad hoc* committee's primary objections focused on the circumstances under which

the Committee could be forced to provide access to confidential information if the

requesting party was prepared to agree to certain confidentiality constraints, as well as on

the Committee's proposed schedule for resolving disputes regarding whether particular

information should be disclosed.  Without accusing the Committee of any dereliction of

duty, the *ad hoc* committee asserted that because the interests of the *ad hoc* committee

were under-represented on the Committee, the Committee might not use certain

information (for example, information related to the RCM customer dispute) in an even-

handed way.

With additional input by Refco and the United States Trustee, however,

the objection was ultimately resolved by the final form of Order Regarding Creditor

Access to Information, which is attached as Exhibit A.

### Discussion

Notwithstanding the statute's ambiguity and unhelpful legislative history,

there are sources for construing the Committee's obligation to provide "access to

information" under Bankruptcy Code section 1102(b)(3)(A).  First, the Code has long

contained a similar requirement for bankruptcy trustees.  Bankruptcy Code section

704(7), which applies under 11 U.S.C. §§ 1106(a)(1) and 1107(a) to chapter 11 trustees

and debtors in possession, respectively, states that a "trustee shall . . . unless the court

orders otherwise, furnish such information concerning the estate and the estate's

administration as is requested by a party in interest."

The facial differences between Bankruptcy Code sections 704(7) and

1102(b)(3) do not appear to be material.  Under section 704(7), information shall be

furnished only upon a party's request, whereas section 1102(b)(3)(A) may envision a

committee's volunteering information or at least establishing a mechanism for unsecured

creditors to obtain it.  Arguably the right to court review also is more explicit in section

704(7) than in section 1102(b)(3)(C).  On the other hand, each section contemplates that

the bankruptcy court shall resolve disputes over whether information should be shared.

Once that fact is recognized, the two provisions do not differ in practical terms, as long as

court resolution is sought on a timely basis. (For the same reason, a committee's good

faith decision not to volunteer information under section 1102(b)(3)(A) also may not be

of practical consequence: ultimately the issue would come down to the Court's decision

whether to compel the information's release under section 1102(b)(3)(C)). In addition,

the information to be provided under section 704(7) is limited to "information concerning

the estate and the estate's administration," while section 1102(b)(3)(A) refers perhaps

more broadly to "information." However, the Code's definition of "estate" is itself so

broad[4] that it is hard to see how section 704(7)'s requirement generally would be any

more limited in practical terms that section 1102(b)(3)(A)'s reference to "information."[5]

Thus cases construing section 704(7) may be applied by analogy to section 1102(b)(3).

Authorities interpreting Bankruptcy Code section 704(7) stand for three

propositions relevant to the scope of a committee's obligation under section 1102(b)(3).

First, a trustee's duty under section 704(7)

> is fairly extensive, as § 704(7) places the burden of providing requested
> information on the trustee, and reflects the overriding duty to keep
> parties in interest informed. Courts have interpreted the trustee's
> responsibilities broadly, making a request for information difficult for
> the trustee to avoid, in the absence of a court order to the contrary.

*Pineiro v. Pension Benefit Guaranty Corporation*, 318 F. Supp. 2d 67, 102 (S.D.N.Y.

2003) (internal citations and quotations omitted). *See also In re Robert Landau Assocs.,*

*Inc.*, 50 B.R. 670, 677 (Bankr. S.D.N.Y. 1985) ("The policy of open inspection,

established in the Code itself through section 704(7) and F.R.B.P. 5005 and 5007, is

---

[4] *See* 11 U.S.C. § 541(a).

[5] *But see In re Walters*, 136 B.R. 256, 258 (Bankr. C.D. Cal. 1992), in which the court found that
information pertaining to the trustee's investigation of claims against debtor's wife was not covered by the
plain meaning of section 704(7), because, after the estate's claims against the wife were settled, such
information did not relate to the status of the trustee's pursuit or administration of estate property.

fundamental to the operation of the bankruptcy system and is the best means of avoiding

any suggestion of impropriety that might or could be raised.") (internal citation and

quotation omitted); *In re Sports Accessories, Inc.*, 34 B.R. 80, 82 (Bankr. D. Md. 1983)

(discussing importance of trustee's duty to disclose).

Second, the duty to provide information under section 704(7) is not

unlimited, however, as is made clear by the section's introductory clause. *Robert

Landau*, 50 B.R. at 675; *Speleos v. McCarthy*, 201 B.R. 325, 328 (D. D.C. 1996).  In

particular, a trustee may obtain a protective order against disclosure of information under

section 704(7) if disclosure would result in waiver the attorney-client privilege, *In re Lee

Way Holding Co.*, 120 B.R. 881, 908 (Bankr. S.D. Ohio 1990), or of information that is

proprietary and confidential.  *In re Grabill Corp.*, 109 B.R. 329, 333 (N.D. Ill. 1989); *see

also* 6 *Collier on Bankruptcy* ¶ 704.11 (15th ed. 2005), at 704-23 (noting that section 107

of the Bankruptcy Code must also be kept in mind when considering a trustee's duty to

furnish information).[6]

Third, a trustee's right to a protective order under section 704(7) is

informed by the trustee's fiduciary duties, because the requirement to disclose

information under section 704(7) derives from a trustee's fiduciary duty to creditors and

the estate.  *In re Scott*, 172 F.3d 959, 967 (7th Cir. 1999); *In re Modern Office Supply,

Inc.*, 28 B.R. 943, 944 (Bankr. W.D. Okla. 1983).  If the request for such an order is not

also in furtherance of those duties, but is, rather, designed to obtain an undue advantage

over a party in interest, it should be denied.  *Robert Landau*, 50 B.R. at 677.  To override

---

[6]   Bankruptcy Code section 107(a) provides for public access to all papers filed in a bankruptcy case, but
subjects such access to the right to obtain an order preventing the disclosure of trade secrets, confidential
research, development, or commercial information; protecting a person with respect to disclosure of
scandalous or defamatory matter; and protecting individuals from disclosure of means of identification that
would create undue risk of identity theft or other unlawful injury. 11 U.S.C. § 107(b), (c).

the duty to disclose, a trustee should point to a countervailing fiduciary duty, such as to

protect creditors and the estate from a particular harm, whose performance is more

important than avoiding the harm resulting from withholding the information in question.

*See generally Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970), *cert.*

*denied*, 401 U.S. 974 (1971) (attorney-client privilege may be asserted by corporation

against those for whom it acts as fiduciary, subject to right of such beneficiaries to show

cause why it should not be invoked in the particular instance).

Each of these aspects of section 704(7) should also apply to a creditor's

committee's analogous obligation to provide access to information under Bankruptcy

Code section 1102(b)(3)(A).

There also were provisions similar to section 1102(b)(3)(A) under the

Bankruptcy Act of 1898.  Section 339(1) of the Act listed the functions that a creditors

committee appointed under Chapter XI could perform, including "(d) to report to the

creditors from time to time concerning the progress of the proceeding;" and under

Bankruptcy Act Rule 11-29, which was derived from section 339(1) of the Act, 14

*Collier on Bankruptcy* ¶ 11-29.02 (14th ed. 1982) at 11-29-3, one of the functions of an

official committee was to "advise the creditors of its recommendations with respect to the

proposed plan [and] report to the creditors concerning the progress of the case. . . ."

Bankruptcy Act Rule 11-29(a).

The case law and commentary concerning this information-provision role

is very scant.  One court, however, construed Bankruptcy Act Rule 11-29(a) in affirming

a bankruptcy court's confirmation of a Chapter XI plan over the objection that

acceptances of the plan were not solicited in good faith.  *In re Gilchrist Co.*, 410 F. Supp.

1070 (E.D. Pa. 1976). The appellants contended that although the committee had circulated a letter recommending the plan, it had improperly kept creditors in the dark about several material facts, such as the debtor's receipt of a tax abatement and rent reduction, the existence of additional proofs of claim and potential fraudulent transfer recoveries, and the opposition of four members of the creditors committee to the plan followed by two members' resignation. *Id.* at 1076-77. The court determined, however, expressly notwithstanding Rule 11-29(a), that "It is clear that the Creditors' Committee is not required to forward to each creditor all of the raw data it receives and considers in the process of carrying out its duties." *Id.* at 1078. Instead, the committee had to provide "a fair presentation of the status of the Debtor." *Id.* Finding no support for the appellants' argument that the committee had made material omissions or otherwise acted improperly, such as acting collusively with the debtor, the court found that the plan was solicited and accepted in good faith. *Id.*

The *Gilchrist* court's statement that a committee should not have to "forward all of the raw data it receives and considers," as if it were a virtual information bank for its constituents, would appear to apply with equal logic to Bankruptcy Code section 1102(b)(3)(A), although courts may differ about what constitutes a material development in the case and, therefore, a material disclosure omission in the context of a committee solicitation letter or otherwise.

Last, the proper scope of section 1102(b)(3)(A) may be analyzed in the light of the duties and functions of a creditors committee under the Bankruptcy Code and by analogy to several pre-BAPCPA decisions that have considered committee confidentiality restrictions in the context of such duties and functions.

"An official committee of creditors plays a pivotal role in the bankruptcy process. The function of an official creditors committee is to aid, assist and monitor the debtor to ensure that the unsecured creditors' views are heard and their interests promoted and protected." *Pan Am Corp. v. Delta Airlines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994) (citations omitted). Official committees have diverse duties: they are the primary negotiating bodies for a chapter 11 plan; they also provide supervision of the debtor and execute an oversight function; they may investigate the debtor's assets and affairs; and they may perform such other services as are in the interest of the unsecured creditor body. *Johns-Manville Sales Corp. v. Doan* (*In re Johns-Manville Corp.*), 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983); *see also* 11 U.S.C. §§ 1103(c) (stating tasks an official committee may undertake) and 1109(b) (stating that an official creditors committee "may raise and may appear and be heard on any issue" in a chapter 11 case).[7] Broadly speaking,

> The creditors' committee is not merely a conduit through whom the debtor speaks to and negotiates with creditors generally. On the contrary, it is purposely intended to represent the necessarily different interests and concerns of the creditors it represents. It must necessarily be adversarial in a sense, though its relation with the debtor may be supportive and friendly. There is simply no other entity established by the Code to guard those interests. The committee as the sum of its members is not intended to be merely an arbiter but a partisan which will aid, assist, and monitor the debtor pursuant to its own self-interest.

*In re Daig Corp.*, 17 B.R. 41, 43 (Bankr. D. Minn. 1981).

---

[7] Because any transaction not in the ordinary course of the debtor's business requires notice and the opportunity for a hearing, 11 U.S.C. § 363(b), an official committee may consider and challenge virtually everything important that a debtor undertakes. Under section 1109(b), official committees have the right to intervene in adversary proceedings. *Term Loan Holder Comm. v. Ozer Group, L.L.C.* (*In re Caldor Corp.*), 303 F.3d 161, 175 (2d Cir. 2002); *Adelphia Communications Corp. v. Rigis* (*In re Adelphia Communications Corp.*), 285 B.R. 848, 850-51 (Bankr. S.D.N.Y. 2002)

It is well recognized that, to fulfill these roles, the members of an official committee owe a fiduciary duty to their constituents -- in the case of an official creditors committee, to all of the debtor's unsecured creditors.  *The Bohack Corp. v. Gulf & Western Indus., Inc.* (*In re Bohack Corp.*), 607 F.2d 258, 262 n. 4 (2d Cir. 1979); *see also Pan Am*, 175 B.R. at 514; *Rickel & Associates v. Smith* (*In re Rickel & Associates*), 272 B.R. 74, 99 (Bankr. S.D.N.Y. 2002); *Johns-Manville,* 26 B.R. at 925 (noting, "In the case of reorganization committees, these fiduciary duties are crucial because of the importance of committees.").

In addition, under certain circumstances, an official creditors committee may be authorized by the bankruptcy court to act not only on behalf of the unsecured creditor body but also as a fiduciary on behalf of the debtor's estate.  *Commodore Int'l Ltd. v Gould* (*In re Commodore Int'l Ltd.*), 262 F.3d 96, 100 (2d Cir. 2001) (authorizing official committee to pursue fraudulent transfer avoidance litigation for the benefit of the chapter 11 estate).

It is important to keep these functions in mind when sorting out the circumstances under which a creditors committee should not be required to make information available to its constituents.  For example, in performing its oversight and negotiation function, a committee acts as the voice of all of the unsecured creditors, many of whom lack the resources to speak for themselves and all of whom benefit from the representative role played by the committee.  *See* 4 *Norton Bankr. L. & Prac*. § 78.1 (2d ed. 2004).  This means that committee members should and will receive commercially sensitive or proprietary information from the debtor and other parties (including each other, because plan negotiations are as often conducted between unsecured creditor

groups as between the unsecured creditors and the debtor), often in the context of settlement discussions. It has frequently been held that committee members' fiduciary duties of loyalty and care to the unsecured creditor body require such information to be held in confidence. Otherwise, communications between the committee and third parties and among committee members themselves would be improperly curtailed, or the debtor might be harmed with a resulting decline in the creditors' recovery. *See In re Swolksy*, 55 B.R. 144, 146 (Bankr. N.D. Ohio 1985); *In re Johns-Manville*, 26 B.R. at 926; *Daig,* 17 B.R. at 42; *see also 7 Collier on Bankruptcy* ¶ 1103.05[2][a] at 1103-30.

When the debtor has public stock or debt, moreover, the securities laws may preclude the debtor from disclosing material non-public information on a selective basis to committee members absent a binding confidentiality agreement. *See, e.g.,* SEC Regulation FD (17 C.F.R. § 243.100). In addition, a committee's selective disclosure of material non-public information that it has developed on its own (including the results of inter-creditor negotiations and its own investigations) may raise similar issues, although the underlying concern would not be a breach of the securities laws as much as a breach of members' fiduciary duties of loyalty and care to all unsecured creditors by profiting from, or enabling selected creditors to profit from, non-public information obtained as a result of committee membership. *See In re Federated Dep't Stores*, 1991 WL 79143 (Bankr. S.D. Ohio 1991) (recognizing ability of creditors committee members to trade in the debtor's securities, subject to applicable securities laws, *provided* that such members institute procedures for screening personnel engaged in trading from personnel involved in committee work); *see also In re Spiegel*, 292 B.R. 748, 750-51 (Bankr. S.D.N.Y. 2003), in which the court discussed its concerns regarding committee members' trading

in the debtor's securities even if information blocking procedures were to be adopted. If

a committee member's use of non-public information for trading without an appropriate

information wall breaches its fiduciary duties of care and loyalty to unsecured creditors,

one can readily see the mischief that might arise by construing section 1102(b)(3) to

require the unfettered release of such information to other, perhaps friendly, parties who

are engaged in such trading, particularly given today's enormous market in distressed

debt securities and claims.[8]  The selective possession of material information can equate

to very large swings in value and, therefore, creditors may seek such information not for

legitimate purposes related to their position in the case but, rather, to obtain an unfair

trading edge.

Maintaining the parties' reasonable expectations of confidentiality,

therefore, is often critical to a committee's performance of its oversight and negotiation

functions, compliance with applicable securities laws, and the proper exercise of

committee members' fiduciary duties.

Maintaining confidentiality against unsecured creditors generally also may

be necessary to preserve a committee's attorney-client privilege.  That privilege clearly

can be enforced against those who are not represented by the committee or who are

standing in an adversarial relationship to the unsecured creditors as a group.  *In re*

*Subpoena Duces Tecum*, 978 F.2d 1159, 1161 (9th Cir. 1992); *In re Baldwin-United*

*Corp.*, 38 B.R. 802, 804-5 (Bankr. S.D. Ohio 1984); 7 *Collier on Bankruptcy* ¶

1103.03[8] at 1103-17 ("When a committee is engaged in litigation with a third party,

there is no doubt that the attorney-client privilege is applicable to shield communications

---

[8] *See* Drain and Schwartz, *Are Bankruptcy Claims Subject to the Federal Securities Laws?*, 10 AM. BANKR. INST. L. REV. 569, 569 n. 1 (2002) (noting reasonableness of multi-billion dollar estimates of distressed debt market).

between the committee and its counsel relating to the litigation.  The privilege ought also

to be available for communications relating to strategy in the case *vis-à-vis* the debtor and

third parties.  This should be particularly so for strategy and negotiations over the plan of

reorganization.").[9]  Thus, one should proceed cautiously concerning the disclosure of

information that could reasonably have the effect of waiving the attorney-client or other

privilege (for example when the committee has been given standing to pursue a claim on

behalf of the debtor's estate, including against an unsecured creditor, or is conducting an

investigation that might give rise to such a claim, or the information relates to ongoing

negotiations with a third party), notwithstanding Bankruptcy Code section 1102(b)(3).

On the other hand, although a committee's assent to a plan or a transaction

does not bind its members, let alone its constituents, *see generally* 7 *Collier on

Bankruptcy* ¶ 1103.05[1][d][i] at 1103-26; *see also In re Armstrong World Indus., Inc.*,

2005 U.S. App. LEXIS 28897 (3d Cir. 2005), the importance of a committee's

recommendations should require a committee to remain in touch with its constituents to

determine their reasonable views.

How should a committee balance the foregoing tension, however – that is,

the committee's need to preserve access to sensitive information (which usually is the

only information of any value to unsecured creditors, whether for legitimate or

illegitimate purposes), to protect the attorney-client privilege, and to comply with the

securities laws, on the one hand, against the right of unsecured creditors to be informed

---

[9] Even *In re Christian Life Center, First Assembly of God*, 16 B.R. 35, 37 (Bankr. N.D. Cal. 1981), which
the Ninth Circuit in *In re Subpoena Duces Tecum*, 978 F.2d at 1161, found to have unduly limited a
committee's attorney-client privilege, suggested that a committee has an attorney-client privilege when the
committee has the power to act, or is acting in the guise of a trustee.

of material developments in the case before they are presented with what in practical

terms may be a *fait accompli*, on the other?

        In Refco's case, as set forth in the order attached as Exhibit <u>A</u> hereto, the

balance has been achieved by not requiring in the first instance -- that is, without further

court order -- the Committee's disclosure of information (a) that could reasonably be

determined to be confidential and non-public or proprietary, (b) the disclosure of which

could reasonably be determined to result in a general waiver of the attorney-client or

other applicable privilege, or (c) whose disclosure could reasonably be determined to

violate an agreement, order or law, including applicable securities laws.  Because many,

if not all, of the adverse consequences of releasing certain information discussed above

may be acceptably reduced or eliminated by the requesting party's agreement to be bound

by confidentiality and/or trading constraints, however, the order further provides that the

Committee shall take into account the requesting party's willingness to agree to such

constraints when the Committee determines whether to release otherwise protected

information.  Consistent with Code section 1102(b)(3)(C), the order also contemplates

that the Court will promptly decide disputes over the provision of such information if

they are not resolved by the parties.[10]

        Except with respect to the foregoing protected information, the order

contemplates the Committee's proactive provision of specified types of information on a

website.[11]  Finally, recognizing the policy behind the qualified immunity given to

---

[10] The schedule specified in the order for the resolution of such disputes was driven by the large size of these cases, the large number of unsecured creditors and, particularly in the early days of these cases, the intense demands on the time and resources of the Committee and its professionals.

[11] Obviously, this may not be justified in a smaller case.

members of an official creditors committee and the committee's professionals,[12] the order

provides for exculpation of such parties coextensive with such immunity.

Of course, those seeking protected information under the attached order

are free to raise any argument to show that the Committee's need to protect specified

information is not outweighed by the creditor's legitimate need to receive it.  For

example, the balance described above depends in large measure upon the assumption that

the Committee is adequately representative of the unsecured creditors and functioning

properly.[13]

**Conclusion**

For the foregoing reasons, the Committee's motion is granted to the extent

provided in the order attached hereto as Exhibit A.

Dated:  New York, New York
        January 20, 2006

                                        /s/ Robert D. Drain
                                United States Bankruptcy Judge

---

[12] *Supra*, note 2.

[13] In an analogous context, courts have declined to apply the attorney-client privilege against a committee's own constituents' assertion that committee members or professionals have breached their fiduciary duties to them.  *See, e.g., In re Fibremark, Inc.*, 330 B.R. 480, 498 n. 6 (Bankr. D. Vt. 2005) (noting that while "(a) attorney-client privilege is available to a creditors committee in a chapter 11 case, … (b) that privilege may not be asserted as a shield to protect against disclosure of fraud or other misconduct on the part of the committee or its attorneys); *In re Baldwin-United Corp.*, 38 B.R. 802, 805 (Bankr. Ohio 1984); *see also In re Christian Life Center, First Assembly of God*, 16 B.R. 35, 37-38 (Bankr. C.D. Cal. 1981); 7 *Collier on Bankruptcy* ¶ 1103.03[8] ("Committee members have a fiduciary responsibility to their constituency and should not use the attorney-client privilege to shield themselves in litigation from the people they are supposed to be representing.").  However, before opening wide the gates to such information, it should be kept in mind that (a) a committee member's fiduciary duties do not preclude it from representing its own interests, provided that in so doing it does not abuse its position on the committee at the expense of the creditor class, *In re Rickel & Associates, Inc.*, 272, B.R. 74, 100 (Bankr. S.D.N.Y. 2002), and (b) resolving intercreditor disputes is one of an official committee's primary functions, which may require committee professionals and members to share the differing views of various unsecured creditor groups with a reasonable expectation of confidentiality.

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                          :          Chapter 11
                                                :
     REFCO INC., et al.,                  :          Case No. 05-60006 (RDD)
                                                :
          Debtors.                     :          (Jointly Administered)
-----------------------------------------------------------x

**ORDER REGARDING CREDITOR ACCESS TO INFORMATION
PURSUANT TO 11 U.S.C. §§ 105(a), 1102(b)(3) AND 1103(c)**

      Upon the motion, dated November 1, 2005 (the "Motion"), filed by the Official

Committee of Unsecured Creditors of Refco Inc., et al. (the "Committee"), pursuant to

sections 105(a), 1102(b)(3) and 1103(c) of title 11 of the United States Code, 11 U.S.C.

§§ 101 et seq. (as amended, the "Bankruptcy Code"), for an order clarifying the

Committee's requirement to provide access to information *nunc pro tunc* to October 28,

2005, the date the Committee was appointed; and upon the order to show cause, dated

November 1, 2005, provisionally granting the relief requested in the Motion until the

Court further clarifies the requirements under section 1102(b)(3)(A) of the Bankruptcy

Code or the Committee establishes an acceptable information sharing protocol, and

requiring that all interested parties show cause by filing and serving an objection setting

forth why the Motion and the relief requested therein should not be entered on a final

basis; and the Court having held a hearing on the Motion on December 8, 2005 (the

"Hearing") and having considered the Committee's proposed protocol, the objection

thereto by the Ad Hoc Committee of Senior Subordinated Noteholders, the statement of

the United States Trustee, and the record of the Hearing, the Committee having revised

the proposed protocol in the light of the foregoing; and after due deliberation and

sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[1a]

A.      Jurisdiction and Venue; Core Proceeding. The Court has jurisdiction to grant the

relief provided for herein pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes

a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this chapter 11

case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

B.      Statutory Predicates. The statutory predicates for the relief sought in the Motion

are sections 105(a), 1102(b)(3) and 1103 of the Bankruptcy Code.

C.      Adequacy of Notice. Notice of the Motion was timely, adequate, proper and

sufficient and constituted the best notice practicable under the particular circumstances,

and no other or further notice of the Motion is required.

D.      Memorandum of Law Waiver. The requirements of Rule 9013-1(b) of the Local

Rules are waived.

E.      Opportunity to be Heard. A reasonable opportunity to object or be heard with

respect to the Motion and the relief requested therein and granted in this Order has been

afforded.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

1.      All objections to the Motion or the relief requested therein that have not been

withdrawn, waived, or settled, including all reservations of rights included

---

[1a] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as appropriate.

therein, which are not otherwise resolved in this Order, are overruled on the merits.

2. The Motion is granted to the extent provided herein.

3. Access To Creditor Information. In satisfaction of the Committee's obligations to provide access to information for creditors ("Creditor Information Protocol") in accordance with section 1102(b)(3)(A) and (B) of the Bankruptcy Code, the Committee shall, until the earliest to occur of dissolution of the Committee, dismissal, or conversion of these chapter 11 cases, and a further order of the Court:

   (a) Establish and maintain an Internet-accessed website (the "Committee Website") that provides, without limitation:

      (1) general information concerning the chapter 11 cases of Refco Inc. and its affiliated debtors (collectively, the "Debtors"), including, case dockets, access to docket filings, and general information concerning significant parties in the cases;

      (2) monthly Committee written reports summarizing recent proceedings, events and public financial information;

      (3) highlights of significant events in the cases;

      (4) a calendar with upcoming significant events in the cases;

      (5) access to the claims docket as and when established by the Debtors or any claim agent retained in the cases;

      (6) a general overview of the chapter 11 process;

(7)  press releases (if any) issued by each of the Committee and the

Debtors;

(8)  a non-public registration form for creditors to request "real-

time" case updates via electronic mail;

(9)  a non-public form to submit creditor questions, comments and

requests for access to information;

(10)    responses to creditor questions, comments and requests for

access to information; provided, that the Committee may

privately provide such responses in the exercise of its

reasonable discretion, including in the light of the nature of the

information request and the creditor's agreements to

appropriate confidentiality and trading constraints;

(11)    answers to frequently asked questions; and

(12)    links to other relevant websites.

(b)  Distribute case updates via electronic mail for creditors that have

registered for this service on the Committee website.

(c)  Establish and maintain a telephone number and electronic mail address

for creditors to submit questions and comments.

4.  Privileged and Confidential Information. The Committee shall not be required to

disseminate to any entity (all references to "entity" herein shall be as defined in

section 101(15) of the Bankruptcy Code, "Entity"): (i) without further order of the

Court, confidential, proprietary, or other non-public information concerning the

Debtors or the Committee, including (without limitation) with respect to the acts,

conduct, assets, liabilities and financial condition of the Debtors, the operation of

the Debtors' business and the desirability of the continuance of such business, or

any other matter relevant to these cases or to the formulation of one or more

chapter 11 plans (including any and all confidential, proprietary, or other

nonpublic materials of the Committee) whether provided (voluntarily or

involuntarily) by or on behalf of the Debtors or by any third party or prepared by

or for the Committee (collectively, the "Confidential Information") or (ii) any

other information if the effect of such disclosure would constitute a general

waiver of the attorney-client, work-product, or other applicable privilege

possessed by the Committee.

5.    Any information received (formally or informally) by the Committee from any

Entity in connection with an examination pursuant to Rule 2004 of the Federal

Rules of Bankruptcy Procedure or in connection with any formal or informal

discovery in any contested matter, adversary proceeding or other litigation shall

not be governed by the terms of this Order but, rather, by any order governing

such discovery.

6.    The Debtors shall assist the Committee in identifying any Confidential

Information concerning the Debtors that is provided by the Debtors or their agents

or professionals, or by any third party, to the Committee, its agents and

professionals.

7.    Creditor Information Requests. If a creditor (the "Requesting Creditor") submits a

written request (including on the Committee Website or by electronic mail) (the

"Information Request") for the Committee to disclose information, the Committee

shall as soon as practicable, but no more than twenty (20) days[1b] after receipt of

the Information Request, provide a response to the Information Request

(including on the Committee Website) (the "Response"), including providing

access to the information requested or the reasons the Information Request cannot

be complied with. If the Response is to deny the Request because the Committee

believes the Information Request implicates Confidential Information that need

not be disclosed pursuant to the terms of this Order or otherwise under 11 U.S.C.

§ 1102 (b)(3)(A), or that the Information Request is unduly burdensome, the

Requesting Creditor may, after a good faith effort to meet and confer with an

authorized representative of the Committee regarding the Information Request

and the Response, seek to compel such disclosure for cause pursuant to a motion.

Such motion shall be served and the hearing on such motion shall be noticed and

scheduled pursuant to the Case Management Order. The Committee shall not

object to any Requesting Creditor's request to participate in any such hearing by

telephone conference. Nothing herein shall be deemed to preclude the Requesting

Creditor from requesting (or the Committee objecting to such request) that the

Committee provide the Requesting Creditor a log or other index of any

information specifically responsive to the Requesting Creditor's request that the

Committee deems to be Confidential Information or protected by the

attorney/client, work product, or any other privilege. Furthermore, nothing herein

shall be deemed to preclude the Requesting Creditor from requesting that the

Court conduct an *in camera* review of any information specifically responsive to

---

[1b] This shall read ten (10) days on or after January 31, 2006.

the Requesting Creditor's request that the Committee claims is Confidential

Information or subject to the attorney/client, work product, or other privilege.

8.    In its Response to an Information Request for access to Confidential Information,

the Committee shall consider whether (a) the Requesting Creditor is willing to

agree to reasonable confidentiality and trading restrictions with respect to such

Confidential Information and represents that such trading restrictions and any

information-screening process complies with applicable securities laws; and (b)

under the particular facts, such agreement and any information-screening process

that it implements will reasonably protect the confidentiality of such information;

provided, however, that if the Committee elects to provide access to Confidential

Information on the basis of such confidentiality and trading restrictions, the

Committee shall have no responsibility for the Requesting Creditor's compliance

with, or liability for violation of, applicable securities or other laws. Any disputes

with respect to this paragraph shall be resolved as provided in the preceding

paragraph, and, to the extent applicable, the next paragraph.

9.    Release of Confidential Information of Third Parties. In addition, if the

Information Request implicates Confidential Information of the Debtors (or any

other Entity) and the Committee agrees that such request should be satisfied, or if

the Committee on its own wishes to disclose such Confidential Information to

creditors, the Committee may demand (the "Demand") for the benefit of the

Debtors' creditors: (a) if the Confidential Information is information of the

Debtors, by submitting a written request, each captioned as a "Committee

Information Demand," to Skadden, Arps, Slate, Meagher & Flom LLP, counsel

for the Debtors, Four Times Square, New York, New York 10036 (Attention: J. Gregory Milmoe, Esq. (gmilmoe@skadden.com) and Sally McDonald Henry, Esq. (shenry@skadden.com)) ("Debtors' Counsel"), stating that such information will be disclosed in the manner described in the Demand unless the Debtors object to such Demand on or before fifteen (15) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor and the Debtors may schedule a hearing with the Court pursuant to the Case Management Order seeking a ruling with respect to the Demand under 11 U.S.C. § 704(a)(7); and (b) if the Confidential Information is information of another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to Debtors' Counsel, stating that such information will be disclosed in the manner described in the Demand unless such Entity objects to such Demand on or before fifteen (15) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, such Entity and the Debtors may schedule a hearing with the Court pursuant to the Case Management Order seeking a ruling with respect to the Demand.

10. Nothing in this Order requires the Committee to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

11. Exculpation. None of the Debtors, the Committee and any of their respective directors, officers, employees, members, attorneys, consultants, advisors and

agents (acting in such capacity) (collectively, the "Exculpated Parties"), shall

have or incur any liability to any Entity (including the Debtors and their affiliates)

for any act taken or omitted to be taken in connection with the preparation,

dissemination, or implementation of the Creditor Information Protocol, the

Committee Website and other information to be provided pursuant to section

1102(b)(3) of the Bankruptcy Code; provided, however, that the foregoing shall

not affect the liability of any Exculpated Party protected pursuant to this

paragraph 11 that otherwise would result from any such act or omission to the

extent that such act or omission is determined in a final non-appealable order to

have constituted a breach of fiduciary duty, gross negligence, or willful

misconduct, including, without limitation, fraud and criminal misconduct, or the

breach of any confidentiality agreement or Order. Without limiting the foregoing,

the exculpation provided in this paragraph shall be coextensive with any

Exculpated Party's qualified immunity under applicable law.

12. This Order shall be effective as of January 3, 2006, however, the terms of this

Order shall apply to all information governed by this Order, including information

in the Committee's possession prior to January 3, 2006.

13. This Order shall be binding in all respects upon the Debtors and any successors

thereto.

Dated: New York, New York
December 23, 2005

                                    /s/ Robert D. Drain
                                 HONORABLE ROBERT D. DRAIN
                                 UNITED STATES BANKRUPTCY COURT