**Objection Deadline: June 5, 2006 at 5:00 p.m.**
**Hearing Date: June 8, 2006 at 10:00 a.m.**

Luc A. Despins (LD 5141)
Scott A. Edelman (SE 5247)
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
Counsel for Official
Committee of Unsecured Creditors
of Refco Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| REFCO INC., et al., | |
| | Case No. 05-60006 (RDD) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL MOTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ORDER, UNDER 11 U.S.C.§ 1103(C)
AND BANKRUPTCY RULE 2004, DIRECTING PRODUCTION
OF DOCUMENTS BY CERTAIN PERSONS**

The Official Committee of Unsecured Creditors (the "Committee") of Refco Inc.

(together with its predecessors and affiliates, "Refco") and its affiliated debtors and debtors in

possession (collectively, the "Debtors"), by its counsel, Milbank, Tweed, Hadley & McCloy

LLP, moves this Court (the "Supplemental Motion") for entry of an order pursuant to section

1103(c) of Title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and

Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the

production of documents by (i) Arthur Anderson, LLP ("AA"),  (ii) Delta Flyer Fund, LLC

("Delta")/Eric M. Flanagan, (iii) Micky Dhillon and the Jasdeep Dhillon Trustee MSD Family

Trust, (iv) Thomas Dittmer, (v) Ernst & Young LLP, (vi) Stephen Grady, (vii) Thomas Hackl,

(viii) Ingram Micro Inc., (ix) Mark Kavanagh, (x) Dennis Klejna, (xi) Levine Jacobs and Co.

LLC, (xii) Eric Lipoff, (xiii) McDermott Will & Emery, (xiv) Joseph Murphy, (xv) Frank

Mutterer, (xvi) Victor Niederhoffer/Niederhoffer Investments Inc., (xvii) Sean O'Shea and

Edward McElwreath, (xviii) PricewaterhouseCoopers, LLP ("PwC"), (xix) William M. Sexton,

(xx) Philip Silverman, (xxi) Chris Sugrue, and (xxii) David Weaver, ((i)-(xxii) collectively, the

"Respondents").

In further support of this Supplemental Motion, the Committee states as follows:

## BACKGROUND

1.      On October 17, 2005 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code,

11 U.S.C. § § 101 et seq. (as amended, the "Bankruptcy Code").  With the exception of Debtor

Refco Capital Markets, Ltd. ("RCM"), for which a Trustee has been appointed, the Debtors

continue to manage their property as debtors in possession pursuant to sections 1107(a) and 1108

of the Bankruptcy Code.

2.      The Committee is a committee duly appointed and organized under

section 1102 of the Bankruptcy Code.  On October 28, 2005, the United States Trustee appointed

the Committee, as reconstituted on March 29, 2006.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are Bankruptcy

Code sections 1103(c)(2) and Bankruptcy Rule 2004.

5.      On November 3, 2005, the Committee filed a motion, attached hereto as
Exhibit B for entry of an order pursuant to 11 U.S.C. § 1103(C) and Bankruptcy Rule 2004
directing the production of documents by (i) certain current and former directors, officers and
employees of Refco; (ii) certain third party investors, counterparties, and other participants in the
events and circumstances described herein; and (iii) Refco's accountants and lawyers (the "Rule
2004 Motion").  In the Rule 2004 Motion, the Committee described the background to the Refco
bankruptcy and the alleged fraud; the facts then known to the Committee, on information and
belief, necessitating the discovery requested; and the legal basis for discovery pursuant to
Bankruptcy Rule 2004.  In the interests of judicial economy, the Committee hereby incorporates
and does not repeat herein Paragraphs 5-25 and 42-45 of the Rule 2004 Motion.

6.      By Order dated December 5, 2005 as subsequently amended on March 27,
2006 (the "Rule 2004 Order"), this Court granted the Rule 2004 Motion giving the Committee
permission to serve subpoenas calling for the production of documents (the "Initial Rule 2004
Subpoenas") upon 16 persons and entities.  The Committee served those subpoenas and has,
subject to the terms of the Rule 2004 Order, been pursuing discovery from the subpoena
recipients.

7.      The Committee has made substantial progress in its investigation and the
investigation is now at a stage where the Committee requires documents from additional parties.
As the Committee explained in the Rule 2004 Motion, it "cannot state that the issues identified to
date will be the only irregularities in Refco's practices."  (Rule 2004 Motion, at 37.)  This
remains true today.  As detailed below, however, from the discovery to date and from related
actions the Committee is pursuing, the Committee has learned of additional persons and entities
who likely have information relevant to (i) the property of the Debtors, and the location of same;

3

(ii) the assets, liabilities and financial condition of the Debtors; (iii) matters that may affect the administration of the Debtors' estates; and (iv) the identification and prosecution of certain potential claims against third parties by a representative of the Debtors' estates.

8.    The Committee notes that as the investigation continues to proceed, it is likely that the Committee will request authority to take further discovery.  Accordingly, the Committee reserves its right to (i) seek to take the depositions of the Respondents at a future date and (ii) serve supplemental and additional document requests that relate to the matters described in the Rule 2004 Motion and this Supplemental Motion.

## RELIEF REQUESTED

9.    The Committee seeks authorization to obtain the production of documents from the Respondents concerning (i) the property of the Debtors; (ii) the assets, liabilities and financial condition of the Debtors; (iii) matters that may affect the administration of the Debtors' estates; and (iv) the identification and prosecution of certain potential claims against third parties by a representative of the Debtors' estates.  The Committee seeks entry of an order substantially in the form annexed hereto as Exhibit A (the "Proposed Order").

**A.    Persons and Entities From Whom Documents are Sought**

10.    Based upon (i) the Debtors' public statements, (ii) the Criminal Complaint,[1] (iii) published news reports, and (iv) the Committee's preliminary investigation, including documents obtained pursuant to discovery obtained in response to the Initial Rule 2004 Subpoenas, the Respondents appear likely to have material information concerning one or more of these subjects, including but not limited to (i) the Bennett Receivables Scheme and the (ii) the Insider Payments.

---

[1]    All Capitalized terms not defined herein shall have the meaning ascribed to them in the Rule 2004 Motion.

11.     The individuals and entities from whom documents are sought, and the reasons why the Committee submits such discovery is relevant and necessary, are as follows:

**(1)    AA**

12.     AA was Refco's auditing firm prior to 2002.  The lead Refco auditor at AA, Mark Ramler, took Refco with him as a client when he left for Grant Thornton in 2002.  AA will likely have documents and information relevant to the circumstances relating to the receivables between one or more of the Debtor entities and entities affiliated with Phillip Bennett ("Bennett"), as well as the manner in which such issues were handled by Refco's auditors.  Thus, AA will likely have information and documents relating to the events at issue that will be indispensable to the Committee's investigation.

**(2)    Delta/ Eric M. Flanagan**

13.     Public reports suggest that Delta participated in the Bennett Receivables Scheme at the end of certain of Refco's financial quarters from 2001 through 2004.

14.     Eric M. Flanagan is listed in the Delta LLC Registration filing as the "initial manger" of Delta.  Thus, Delta and Flanagan are likely to have information and documents concerning the Bennett Receivables Scheme.  Delta and Flanagan are also likely to have information and documents relating to other events at issue that will be indispensable to the Committee's investigation.

**(3)    Sukhmeet "Micky" Dhillon and the Jasdeep Dhillon Trustee MSD Family Trust**

15.     Sukhmeet "Micky" Dhillon was the head of Main Street Trading, a firm acquired by Refco.  Dhillon, or entities affiliated with Dhillon including, the Jasdeep Dhillon Trustee MSD Family Trust, were recipients of certain Insider Payments.  Upon information and belief, Dhillon, or entities affiliated with Dhillon, received substantial payments from the

5

Debtors and/or Refco Group Holdings, Inc. ("RGHI"), one of the entities through which Bennett

held his ownership interest in Refco. Thus, Dhillon and the Jasdeep Dhillon Trustee MSD

Family Trust will have information and documents relating to those payments. Dhillon and the

Jasdeep Dhillon Trustee MSD Family Trust are also likely to have information and documents

relating to other events at issue that will be indispensable to the Committee's investigation.

**(4)** **Thomas Dittmer**

16.    Thomas Dittmer co-founded Refco in 1969, retiring from his post as CEO

in 1999. Upon information and belief, in connection with Refco's initial public offering in 2005

(the "IPO"), Dittmer received substantial payments from the Debtors and/or RGHI. As the

former CEO of Refco's predecessor, Dittmer is likely to have information and documents

concerning those payments. Dittmer is also likely to have information and documents relating to

the events at issue that will be indispensable to the Committee's investigation.

**(5)** **Ernst & Young LLP**

17.    Ernst & Young LLP acted as Refco's tax preparation firm until early

2004. At that time, about the same time that Refco and Thomas H. Lee Partners were

negotiating a series of transactions (the "Leveraged Recapitalization"), Ernst & Young stopped

working for Refco. Refco then chose Levine Jacobs & Co. to replace Ernst & Young.

According to media reports, Ernst & Young's decision may have been tied to a dispute with

Refco. The nature and details of that dispute remain unknown. Thus, it is likely that Ernst &

Young will have information and documents relating to this and other events at issue that will be

indispensable to the Committee's investigation.

**(6)** **Stephen Grady**

18.    According to press reports, in September/October 2005, Stephen Grady,

the chief operating officer ("COO") of Refco Group's global derivatives operations, had his

6

responsibilities expanded following the announcement of the former COO's, William Sexton, intent to retire.  Thereafter, Grady was in charge of managing the firm's physical infrastructure and operations in Chicago, which had expanded following the acquisition of Cargill Investor Services.  Grady was a recipient of certain Insider Payments.  Upon information and belief, Grady received a substantial payment from the Debtors and/or RGHI.  Thus, Grady will have information and documents relating to the Insider Payments.  Grady is also likely to have information and documents relating to other events at issue that will be indispensable to the Committee's investigation.

### (7)   **Thomas Hackl**

19.     Thomas Hackl is a former Executive Vice President of Refco and former member of Refco's Management Committee.   Hackl was responsible for global asset management, operations and affiliations.  Hackl left Refco in 2004, apparently sometime after the Leveraged Recapitalization in August 2004.   Prior to joining Refco, Hackl worked as the Head of Treasury and Investment Banking at BAWAG and served as a member of BAWAG's senior management team, responsible for the bank's global treasury operations, asset management and private banking from 1991 to 2002.

20.     In addition to his ties with both BAWAG and Refco during the key periods in question, upon information and belief, Hackl likely had knowledge of the Bennett Receivables Scheme.  On information and belief, Hackl, Bank Frick and RGHI/Bennett were joint investors in certain entities.  Thus, Hackl will likely have information and documents relating to the events at issue that will be indispensable to the Committee's investigation.

### (8)   **Ingram Micro Inc.**

21.     The Consolidated Class Action Complaint (05 Civ. 8626) alleges that Ingram Micro Inc. ("Ingram"), an information technology distributor based in Santa Ana,

California, like Delta and Liberty Corner participated in short-term loan arrangements with

RGHI and one or more of the Debtor entities.  The Class Action Complaint alleges that an

individual familiar with the facts of the loans confirmed that "Ingram was involved in at least

one $250 million loan transaction with Refco, which took place in February 2001."

22.    Further, according to an article in the Wall Street Journal on March 30,

2006, Ingram has confirmed that it was involved in a transaction with Refco several years ago.

Thus, like Liberty Corner and Delta, Ingram is likely to have information and documents

concerning the Bennett Receivables Scheme.  Ingram will also likely have information and

documents relating to other events at issue that will be indispensable to the Committee's

investigation.

### **(9)** **Mark Kavanagh**

23.    Mark Kavanagh is the sole member of Suffolk KAV (one of three Suffolk

subsidiaries of Suffolk LLC) a company that received a "loan" of $158 million from one or more

of the Debtor entities in order to finance the buyout of the minority shareholders of PlusFunds in

2005.  Thus, Kavanagh will have information and documents relating to this transfer of funds

and will likely have information and documents relating to other events at issue that will be

indispensable to the Committee's investigation.

### **(10)** **Dennis Klejna**

24.    Dennis Klejna was Executive Vice President ("EVP") and General

Counsel of Refco since January 1999.  Since August 2005, Klejna was also Refco's Corporate

Secretary.  Klejna was also a recipient of Insider Payments.  Klejna received $6.5 million in a

buyout of a profit-sharing agreement in August 2005.  Thus, Klejna will have information and

documents relating to the Insider Payments.  As General Counsel, EVP, and Corporate Secretary,

he is also likely to have information and documents relating to other events at issue that will be indispensable to the Committee's investigation.

**(11)    Levine Jacobs and Co LLC**

25.    Levine Jacobs and Co LLC ("Levine Jacobs") is an accounting firm located in Livingston, New Jersey and, upon information and belief, was the firm responsible for preparing RGHI's taxes for the year ended December 31, 2004. Upon information and belief, Levine Jacobs also performed accounting work for Refco. Thus, Levine Jacobs will likely have information and documents relating to the events at issue that will be indispensable to the Committee's investigation.

**(12)    Eric Lipoff**

26.    Eric Lipoff was a recipient of certain Insider Payments. Upon information and belief, in 2004 Lipoff received a substantial payment from the Debtors and/or RGHI. Thus, Lipoff will have information and documents relating to the Insider Payments and is likely to have information and documents relating to other events at issue that will be indispensable to the Committee's investigation.

**(13)    McDermott Will & Emery LLP**

27.    McDermott Will & Emery acted as counsel for BAWAG Overseas and/or Alinea Holding GmBH in connection with the disposition of BAWAG Overseas' 10% equity stake in Refco Group Ltd., LLC ("RGL") during the Leverage Recapitalization in August 2004. In addition, upon information and belief, McDermott Will & Emery represented certain other entities in connection with their dealings with RGHI. Thus, McDermott Will & Emery will likely have information and documents relating to certain events at issue that will be indispensable to the Committee's investigation.

9

**(14)** **Joseph Murphy**

28.    Joseph Murphy was the President of the Refco Group responsible for global marketing.  Murphy was the EVP, President and CEO of Refco Global Futures since March 1999.  Murphy was a recipient of certain Insider Payments.  Murphy received between $9.5 and $13.7 million from the Debtors and/or RGHI in a buyout of a profit-sharing agreement in August 2005.  He also received over $8.1 million in compensation from 2003 to 2005.  Thus, Murphy will have information and documents relating to the Insider Payments.  Murphy is also likely to have information and documents relating to the events at issue that will be indispensable to the Committee's investigation.

**(15)** **Frank Mutterer**

29.    Frank Mutterer was the controller of RGL.  Mutterer was a recipient of certain Insider Payments.  Upon information and belief, Mutterer received a substantial payment from RGHI and/or the Debtors.  Thus, Mutterer will have information and documents relating to the Insider Payments.  By virtue of his position, Mutterer is also likely to have information and documents relating to other events at issue that will be indispensable to the Committee's investigation.

**(16)** **Victor Niederhoffer/ Niederhoffer Investments Inc.**

30.    Recent media reports suggest that Victor Niederhoffer's hedge fund, Niederhoffer Investments Inc., suffered heavy losses during the 1997 Asian financial crisis, received a $50 million margin call from Refco in 1997, and contributed to Refco's large outstanding receivable balance from RGHI.  Niederhoffer also invested at least $7 million in the SPhinX Funds.  Thus, Niederhoffer and Niederhoffer Investments Inc. will likely have information and documents relating to the events at issue that will be indispensable to the Committee's investigation.

**(17)    Sean O'Shea / Edward McElwreath**

31.     According to news reports, Sean O'Shea, a New York lawyer, represented
Edward McElwreath in a NASD arbitration against Refco Securities, LLC and Refco Group, Ltd.
McElwreath claimed he was owed a finder's fee for introducing Refco to Thomas H. Lee
Partners.  McElwreath was awarded $3.5 million in that arbitration.  In addition, according to
news reports, during the course of the proceedings Robert Trosten (Refco's former CFO)
admitted receiving a $45 million severance package from Refco.  Thus, O'Shea and McElwreath
will have information and documents relating to the Insider Payments and will likely have
information and documents relating to other events at issue that will be indispensable to the
Committee's investigation.

**(18)    PwC**

32.     PwC advised Refco on financial reporting for more than a year prior to
Refco's IPO in August of 2005.  Recent news reports state that PwC advised Refco with respect
to a debt offering and also subsequently on financial reporting as its status changed from a
private to a public company.  PwC was likely paid substantial sums for these services.  Thus,
PwC will likely have information and documents relating to the events at issue that will be
indispensable to the Committee's investigation.

**(19)    William M. Sexton**

33.     William M. Sexton was the EVP and Chief Operating Officer of Refco
Group from August 2004 through at least August 2005.  He was responsible for information
technology, operations, accounting and finance, credit, margins and risk for Refco's Futures
business.  Sexton was a recipient of certain Insider Payments.  Sexton received between $7 and
$9 million in a buyout of a profit-sharing agreement in August 2005.  He also received over $4.2
million in compensation from 2003 to 2005.  Thus, Sexton will have information and documents

relating to the Insider Payments.  Sexton is also likely to have information and documents

relating to other events at issue that will be indispensable to the Committee's investigation.

### (20)    Philip Silverman

34.    Philip Silverman was the corporate secretary of RGHI, the entity

controlled by Phillip Bennett at the center of the Bennett Receivables Scheme.  Silverman was

also the corporate secretary of a Refco affiliate, Refco Alternative Investments LLC.  Alleged by

certain press reports to have been a confidante of Phillip Bennett, Silverman was apparently put

on leave at or about the same time the Debtors terminated the employment of Bennett and Santo

Maggio.  Silverman is likely to have information and documents concerning the Bennett

Receivables Scheme.  Silverman is also likely to have information and documents relating to

other events at issue that will be indispensable to the Committee's investigation.

### (21)    Chris Sugrue

35.    Chris Sugrue has multiple ties to the Debtors and to Bennett.  Sugrue was

a Senior Vice President of RGL from January 1993 to February 1998 and was involved in the

initial sale of 10% equity ownership in RGL to BAWAG Overseas.  From March 2002 to the

present, Sugrue served as Chairman of PlusFunds Group Inc., which used Refco's services as a

clearing broker.  Sugrue appeared at Refco in October 2005 and demanded that $312 million in

funds be transferred from RCM to an unregulated Refco entity, which funds were then

transferred to Lehman Brothers.  Sugrue was also affiliated with Suffolk LLC, which

"borrowed" $158 million from one or more of the Debtor entities, and with other entities that

borrowed an additional $50 million from one or more of the Debtor entities.  Thus, Sugrue will

likely have information and documents relating to the events at issue that will be indispensable to

the Committee's investigation.

**(22)** **David Weaver**

36.    David Weaver was the Chief Administrative Officer of RCM in 2002.
Upon information and belief, Weaver will likely have information and documents concerning the
Bennett Receivables Scheme.  Weaver is also likely to have information and documents relating
to other events at issue that will be indispensable to the Committee's investigation.

**B.    Areas of Requested Discovery**

37.    In this Supplemental Motion, the Committee requests discovery from the
Respondents with respect to, among other things, (i) the Bennett Receivables Scheme; (ii) the
Debtors' accounting and regulatory policies; (iii) the financial dealings of the Respondents with
the Debtors and/or with Bennett, RGHI, or any of the Recipients of the Initial Rule 2004
Subpoenas; (iv) the Insider Payments received by the Respondents, including documents relating
to the current financial status of the recipients of the Insider Payments, such that the Committee
can determine its ability to recover and collect such Insider Payments; and (v) any claims arising
out of the IPO and the Leveraged Recapitalization, all as more fully set forth in Paragraphs 31-36
of the Rule 2004 Motion, which are incorporated herein by reference.

**C.    Need and Narrow Scope**

38.    The documents requested in this Supplemental Motion will provide the
Committee with information it requires from those believed to have it.  The Committee must
obtain such information to properly discharge its duties, under section 1103(c) of the Bankruptcy
Code, to the unsecured creditors that it represents.  On behalf of those creditors, the Committee
is entitled to seek and obtain discovery regarding these and other matters relating to the acts,
conduct, property, liabilities and financial condition of the Debtors and their estates.  The
Committee requires the requested information to assess fully the Debtors' potential claims
against third parties, including, inter alia, some or all of the Respondents.

39.     The discovery sought herein is narrowly tailored to the factual matters

raised or implicated by the various issues and events that precipitated the Chapter 11 Cases.

These requests are, however, broad enough to permit the Committee to perform the investigation

it is obligated to perform.  Compliance with the annexed Rule 2004 document requests by the

Respondents will not be burdensome and can be achieved without undue hardship in the time

period requested.

**D.    Entry of Omnibus Order**

40.     To facilitate the necessary discovery, the Committee requests that the

Court enter the Proposed Order granting the Motion, and requiring the Respondents to produce

documents responsive to schedules to be served by the Committee substantially in the form of

the schedules annexed to the Proposed Order as Exhibit "A" for Thomas Dittmer, Thomas Hackl,

Mark Kavanagh, Dennis Klejna, Josephy Murphy, Victor Niederhoffer/Niederhoffer Investments

Inc., William Sexton, Chris Sugrue, Phillip Silverman and David Weaver;  as Exhibit "B" for

Stephen Grady, Frank Mutterer, Eric Lipoff, Micky Dhillon, the Jasdeep Dhillon Trustee MSD

Family Trust, Sean O'Shea, and Edward McElwreath; as Exhibit "C" for Delta/ Eric Flanagan

and Ingram Micro;  as Exhibit "D" for Arthur Anderson, Ernst & Young, Levine Jacobs and Co.

and PricewaterhouseCoopers; and as Exhibit "E" for as and for McDermott Will & Emery.  The

Committee requests that the Court order that such production be made on or before the date that

is thirty (30) days after the date of service of the corresponding subpoena.

**NOTICE**

41.     Notice of this Motion has been given to (i) counsel for the Debtors; (ii)

counsel for the Debtors' pre-petition lenders; (iii) the United States Trustee (iv) the Examiner;

(v) the Office the United States Attorney for the Southern District of New York; (vi) the RCM

Trustee; and (vi) all parties that have filed notices of appearance and demanded service of papers

14

pursuant Bankruptcy Rule 2002(g).  In addition, the Committee has given notice of this motion

to each of the Respondents or their counsel as listed on the certificate of service filed herewith.

The Committee is attempting to provide notice to the other Respondents described herein.  Under

the circumstances, the Committee submits that such notice will be adequate and sufficient and

therefore, with the exception of those Respondents that have not yet been served, no other or

further notice is required.

## WAIVER OF MEMORANDUM OF LAW

42.     Because this Motion presents no novel issues of law and the authorities

relied upon by the Committee are set forth in the Rule 2004 Motion[2], the Committee respectfully

requests that the Court waive the requirement for the filing of a separate memorandum of law in

support of this Motion pursuant to Local Bankruptcy Rule 9013-1(b), but the Committee reserves

the right to file a memorandum in reply to any objection to this Motion.

## NO PRIOR REQUEST

43.     The Rule 2004 Motion sought discovery from persons and entities other

than the Respondents.  Accordingly, no prior application for the specific relief requested herein

has been made by the Committee to this or any other court.

WHEREFORE, the Committee respectfully requests entry of the Proposed Order

directing each of the Respondents to produce on or before the date set forth in the Proposed

---

[2]      See, paragraphs 42-45 of the Rule 2004 Motion.

Order the documents requested in subpoenas or document requests to be served on each of the

Respondents and granting the Committee such other and further relief as is just and proper.

Dated:  New York, New York
            May 23, 2006

                                        MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

                                        __/s/ Scott A. Edelman_____
                                        Luc A. Despins (LD 5141)
                                        Scott A. Edelman (SE 5247)
                                        1 Chase Manhattan Plaza
                                        New York, New York 10005
                                        (212) 530-5000

                                        Counsel for Official Committee of Unsecured
                                        Creditors of Refco Inc., et al.

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| REFCO INC., <u>et al.</u>, | Case No. 05-60006 (RDD) |
| Debtors. | (Jointly Administered) |

**ORDER, UNDER 11 U.S.C. § 1103(C)**
**AND BANKRUPTCY RULE 2004, DIRECTING**
**PRODUCTION OF DOCUMENTS BY CERTAIN PERSONS**

Upon the motion, dated May 23, 2006 (the "<u>Supplemental Motion</u>") of the

Official Committee of Unsecured Creditors of Refco Inc., <u>et al</u>. (the "<u>Committee</u>") for entry of

an order pursuant to section 1103(c) of Title 11, United States Code, 11 U.S.C. §§ 101, <u>et seq.</u>

(the "<u>Bankruptcy Code</u>") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), directing the production of documents by by (i) Arthur Anderson, LLP

("<u>AA</u>"), (ii) Delta Flyer Fund, LLC ("<u>Delta</u>")/Eric M. Flanagan, (iii) Micky Dhillon and the

Jasdeep Dhillon Trustee MSD Family Trust, (iv) Thomas Dittmer, (v) Ernst & Young LLP, (vi)

Stephen Grady, (vii) Thomas Hackl, (viii) Ingram Micro Inc., (ix) Mark Kavanagh, (x) Dennis

Klejna, (xi) Levine Jacobs and Co. LLC, (xii) Eric Lipoff, (xiii) McDermott Will & Emery, (xiv)

Joseph Murphy, (xv) Frank Mutterer, (xvi) Victor Niederhoffer/Niederhoffer Investments Inc.,

(xvii) Sean O'Shea and Edward McElwreath, (xviii) PricewaterhouseCoopers, LLP ("<u>PwC</u>"),

(xix) William M. Sexton, (xx) Philip Silverman, (xxi) Chris Sugrue, and (xxii) David Weaver,

((i)-(xxii) collectively, the "<u>Respondents</u>"); and this matter being a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(B); and upon consideration of the Motion and the objections thereto; and

due and proper notice of the Motion having been given, it is hereby ORDERED that:

1.      The Motion is granted, and all objections to the Motion, except as provided herein, are overruled.

2.      Respondents shall produce documents responsive to schedules annexed to subpoenas to be served by the Committee substantially in the form of the schedule annexed hereto as Exhibit "A" for Thomas Dittmer, Thomas Hackl, Mark Kavanagh, Dennis Klejna, Josephy Murphy, Victor Niederhoffer/Niederhoffer Investments Inc., William Sexton, Chris Sugrue, Phillip Silverman and David Weaver;  as Exhibit "B" for Stephen Grady, Frank Mutterer, Eric Lipoff, Micky Dhillon, the Jasdeep Dhillon Trustee MSD Family Trust, Sean O'Shea, and Edward McElwreath; as Exhibit "C" for Delta/ Eric Flanagan and Ingram Micro;  as Exhibit "D" for Arthur Anderson, Ernst & Young, Levine Jacobs and Co. and PricewaterhouseCoopers; and as Exhibit "E" for as and for McDermott Will & Emery, as on or before the date that is twenty (20) days after service by the Committee of the corresponding subpoena.

3.      Objections available to Respondents following issuance of the subpoenas, including, without limitation objections under Bankruptcy Rule 9016, other applicable Bankruptcy Rules, the Local Bankruptcy Rules, applicable non-bankruptcy law, and objections based upon privilege and the need for a confidentiality order, are expressly preserved.

4.      The documents produced in response to the subpoenas authorized by Paragraph 2 of the this Order:

(i)      shall be made available to and may be reviewed by attorneys employed by Milbank, Tweed, Hadley & McCloy, LLP ("Milbank"), counsel to the Committee, and Milbank may utilize its internal administrative staff to assist with duplicating, organization and technical tasks;

(ii)     may be made available to and may be reviewed by consultants retained by the Committee, including Houlihan Lokey Howard and Zukin and by FTI Consulting Inc.;

(iii)    may be made available to and may be reviewed by attorneys employed by Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"), conflicts counsel to the Committee, and Kasowitz may utilize its internal administrative staff to assist with duplicating, organization and technical tasks; and

(iv)    may be made available to and may be reviewed by the USAO;

(v)     may be made available to and may be reviewed by Examiner Joshua R. Hochberg ("the Examiner") and attorneys from the law firm of McKenna Long & Aldridge LLP ("McKenna"), which has been retained by the Examiner to aid in the discharge of the Examiner's duties, except that McKenna may utilize its internal administrative staff to assist with duplicating, organization and technical tasks; and

(vi)    may be made available to and may be reviewed by consultants retained by the Examiner;

provided, however, that Milbank attorneys and Milbank administrative staff, Kasowitz attorneys and Kasowitz administrative staff, any consultants retained by the Committee, the Examiner, McKenna attorneys and McKenna administrative staff, and any consultants retained by the Examiner, shall not disclose or otherwise make available, such documents, or any information contained in such documents to the extent not otherwise available to the Committee or the Examiner, to any other person or entity, including the members of the Committee, without either consent of the USAO or leave of the Court.

3

       5.       The Court shall retain jurisdiction with respect to any matters, claims,

rights or disputes arising from or related to the implementation of this Order.

Dated: May __, 2006

                                   _____
                                   The Honorable Robert D. Drain
                                   United States Bankruptcy Judge

**EXHIBIT A**

**SCHEDULE OF DOCUMENTS TO BE PRODUCED BY RESPONDENTS:**
**Thomas Dittmer, Thomas Hackl, Mark Kavanagh, Dennis Klejna, Joseph Murphy, Victor Niederhoffer and Niederhoffer Investments Inc., William M. Sexton, Chris Sugrue, Philip Silverman, and David Weaver**

DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      "BAWAG" means BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft, any of its subsidiaries (and any predecessors thereof) including but not limited to, BAWAG Overseas Inc. and Alinea Holding GmbH, directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

2.      "Bennett" means Phillip R. Bennett.

3.      "Board of Directors" means Refco's Board of Directors or Board of Managers and any of Refco's Board of Directors' or Board of Managers' subcommittees.

4.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5.      "Delta" means Delta Flyer Fund, LLP. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

6.      "Desana" means Desana Foundation, a Lichtenstein Stifung (Lichtenstein Foundation), any of its subsidiaries, directors, officers, shareholders, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

7.      "DF Capital" means DF Capital Inc., a corporation organized under the laws of Delaware, any of its subsidiaries, directors, officers, shareholders, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

8.      The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, audit and scope plans (whether in paper, database, electronic or other format(s)), audit workpapers (whether in paper, database, electronic or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies,

summaries, tabulations, telegrams, telephone records, telex messages, transcripts,

understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets

or things similar to any of the foregoing however denominated.  The term "document" further

includes email and electronic communication whether stored on a personal computer, network

computer system, backup computer tape and/or disk, or by some other storage mechanism.  The

term "document" further means any document now or at any time in the possession, custody, or

control of the entity to whom this document request is directed (together with any predecessors,

successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees,

agents and attorneys).  Without limiting the term "control" as used in the preceding sentence, a

person is deemed to be in control of a document if the person has the right to secure the

document or a copy thereof from another person having actual possession thereof, including, but

not limited to, work product contracted by you from professional firms.

      9.     "Ingram Micro" means Ingram Micro Inc. (and any predecessor thereof),

any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf,

including but not limited to any affiliated investment vehicles or management companies.

      10.     "Leveraged Recapitalization" means a series of transactions occurring in

August 2004 in which Thomas H. Lee Partners, together with certain affiliates and co-investors,

acquired approximately 57 percent of the equity interests in New Refco Group Ltd, LLC ("New

Refco") in a leveraged recapitalization and any transaction whether before or after August 2004

directly or indirectly connected to THL's acquisition of the 57 percent stake in New Refco.

      11.     "Liberty Corner" means Liberty Corner Capital Strategies, LLC (and any

predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers,

3

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on their behalf, including but not limited to any affiliated investment vehicles or

management companies.

12.     "Refco" means Refco, Inc. (and any predecessor thereof), any of its

subsidiaries (and any predecessors thereof), including without limitation, Refco Group Ltd. LLC

("RGL"), New Refco and Refco Capital Markets Ltd. ("RCM"), directors, officers, employees,

affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on

their behalf.

13.     "RGHI" means Refco Group Holdings, Inc. directors, officers,

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on its behalf.

14.     "Refco Securities" means any note, stock, treasury stock, debenture,

evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate, or

any other certificate of interest or participation (whether permanent, temporary or interim), or

any warrant, option or right to subscribe to or purchase any of the foregoing concerning Refco.

15.     "Thomas H. Lee Partners" means Thomas H. Lee Partners L.P., a

partnership, its predecessors, all parents, subsidiaries, partners, principals, managers and

employees and any successors in interest.

16.     The words "you" or "your" means you and any or all past or present

employees, partners, agents, representatives, officers, attorneys, or other persons or entities

acting or purporting to act for or on your behalf.

17.     The terms "all" and "each" shall be construed as "all and each."

4

18.      "<u>Family</u>" means your parents, children, spouse, former spouse, siblings and/or significant other(s), including domestic partners.

19.      The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

<u>INSTRUCTIONS</u>

A.      The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2000 through and including the date of production.

B.      Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.      You shall produce all documents in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D.      If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access

to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

E.      Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

F.      Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

G.      Documents attached to each other should not be separated.

H.      Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I.      The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

J.      In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents,

employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K.    If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

L.    Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

O.    The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

<u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST NO. 1</u>:

All documents concerning Refco, RGHI, BAWAG, Bennett, Delta, Liberty Corner, DF Capital and/or Desana.

<u>REQUEST NO. 2</u>:

All employment contracts, and/or business agreements whether formal or informal, and documents concerning any compensation or payments of any kind, whether in cash, options, loans, Refco Securities or any other thing of value, received by you or any member of your Family, from Refco, RGHI, BAWAG, Delta, Liberty Corner, or Thomas H. Lee Partners, including documents sufficient to show the date and amount of each such item, from January 1, 1995.

REQUEST NO. 3:

All documents relating to your position of employment at Refco, RGHI,

BAWAG, or any Refco subsidiary, from January 1, 1995.

REQUEST NO. 4:

All documents concerning ownership or financial interests in Refco, RGHI, Delta,

BAWAG, Liberty Corner, PlusFunds or Thomas H. Lee Partners held directly or indirectly by

you or any member of your Family, including Refco Securities, including documents sufficient

to identify the ownership interests, the values thereof, the amounts invested, and anticipated and

actual returns on the amounts invested, from January 1, 1995.

REQUEST NO. 5:

All documents concerning Refco's or RGHI's accounting policies, practices and

procedures.

REQUEST NO. 6:

All documents concerning involvement in or oversight of Refco's accounting

policies, practices and procedures by any member, past or present, of the management or Board

of Directors of Refco or RGHI including but not limited to documents concerning the oversight

of internal review of proposed transactions between Refco or RGHI, on the one hand, and Delta,

BAWAG, Ingram Micro or Liberty Corner, on the other.

REQUEST NO. 7:

All documents concerning meetings of the management or Board of Directors of

Refco or RGHI.

REQUEST NO. 8:

All documents concerning the Leveraged Recapitalization.

8

REQUEST NO. 9:

All documents concerning Refco's initial public offering on or about August 16, 2005, including documents related to the preparation and filing of documents or revised filings with the SEC related to Refco's initial public offering.

REQUEST NO. 10:

All documents concerning Refco's use of proceeds from the Leveraged Recapitalization and Refco's initial public offering, including but not limited to Refco's use of proceeds for a partial notes redemption, for payments of a management fee and/or dividend to Thomas H. Lee Partners, for shareholders' taxes, for dividends to shareholders in Refco's predecessor prior to the initial public offering, and for dividends to RGHI.

REQUEST NO. 11:

All documents concerning transactions, including but not limited to loans, transfers or investments, between Refco, or any Refco officer, manager or employee, past or present, on the one hand, and Desana, BAWAG, DF Capital, Ingram Micro, Liberty Corner, Delta, RGHI or any other entity controlled by any member, past or present, of Refco's management or Board of Directors, on the other, from January 1, 1995.

REQUEST NO. 12:

All documents concerning any communication, including but not limited to email or other electronic communication, relating to Bennett, Refco, RGHI, BAWAG, Delta, Ingram Micro, Liberty Corner, Thomas H. Lee Partners, and/or a past or present executive or board member of Refco, from January 1, 1995.

REQUEST NO. 13:

All documents concerning the financial statements of Refco, RGHI, Desana, DF Capital or BAWAG.

REQUEST NO. 14:

All documents concerning any restatement or planned restatement of the financial statements of Refco or RGHI.

REQUEST NO. 15:

All statements, transcripts of testimony, communications and documents you or members of your Family provided to the SEC, any Committee of Congress, any federal, state or other regulatory authority or agency, any grand jury or in any litigation or arbitration concerning Refco, RGHI, Ingram Micro, Liberty Corner, BAWAG, Delta, or Liberty Corner.

REQUEST NO. 16:

Document sufficient to identify any legal or equitable claims, including the nature and amount of all such claims, asserted against you or members of your Family concerning Refco.

REQUEST NO. 17:

All documents which refer, reflect or relate to communications by any person with any insurance carriers concerning Refco.

REQUEST NO. 18:

All documents concerning communications between you and any of Refco or RGHI's agents, managers or officers, including but not limited to in-house or outside counsel.

REQUEST NO. 19:

All documents concerning any and all additional events or circumstances that you reasonably believe contributed to the Refco's filing for bankruptcy protection.

REQUEST NO. 20:

All documents concerning any past (since January 1, 1995) or present board member or executive of Refco, including but not limited to Bennett, Gerald M. Sherer, Tone Grant, Robert Trosten, William Sexton and/or Santo Maggio.

REQUEST NO. 21:

All documents (since January 1, 1995) concerning PlusFunds Group, Inc., Betio Asset Investments Ltd., Chaco City Investments Ltd., Rabaul Holdings Ltd., Tecka Asset Holdings Ltd., Tuvalu Holding Company, Ltd., Catamarca Asset Series, I, Ltd., Liquid Opportunity, Liquid Opportunity- Plus Fund, Alpha Capital AG, Jonathan Knight and/or Suffolk LLC.

**EXHIBIT B**

### SCHEDULE OF DOCUMENTS TO BE PRODUCED BY RESPONDENTS:
### Stephen Grady, Frank Mutterer, Eric Lipoff, Micky Dhillon,
### the Jasdeep Dhillon Trustee MSD Family Trust, Sean O'Shea, and Edward McElwreath

DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.        "BAWAG" means BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft, any of its subsidiaries (and any predecessors thereof) including but not limited to, BAWAG Overseas Inc. and Alinea Holding GmbH, directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

2.        "Bennett" means Phillip R. Bennett.

3.        "Board of Directors" means Refco's Board of Directors or Board of Managers and any of Refco's Board of Directors' or Board of Managers' subcommittees.

4.        The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5.        "Delta" means Delta Flyer Fund, LLP. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

6.        "Desana" means Desana Foundation, a Lichtenstein Stifung (Lichtenstein Foundation), any of its subsidiaries, directors, officers, shareholders, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

7.      "DF Capital" means DF Capital Inc., a corporation organized under the laws of Delaware, any of its subsidiaries, directors, officers, shareholders, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

8.      The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, audit and scope plans (whether in paper, database, electronic or other format(s)), audit workpapers (whether in paper, database, electronic or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies,

2

summaries, tabulations, telegrams, telephone records, telex messages, transcripts,

understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets

or things similar to any of the foregoing however denominated.  The term "document" further

includes email and electronic communication whether stored on a personal computer, network

computer system, backup computer tape and/or disk, or by some other storage mechanism.  The

term "document" further means any document now or at any time in the possession, custody, or

control of the entity to whom this document request is directed (together with any predecessors,

successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees,

agents and attorneys).  Without limiting the term "control" as used in the preceding sentence, a

person is deemed to be in control of a document if the person has the right to secure the

document or a copy thereof from another person having actual possession thereof, including, but

not limited to, work product contracted by you from professional firms.

   9.  "<u>Leveraged Recapitalization</u>" means a series of transactions occurring in

August 2004 in which Thomas H. Lee Partners, together with certain affiliates and co-investors,

acquired approximately 57 percent of the equity interests in New Refco Group Ltd, LLC ("<u>New</u>

<u>Refco</u>") in a leveraged recapitalization and any transaction whether before or after August 2004

directly or indirectly connected to THL's acquisition of the 57 percent stake in New Refco.

   10.  "<u>Liberty Corner</u>" means Liberty Corner Capital Strategies, LLC (and any

predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers,

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on their behalf, including but not limited to any affiliated investment vehicles or

management companies.

3

11.     ""Refco" means Refco, Inc. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), including without limitation, Refco Group Ltd. LLC ("RGL"), New Refco and Refco Capital Markets Ltd. ("RCM"), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

12.     "RGHI" means Refco Group Holdings, Inc. directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on its behalf.

13.     "Refco Securities" means any note, stock, treasury stock, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate, or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, option or right to subscribe to or purchase any of the foregoing concerning Refco.

14.     "Thomas H. Lee Partners" means Thomas H. Lee Partners L.P., a partnership, its predecessors, all parents, subsidiaries, partners, principals, managers and employees and any successors in interest.

15.     The words "you" or "your" means you and any or all past or present employees, partners, agents, representatives, officers, attorneys, or other persons or entities acting or purporting to act for or on your behalf.

16.     The terms "all" and "each" shall be construed as "all and each."

17.     "Family" means your parents, children, spouse, former spouse, siblings and/or significant other(s),  including domestic partners.

4

18.     The connectives "<u>and</u>" and "<u>or</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

<u>INSTRUCTIONS</u>

A.      The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2000 through and including the date of production.

B.      Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.      You shall produce all documents in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D.      If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

5

E.      Documents shall be produced in such fashion as to identify the
department, branch or office in which they were located and, where applicable, the natural
person in whose possession it was found and the business address of each document's
custodian(s).

F.      Any document withheld from production based on a claim of privilege or
any similar claim shall be identified by (1) the type of document, (2) the general subject matter
of the document, (3) the date of the document, and (4) such other information as is sufficient to
identify the document including the author of the document, the addressee of the document, and,
where not apparent, the relationship of the author and the addressee to each other.  The nature of
each claim of privilege shall be set forth.

G.      Documents attached to each other should not be separated.

H.      Documents not otherwise responsive to this discovery request shall be
produced if such documents mention, discuss, refer to, or explain the documents which are called
for by this discovery request.

I.      The fact that a document is produced by another party does not relieve you
of the obligation to produce your copy of the same document, even if the two documents are
identical.

J.      In producing documents and other materials, you are requested to furnish
all documents or things in your possession, custody or control, regardless of whether such
documents or materials are possessed directly by you or your directors, officers, agents,
employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators,
or by your attorneys or their agents, employees, representatives or investigators.

K.      If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

L.      Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

O.      The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

<u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST NO. 1</u>:

All documents concerning Refco, RGHI, BAWAG, Bennett, DF Capital or Desana.

<u>REQUEST NO. 2</u>:

All employment contracts, and/or business agreements, including but not limited to profit sharing agreements, whether formal or informal between yourself on one hand, and Refco, RGHI, BAWAG, Bennett, DF Capital or Desana on the other.

<u>REQUEST NO. 3</u>:

All documents concerning any compensation, payment or transfer of funds of any kind, whether in cash, options, loans, Refco securities or any other thing of value (each a "<u>Payment</u>"), received by you or any member of your Family, from Refco, RGHI, BAWAG, Bennett, or Thomas H. Lee Partners, including documents sufficient to show the date and amount of each such Payment, any subsequent transfer of each Payment, and the current location of each Payment.

REQUEST NO. 4:

All documents relating to your position of employment at Refco or RGHI or your business agreement with Refco or RGHI.

REQUEST NO. 5:

All documents directly or indirectly referring to or relating to the nature of your relationship with Refco, RGHI, Bennett, DF Capital, Desana or a Refco executive or board member.

REQUEST NO. 6:

All documents concerning ownership or financial interests in Refco, RGHI, DF Capital, Desana or Thomas H. Lee Partners held directly or indirectly by you or any member of your Family, including Refco securities, including documents sufficient to identify the ownership interests, the values thereof, the amounts invested, and anticipated and actual returns on the amounts invested.

REQUEST NO. 7:

All correspondence between you and Bennett or between you and any other Refco executive or board member.

REQUEST NO. 8:

All documents concerning the Leveraged Recapitalization.

REQUEST NO. 9:

All documents concerning Refco's initial public offering on or about August 16, 2005.

REQUEST NO. 10:

All documents concerning transactions, including but not limited to loans, transfers or investments, between yourself or any member of your Family, on one hand and Refco, RGHI or any other entity controlled by any member, past or present, of Refco's management or Board of Directors, on the other, from January 1, 1995 until the present.

REQUEST NO. 11:

All documents concerning transactions, including but not limited to loans, transfers or investments, between Refco, RGHI, Bennett, DF Capital, Desana or Thomas H. Lee Partners, on the one hand, and yourself or any company in which you hold an executive position or serve as a board member, on the other hand.

REQUEST NO. 12:

All documents concerning any communication (including but not limited to email or other electronic communication) with or relating to Refco, RGHI, BAWAG, Thomas H. Lee Partners, or a past or present executive or board member of Refco (from 1995 until the present).

REQUEST NO. 13:

All statements, transcripts of testimony, communications and documents you or members of your Family provided to the SEC, any Committee of Congress, any federal, state or other regulatory authority or agency, any grand jury or in any litigation or arbitration concerning Refco, RGHI or Bennett.

REQUEST NO. 14:

Document sufficient to identify any legal or equitable claims, including the nature and amount of all such claims, asserted against you or members of your Family concerning Refco.

9

<u>REQUEST NO. 15</u>:

All documents relating to any claims asserted by you against Refco.

<u>REQUEST NO. 16</u>:

All documents which refer, reflect or relate to communications by any person with any insurance carriers concerning Refco.

<u>REQUEST NO. 17</u>:

All documents concerning communications between you and any of Refco, or RGHI's agents, managers, or officers, including but not limited to in-house or outside counsel.

<u>REQUEST NO. 18</u>:

All documents concerning any and all additional events or circumstances that you reasonably believe contributed to the Refco's filing for bankruptcy protection.

<u>REQUEST NO. 19</u>:

All documents concerning any past (since January 1, 1995) or present board member or executive of Refco, including but not limited to Bennett, Gerald M. Sherer, Tone Grant, Robert Trosten, William Sexton and/or Santo Maggio.

<u>REQUEST NO. 20</u>:

All documents concerning Delta, Liberty Corner, PlusFunds Group, Inc., Betio Asset Investments Ltd., Chaco City Investments Ltd., Rabaul Holdings Ltd., Tecka Asset Holdings Ltd., Tuvalu Holding Company, Ltd., Catamarca Asset Series, I, Ltd., Liquid Opportunity, Liquid Opportunity- Plus Fund, Alpha Capital AG, Jonathan Knight and/or Chris Sugrue.

10

**EXHIBIT C**

<u>**SCHEDULE OF DOCUMENTS TO BE PRODUCED BY:**</u>
<u>**Delta Flyer Fund LLC, Eric Flanagan and Ingram Micro Inc.**</u>

<u>DEFINITIONS</u>

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.    ""<u>BAWAG</u>" means BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft, any of its subsidiaries (and any predecessors thereof) including but not limited to, BAWAG Overseas Inc. and Alinea Holding GmbH, directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

2.    "<u>Bennett</u>" means Phillip R. Bennett.

3.    "<u>Board of Directors</u>" means Refco's Board of Directors or Board of Managers and any of Refco's Board of Directors' or Board of Managers' subcommittees.

4.    The term "<u>concerning</u>" means relating to, referring to, describing, evidencing or constituting.

5.    "<u>Delta</u>" means Delta Flyer Fund, LLP. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

6.    "<u>Desana</u>" means Desana Foundation, a Lichtenstein Stifung (Lichtenstein Foundation), any of its subsidiaries, directors, officers, shareholders, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

7.      "DF Capital" means DF Capital Inc., a corporation organized under the laws of Delaware, any of its subsidiaries, directors, officers, shareholders, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

8.      The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, audit and scope plans (whether in paper, database, electronic or other format(s)), audit workpapers (whether in paper, database, electronic or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies,

summaries, tabulations, telegrams, telephone records, telex messages, transcripts,

understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets

or things similar to any of the foregoing however denominated.  The term "document" further

includes email and electronic communication whether stored on a personal computer, network

computer system, backup computer tape and/or disk, or by some other storage mechanism.  The

term "document" further means any document now or at any time in the possession, custody, or

control of the entity to whom this document request is directed (together with any predecessors,

successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees,

agents and attorneys).  Without limiting the term "control" as used in the preceding sentence, a

person is deemed to be in control of a document if the person has the right to secure the

document or a copy thereof from another person having actual possession thereof, including, but

not limited to, work product contracted by you from professional firms.

       9.     "<u>Leveraged Recapitalization</u>" means a series of transactions occurring in

August 2004 in which Thomas H. Lee Partners, together with certain affiliates and co-investors,

acquired approximately 57 percent of the equity interests in New Refco group Ltd, LLC ("<u>New

Refco</u>") in a leveraged recapitalization and any transaction whether before or after August 2004

directly or indirectly connected to THL's acquisition of the 57 percent stake in New Refco.

       10.     "<u>Ingram Mirco</u>" means Ingram Micro Inc. (and any predecessor thereof),

any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf,

including but not limited to any affiliated investment vehicles or management companies.

       11.     "<u>Liberty Corner</u>" means Liberty Corner Capital Strategies, LLC (and any

predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers,

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on their behalf, including but not limited to any affiliated investment vehicles or

management companies.

12.      ""<u>Refco</u>" means Refco, Inc. (and any predecessor thereof), any of its

subsidiaries (and any predecessors thereof), including without limitation, Refco Group Ltd. LLC

("<u>RGL</u>"), New Refco and Refco Capital Markets Ltd. ("<u>RCM</u>"), directors, officers, employees,

affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on

their behalf.

13.      "<u>RGHI</u>" means Refco Group Holdings, Inc. directors, officers,

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on its behalf.

14.      "<u>Refco Securities</u>" means any note, stock, treasury stock, debenture,

evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate, or

any other certificate of interest or participation (whether permanent, temporary or interim), or

any warrant, option or right to subscribe to or purchase any of the foregoing concerning Refco.

15.      "<u>Thomas H. Lee Partners</u>" means Thomas H. Lee Partners L.P., a

partnership, its predecessors, all parents, subsidiaries, partners, principals, managers and

employees and any successors in interest.

16.      The words "<u>you</u>" or "<u>your</u>" means you and any or all past or present

employees, partners, agents, representatives, officers, attorneys, or other persons or entities

acting or purporting to act for or on your behalf.

17.      The terms "<u>all</u>" and "<u>each</u>" shall be construed as "all and each."

18.    "Family" means your parents, children, spouse, former spouse, siblings and/or significant other(s), including domestic partners.

19.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

A.    The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2000 through and including the date of production.

B.    Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.    You shall produce all documents in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D.    If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access

5

to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

E.       Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

F.       Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

G.       Documents attached to each other should not be separated.

H.       Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I.       The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

J.       In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents,

employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K.      If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

L.      Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

O.      The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

<u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST NO. 1</u>:

All documents concerning Refco, BAWAG, DF Capital, Desana, Thomas H. Lee Partners and/or RGHI.

<u>REQUEST NO. 2</u>:

All documents concerning any compensation or payments of any kind, whether in cash, option, loans, Refco securities or any other thing of value, you received from Refco or RGHI, including documents sufficient to show the date and amount of such item.

<u>REQUEST NO. 3</u>:

All documents concerning ownership or financial interests in Refco, BAWAG, Thomas H. Lee Partners or RGHI held directly or indirectly by you, including any Refco Securities, including documents sufficient to identify the ownership interests, the value thereof, the amounts invested, and anticipated and actual returns on the amounts invested.

REQUEST NO. 4:

        All documents concerning the Leveraged Recapitalization.

REQUEST NO. 5:

        All documents concerning Refco's initial public offering on or about August 16, 2005.

REQUEST NO. 6:

        All documents concerning any communication (including but not limited to email and other electronic communication) relating to or with Refco, RGHI or Thomas H. Lee Partners.

REQUEST NO. 7:

        All documents concerning transactions, including but not limited to loans, transfers or investments, between you, on the one hand, and Refco, RGHI or any other entity controlled by any member, past or present, of Refco's management or Board of Directors, or any Refco officer, director, employee, on the other.

REQUEST NO. 8:

        All documents concerning any agreements, whether formal or informal, between you, on one hand and Refco, BAWAG, or RGHI, or any Refco officer, director or employee, on the other.

REQUEST NO. 9:

        All statements, transcripts of testimony, communications and documents you provided to the SEC, any Committee of Congress, any federal, state or other regulatory authority or agency, any grand jury or in any litigation or arbitration concerning Refco or RGHI.

REQUEST NO. 10:

Documents sufficient to identify any legal or equitable claims, including the

nature and amount of all such claims, asserted against you concerning Refco.

REQUEST NO. 11:

All documents which refer, reflect or relate to communications by any person

with any insurance carriers concerning Refco.

REQUEST NO. 12:

All documents concerning any and all additional events or circumstances that you

reasonably believe contributed to Refco's filing for bankruptcy protection.

REQUEST NO. 13:

All documents concerning any past (since January 1, 1995) or present board

member or executive of Refco, including but not limited to Bennett, Gerald M. Sherer, Tone

Grant, Robert Trosten, William Sexton and/or Santo Maggio.

REQUEST NO. 14:

All documents concerning, Liberty Corner, PlusFunds Group, Inc., Betio Asset

Investments Ltd., Chaco City Investments Ltd., Rabaul Holdings Ltd., Tecka Asset Holdings

Ltd., Tuvalu Holding Company, Ltd., Catamarca Asset Series, I, Ltd., Liquid Opportunity,

Liquid Opportunity-Plus Fund, Alpha Capital AG, Jonathan Knight, Mark Kavanagh, Suffolk

LLC and/or Chris Sugrue.

**EXHIBIT D**

## SCHEDULE OF DOCUMENTS TO BE PRODUCED BY:
**Arthur Andersen, Ernst & Young LLP, Levine & Jacobs, and
PricewaterhouseCoopers, LLP**

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

1.      "BAWAG" means BAWAG P.S.K. Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft, any of its subsidiaries (and any predecessors thereof) including but not limited to, BAWAG Overseas Inc. and Alinea Holding GmbH, directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

2.      "Bennett" means Phillip R. Bennett.

3.      "Board of Directors" means Refco's Board of Directors or Board of Managers and any of Refco's Board of Directors' or Board of Managers' subcommittees.

4.      The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5.      "Delta" means Delta Flyer Fund, LLP. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

6.      "Desana" means Desana Foundation, a Lichtenstein Stifung (Lichtenstein Foundation), any of its subsidiaries, directors, officers, shareholders, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

7.     "DF Capital" means DF Capital Inc., a corporation organized under the laws of Delaware, any of its subsidiaries, directors, officers, shareholders, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

8.     The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, audit and scope plans (whether in paper, database, electronic or other format(s)), audit workpapers (whether in paper, database, electronic or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies,

summaries, tabulations, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets or things similar to any of the foregoing however denominated.  The term "document" further includes email and electronic communication whether stored on a personal computer, network computer system, backup computer tape and/or disk, or by some other storage mechanism.  The term "document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys).  Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof, including, but not limited to, work product contracted by you from professional firms.

9.      "Ingram Micro" means Ingram Micro Inc. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

10.      "Leveraged Recapitalization" means a series of transactions occurring in August 2004 in which Thomas H. Lee Partners, together with certain affiliates and co-investors, acquired approximately 57 percent of the equity interests in New Refco Group Ltd, LLC ("New Refco") in a leveraged recapitalization and any transaction whether before or after August 2004 directly or indirectly connected to THL's acquisition of the 57 percent stake in New Refco.

11.      "Liberty Corner" means Liberty Corner Capital Strategies, LLC (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers,

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on their behalf, including but not limited to any affiliated investment vehicles or

management companies.

12.    "Refco" means Refco, Inc. (and any predecessor thereof), any of its

subsidiaries (and any predecessors thereof), including without limitation, Refco Group Ltd. LLC

("RGL"), New Refco and Refco Capital Markets Ltd. ("RCM"), directors, officers, employees,

affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on

their behalf.

13.    "Refco Engagement" means all the work performed by you in relation to

or on behalf of Refco, or in relation to or on behalf of Thomas H. Lee Partners concerning Refco,

including, without limitation, debt offerings, audits of Refco's financial statements, preparation

for an initial public offering, preparation of a prospectus and registration statement for an initial

public offering, agreed upon procedures, letters to underwriters, memoranda, letters and/or

opinions as to accounting policies and issues, assistance in communicating with the SEC and

other regulatory bodies, preparation of consolidated financial statements and any other

examination, consultation, review or tax assistance.

14.    "RGHI" means Refco Group Holdings, Inc. directors, officers, employees,

affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on its

behalf.

15.    "RGHI Engagement" means all the work performed by you in relation to

or on behalf of RGHI.

16.    "Refco Securities" means any note, stock, treasury stock, debenture,

evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate, or

4

any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, option or right to subscribe to or purchase any of the foregoing concerning Refco.

17.    "Thomas H. Lee Partners" means Thomas H. Lee Partners L.P., a partnership, its predecessors, all parents, subsidiaries, partners, principals, managers and employees and any successors in interest.

18.    The words "you" or "your" means you and any or all past or present employees, partners, agents, representatives, officers, attorneys, or other persons or entities acting or purporting to act for or on your behalf.

19.    The terms "all" and "each" shall be construed as "all and each."

20.    "Family" means your parents, children, spouse, former spouse, siblings and/or significant other(s), including domestic partners.

21.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

A.    The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2000 through and including the date of production.

B.    Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.      You shall produce all documents in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D.      If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

E.      Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

F.      Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

G.      Documents attached to each other should not be separated.

H.    Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I.    The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

J.    In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

K.    If you object to any part of any request, you shall state fully in writing the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

L.    Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

O.    The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

<u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST NO. 1</u>:

All documents concerning Refco, RGHI, Liberty Corner, Ingram Micro, BAWAG, Thomas H. Lee, Delta, the Refco Engagement and/or the RGHI Engagement.

REQUEST NO. 2:

All documents concerning your work in connection with the Refco Engagement or the RGHI Engagement, including but not limited to, all workpapers and any other documents that you relied upon, considered, collected, referred to, created or amended.

REQUEST NO. 3:

All documents concerning any transaction, including but not limited to loans, transfers, investments, involving Refco, or RGHI or any other entity controlled by any member, past or present, of Refco's management or board of directors, on the other, from January 1, 1995.

REQUEST NO. 4:

All documents concerning transactions, including but not limited to loans, transfers or investments, between Refco, RGHI, Thomas H. Lee Partners, Delta or Liberty Corner, on the one hand, and any Refco officer, director or employee, past or present, on the other hand from January 1, 1997.

REQUEST NO. 5:

All documents concerning transactions, including but not limited to loans, transfers or investments, between Refco or RGHI, on the one hand, and Liberty Corner, Ingram Micro or Delta on the other, from January 1, 1997.

REQUEST NO. 6:

All documents concerning any loan by Refco to a Refco customer that also had a loan or other obligation to or from RGHI or any other entity controlled by any member, past or present, of Refco's management or Board of Directors.

REQUEST NO. 7:

All documents reflecting transactions, including but not limited to loans, inter-company transfers, other transfers or investments, between any of Refco's subsidiaries or Refco, on the one hand, and any other of Refco's subsidiaries or Refco, on the other.

REQUEST NO. 8:

All documents describing or illustrating Refco's organizational structure.

REQUEST NO. 9:

All documents concerning Refco's internal accounting controls, including, but not limited to, all documents that relied upon, considered, collected, referred to, created or amended in connection with performing studies and/or evaluations of Refco's internal accounting controls.

REQUEST NO. 10:

All financial statements and/or reports concerning Refco, whether or not issued, including, without limitation, audit reports, agreed-upon procedures and other special reports, consulting reports, letters, and recommendations to the Refco management or Board of Directors, management advisory letters, compliance reports, internal accounting control reports, material deficiency reports, program reports, cost reports, financial statement reports, reports of material weaknesses and reports of reportable conditions.

REQUEST NO. 11:

All documents concerning Refco's SEC filings.

REQUEST NO. 12:

All documents concerning Refco's financial statements, including but not limited to any restatement or planned restatement of Refco's financial statements.

REQUEST NO. 13:

All documents concerning any communication (including but not limited to email or other electronic communication) relating to Refco, the Refco Engagement, RGHI and/or the RGHI Engagement.

REQUEST NO. 14:

All of your permanent files, correspondence files, and internal memoranda concerning Refco, the Refco Engagement, RGHI and/or the RGHI Engagement.

REQUEST NO. 15:

All documents concerning any internal reviews of you or any of your divisions, departments, partners, directors, employees or agents of any services provided to Refco by you.

REQUEST NO. 16:

All internal manuals, statements of policies and procedures, audit procedure guides and your industry audit and accounting guides in effect at any time during examinations of the financial statements of Refco. If the manuals and guides in effect during your audit examinations of Refco in this time are no longer available, then this Request also calls for the production of the earliest versions of the manuals and guides that were prepared after your audit examinations of Refco and that are now available.

REQUEST NO. 17:

All documents referring to, describing, suggesting or alleging possible violations of professional standards in the services provided to Refco and/or RGHI.

REQUEST NO. 18:

All engagement letters, consulting contracts or other documents constituting, referring to or relating to any agreements with Refco, RGHI or concerning the Refco

Engagement, including any and all subcontracts or other arrangements with third parties in connection with the Refco Engagement including, but not limited to, valuations, forensic reports or opinions.

REQUEST NO. 19:

All documents concerning the decision to accept, or continue to represent Refco as client, including, but not limited to, any new client form or continuing client form or new client memoranda or continuing client memoranda concerning Refco or the Refco Engagement.

REQUEST NO. 20:

All billing files or their equivalent, and their constituent parts, relating to Refco, the Refco Engagement, RGHI or the RGHI Engagement including, without limitation, records of time and out-of-pocket expenses incurred, and documents relating to billings and collection of these items.

REQUEST NO. 21:

All working files, correspondence files, desk files or personal files of any of your partners, directors or other employees concerning Refco, the Refco Engagement, the RGHI Engagement and/or RGHI.

REQUEST NO. 22:

All time sheets, mark-ups and other time records or summaries thereof (including, but not limited to, internal billing memoranda) concerning the amount of time each of your professional employees, directors and partners spent on a daily, weekly, semi-monthly, monthly, annual, or other periodic, basis in providing service to Refco or to RGHI.

REQUEST NO. 23:

All desk or pocket diaries, calendar entries, notes, expense reports or records of any of your partners, directors or employees concerning Refco, the Refco Engagement, the RGHI Engagement and/or RGHI.

REQUEST NO. 24:

All documents provided or available to the persons assigned to the Refco Engagement, or any part thereof, to prepare such persons for the Refco Engagement or referred to during such engagement, including, without limitation, training or instruction manuals, audit guides, program materials, and audit reports on other entities.

REQUEST NO. 25:

All personnel records of client service professionals assigned to the Refco Engagement, including, but not limited to, assignment schedules, chargeable hours, technical training records, performance evaluations, promotion assessments, salary and raises received, and CPA exam scores.

REQUEST NO. 26:

Documents sufficient to identify all of your current or former personnel who were hired by Refco or RGHI.

REQUEST NO. 27:

Documents sufficient to identify your policies and procedures concerning file, document, or other information retention and/or destruction.

REQUEST NO. 28:

All statements, transcripts of testimony, communications and documents provided to the SEC, any Committee of Congress, the Attorney General of New York or any other federal,

state or other regulatory authority or agency, grand jury or any party in connection with any

lawsuit concerning Refco, the Refco Engagement, RGHI, the RGHI Engagement, Delta, Liberty

Corner or BAWAG.

REQUEST NO. 29:

All statements, transcripts of testimony, communications and documents provided

to the American Institute of Certified Public Accountants or any other professional association of

certified public accountants regarding Refco, the Refco Engagement, RGHI, the RGHI

Engagement, Thomas H. Lee Partners or BAWAG.

REQUEST NO. 30:

All prepared statements and/or transcripts of testimony given by any of partners,

directors or employees involved in the Refco Engagement.

REQUEST NO. 31:

Documents sufficient to identify whether any partner, director or employee who

performed services in connection with the Refco Engagement has been the subject of any

disciplinary action, adverse performance review or claim for professional malpractice.

REQUEST NO. 32:

All contracts, policies or other documents which purport to obligate any person,

party or entity to insure or otherwise reimburse for or against claims relating to professional

malpractice or negligence.

REQUEST NO. 33:

All documents which refer, reflect or relate to communications by any person

with any insurance carriers concerning Refco, the Refco Engagement, RGHI or the RGHI

Engagement.

<u>REQUEST NO. 34</u>:

Documents sufficient to identify the nature and amount of all claims against you concerning Refco or the Refco Engagement.

<u>REQUEST NO. 35</u>:

All documents which refer, reflect or relate to the purchase and/or sale of any Refco Securities by any partner, director and/or employee.

<u>REQUEST NO. 36</u>:

All documents concerning any business or professional relationship, other than the Refco Engagement or the RGHI Engagement, between you and Refco, RGHI, Thomas H. Lee Partners or Bennett.

<u>REQUEST NO. 37</u>:

All documents concerning any and all additional events or circumstances that you reasonably believe contributed to Refco's filing for bankruptcy protection.

<u>REQUEST NO. 38</u>:

All documents concerning any past (since January 1, 1995) or present board member or executive of Refco, including but not limited to Bennett, Gerald M. Sherer, Tone Grant, Robert Trosten, William Sexton and/or Santo Maggio.

<u>REQUEST NO. 39</u>:

All documents concerning PlusFunds Group, Inc., Betio Asset Investments Ltd., Chaco City Investments Ltd., Rabaul Holdings Ltd., Tecka Asset Holdings Ltd., Tuvalu Holding Company, Ltd., Catamarca Asset Series, I, Ltd., Liquid Opportunity, Liquid Opportunity-Plus Fund, Alpha Capital AG, Jonathan Knight, Mark Kavanagh, Suffolk LLC and/or Chris Sugrue.

**EXHIBIT E**

**SCHEDULE OF DOCUMENTS TO BE PRODUCED BY:**
**McDermott Will & Emery**

DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions

set forth below.

1.      "BAWAG" means BAWAG P.S.K. Bank für Arbeit und Wirtschaft und

Österreichische Postsparkasse Aktiengesellschaft, any of its subsidiaries (and any predecessors

thereof) including but not limited to, BAWAG Overseas Inc. ("BAWAG Overseas") and Alinea

Holding GmbH ("Alinea"), directors, officers, employees, affiliates, representatives, advisors,

agents, attorneys, associates or any other person acting on their behalf.

2.      "Bank Frick" means Frick Bank & Co., a corporation organized under the

laws of Liechtenstein, any of its subsidiaries (and any predecessors thereof), directors, officers,

employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person

acting on their behalf, including but not limited to any affiliated investment vehicles or

management companies.

3.      "Bennett" means Phillip R. Bennett.

4.      "Board of Directors" means Refco's Board of Directors or Board of

Managers and any of Refco's Board of Directors' or Board of Managers' subcommittees.

5.       The term "concerning" means relating to, referring to, describing,

evidencing or constituting.

6.      "Delta" means Delta Flyer Fund, LLP. (and any predecessor thereof), any

of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

7.      "Desana" means Desana Foundation, a Lichtenstein Stifung (Lichtenstein Foundation), any of its subsidiaries, directors, officers, shareholders, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

8.      "DF Capital" means DF Capital Inc., a corporation organized under the laws of Delaware, any of its subsidiaries, directors, officers, shareholders, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

9.      The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original.  The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, audit and scope plans (whether in paper, database, electronic or other format(s)), audit workpapers (whether in paper, database, electronic or other format(s)), books, books of account, account statements, cables, calendars, charts, checks (cancelled or uncancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals,

ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers,

partners' and employees' personnel files, partners' and employees' review check lists, permanent

files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of

conferences, conversations or meetings, reports, statements, statistical records, studies,

summaries, tabulations, telegrams, telephone records, telex messages, transcripts,

understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets

or things similar to any of the foregoing however denominated.  The term "document" further

includes email and electronic communication whether stored on a personal computer, network

computer system, backup computer tape and/or disk, or by some other storage mechanism.  The

term "document" further means any document now or at any time in the possession, custody, or

control of the entity to whom this document request is directed (together with any predecessors,

successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees,

agents and attorneys).  Without limiting the term "control" as used in the preceding sentence, a

person is deemed to be in control of a document if the person has the right to secure the

document or a copy thereof from another person having actual possession thereof, including, but

not limited to, work product contracted by you from professional firms.

      10.     "Ingram Micro" means Ingram Micro Inc. (and any predecessor thereof),

any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates,

representatives, advisors, agents, attorneys, associates or any other person acting on their behalf,

including but not limited to any affiliated investment vehicles or management companies.

      11.     "Leveraged Recapitalization" means a series of transactions occurring in

August 2004 in which Thomas H. Lee Partners, together with certain affiliates and co-investors,

acquired approximately 57 percent of the equity interests in New Refco Group Ltd, LLC ("New

3

Refco") in a leveraged recapitalization and any transaction whether before or after August 2004 directly or indirectly connected to THL's acquisition of the 57 percent stake in New Refco.

12.     "Liberty Corner" means Liberty Corner Capital Strategies, LLC (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf, including but not limited to any affiliated investment vehicles or management companies.

13.     "Refco" means Refco, Inc. (and any predecessor thereof), any of its subsidiaries (and any predecessors thereof), including without limitation, Refco Group Ltd. LLC ("RGL"), New Refco and Refco Capital Markets Ltd. ("RCM"), directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on their behalf.

14.     "RGHI" means Refco Group Holdings, Inc. directors, officers, employees, affiliates, representatives, advisors, agents, attorneys, associates or any other person acting on its behalf.

15.     "Refco Securities" means any note, stock, treasury stock, debenture, evidence of indebtedness, collateral trust certificate, transferable share, voting trust certificate, or any other certificate of interest or participation (whether permanent, temporary or interim), or any warrant, option or right to subscribe to or purchase any of the foregoing concerning Refco.

16.     "Thomas H. Lee Partners" means Thomas H. Lee Partners L.P., a partnership, its predecessors, all parents, subsidiaries, partners, principals, managers and employees and any successors in interest.

17.     The words "you" or "your" means you and any or all past or present employees, partners, agents, representatives, officers, attorneys, or other persons or entities acting or purporting to act for or on your behalf.

18.     The terms "all" and "each" shall be construed as "all and each."

19.      "Family" means your parents, children, spouse, former spouse, siblings and/or significant other(s), including domestic partners.

20.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

A.     The documents covered by this request include all documents in your possession, custody or control.  Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2000 through and including the date of production.

B.     Each request for the production of documents shall be deemed to be continuing in nature.  If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

C.     You shall produce all documents in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the documents to correspond with the categories in this request.  A request for a document shall be deemed to include a request for any and all file folders within which the document was

contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

D.    If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

E.    Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

F.    Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.  The nature of each claim of privilege shall be set forth.

G.    Documents attached to each other should not be separated.

H.    Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

I.    The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

6

J.      In producing documents and other materials, you are requested to furnish

all documents or things in your possession, custody or control, regardless of whether such

documents or materials are possessed directly by you or your directors, officers, agents,

employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators,

or by your attorneys or their agents, employees, representatives or investigators.

K.      If you object to any part of any request, you shall state fully in writing the

nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with

the other parts of the request to which you are not objecting.

L.      Each document request shall be construed independently and not with

reference to any other document request for the purpose of limitation.

O.      The use of the singular form of any word includes the plural and vice

versa. The past tense shall include the present tense and vice versa.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1:

All documents concerning Refco, RGHI, Alinea, BAWAG Overseas, Bank Frick,

BAWAG, DF Capital, and Desana.

REQUEST NO. 2:

All business agreements, engagement letters or retainer agreements, whether

formal or informal between yourself on one hand, and Refco, RGHI, Alinea, BAWAG Overseas,

Bank Frick, BAWAG, DF Capital, Desana or Bennett on the other.

REQUEST NO. 3:

All documents concerning any compensation, payment or transfer of funds of any

kind, whether in cash, options, loans, Refco securities or any other thing of value (each a

"Payment"), received by you or any member of your Family, from Refco, RGHI, Bennett, Alinea, BAWAG Overseas, BAWAG, DF Capital, Desana, or Thomas H. Lee Partners, including documents sufficient to show the date and amount of each such Payment, any subsequent transfer of each Payment, and the current location of each Payment.

REQUEST NO. 4:

All correspondence between you and Bennett, or you and any other Refco executive or board member, Refco and/or RGHI.

REQUEST NO. 5:

All correspondence between you and any past or present employee of Alinea, BAWAG, Bank Frick., BAWAG Overseas, DF Capital or Desana, including but not limited to any BAWAG executive or board member.

REQUEST NO. 6:

All documents concerning the Leveraged Recapitalization.

REQUEST NO. 7:

All documents concerning Refco's initial public offering on or about August 16, 2005, including but not limited to documents concerning to the preparation and filing of documents with the SEC related to Refco's initial public offering.

REQUEST NO. 8:

All documents concerning transactions, including but not limited to loans, transfers or investments, that involved Refco, Phillip Bennett, RGHI, Thomas H. Lee Partners, BAWAG, BAWAG Overseas, Alinea, Bank Frick, DF Capital, Desana, or any other entity controlled by any member, past or present, of Refco's or BAWAG's management or Board of Directors, from January 1, 1995.

REQUEST NO. 9:

All documents concerning any loan by Refco to a Refco customer that also had a loan or other obligation to or from RGHI or any entity controlled by any member, past or present, of Refco's management or Board of Directors.

REQUEST NO. 10:

All statements, transcripts of testimony, communications and documents you or members of your Family provided to the SEC, any Committee of Congress, any federal, state or other regulatory authority or agency, any grand jury or in any litigation or arbitration concerning Refco, RGHI, Bennett, Alinea, BAWAG, BAWAG Overseas, DF Capital or Desana.

REQUEST NO. 11:

Document sufficient to identify any legal or equitable claims, including the nature and amount of all such claims, asserted against you or members of your Family concerning Refco.

REQUEST NO. 12

All documents which refer, reflect or relate to insurance coverage or communications by any person with any insurance carriers concerning Refco.

REQUEST NO. 13

All documents concerning communications between you and any of Refco, or RGHI's agents, directors or officers, including but not limited to in-house or outside counsel.

REQUEST NO. 14:

All documents concerning any and all additional events or circumstances that you reasonably believe contributed to the Refco's filing for bankruptcy protection.

<u>REQUEST NO. 15</u>:

All documents concerning, Delta and/or Liberty Corner,  Ingram Micro, PlusFunds Group, Inc., Betio Asset Investments Ltd., Chaco City Investments Ltd., Rabaul Holdings Ltd., Tecka Asset Holdings Ltd., Tuvalu Holding Company, Ltd., Catamarca Asset Series, I, Ltd., Liquid Opportunity, Liquid Opportunity- Plus Fund, Alpha Capital AG, Jonathan Knight, Mark Kavanagh and/or Chris Sugrue.

EXHIBIT B

Luc A. Despins (LD 5141)
Scott A. Edelman (SE 5247)
Dennis C. O'Donnell (DO 3648)
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
Proposed Counsel for Official
Committee of Unsecured Creditors
of Refco Inc., <u>et al.</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------x
                                     :
In re:                               : Chapter 11
                                     :
REFCO INC., <u>et al.</u>,           : Case No. 05-60006 (RDD)
                                     : (Jointly Administered)
            Debtors.                 :
                                     :
------------------------------------x

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER 11 U.S.C. § 1103(C) AND BANKRUPTCY RULE 2004, DIRECTING PRODUCTION OF DOCUMENTS BY, CERTAIN (I) CURRENT DIRECTORS AND FORMER OFFICERS AND EMPLOYEES AND (II) INVESTORS, ATTORNEYS, AND ACCOUNTANTS OF REFCO INC.

The Official Committee of Unsecured Creditors of Refco

Inc., <u>et al.</u> (the "<u>Committee</u>"), by its proposed counsel,

Milbank, Tweed, Hadley & McCloy LLP, moves this Court for entry

of an order pursuant to section 1103(c) of Title 11, United

States Code, 11 U.S.C. §§ 101, <u>et seq.</u> (the "<u>Bankruptcy Code</u>")

and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), directing the production of documents by

(i) certain current directors and former officers and employees

of Refco Inc. ("<u>Refco</u>" or the "<u>Company</u>"; and, together with its

affiliated debtors and debtors in possession, the "Debtors");
(ii) certain third party investors, counterparties, and other
participants in the events and circumstances described herein;
and (iii) Refco's accountants and attorneys ((i), (ii) and (iii)
collectively, the "Respondents").  In support of the Motion, the
Committee states as follows:

## BACKGROUND

1.   On October 17, 2005 (the "Petition Date"), each
of the Debtors filed a voluntary petition in this Court for
relief under chapter 11 of the Bankruptcy Code.  The Debtors
continue to manage and operate their businesses as debtors in
possession pursuant to Bankruptcy Code sections 1107 and 1108.

2.   The Committee was appointed by the U.S. Trustee
on October 28, 2005.  No trustee or examiner has been appointed
in the Debtors' chapter 11 cases (the "Chapter 11 Cases").

3.   This Court has jurisdiction over this matter
pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Chapter 11
Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This
matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.   The statutory predicates for the relief requested
herein are Bankruptcy Code section 1103(c)(2) and Bankruptcy
Rule 2004.

## RELEVANT FACTS

**A.    Refco and the Debtors**

5.    Refco and its direct and indirect subsidiaries
are providers of execution and clearing services for exchange-
traded derivatives and are major providers of prime brokerage
services in the fixed income and foreign exchange markets.  In
2004, according to the Debtors' Bankruptcy Court filings, the
Debtors were the largest provider of customer transaction volume
to the Chicago Mercantile Exchange, the largest derivatives
exchange in the United States.  The Debtors service accounts
from over twenty locations in over ten countries.  Their
customers include corporations, government agencies, hedge
funds, managed futures funds, pension funds, financial
institutions, retail clients and professional traders.

6.    Many of the Debtors are holding companies for
either regulated domestic entities, such as futures commission
merchants Refco LLC, or foreign futures brokerages.  Other
Debtors, including Refco Capital Management, Ltd. ("RCM"), a non-
regulated entity with operations in New York City, provide prime
brokerage services in the foreign exchange markets and other
businesses.

7.    On August 16, 2005, Refco completed an initial
public offering (the "IPO").

3

B.    **The Bennett Receivable Scheme**

    1.    **October 10, 2005 Announcement**

        8.    On October 10, 2005, Refco announced that it had discovered, through an internal review, a previously undisclosed receivable owed to the Debtors by Refco Group Holdings, Inc. ("RGHI"), an entity controlled by Phillip R. Bennett, Refco's Chairman and Chief Executive Officer, in the amount of approximately $430 million.  The receivable had not been shown as a related-party transaction in Refco's prior financial statements or in the Registration Statement and Prospectus filed in connection with the IPO.

        9.    Refco subsequently disclosed in an October 12, 2005 press release that the debt had not been shown as a related-party transaction because Mr. Bennett had caused Refco to engage in a series of transactions designed to disguise the related-party nature of the receivable by temporarily paying off the debt and transferring it from RGHI, the entity controlled by Mr. Bennett, to another entity unrelated to Refco.

        10.    Mr. Bennett took an indefinite leave of absence when the news broke on October 10, 2005.  Mr. Bennett was arrested on October 12, 2005, after the United States Attorney for the Southern District of New York filed a criminal complaint against him for securities fraud (the "Criminal Complaint"), a

copy of which is annexed hereto as Exhibit "B".  Mr. Bennett is,
according to press reports, currently free on $50 million bail.

        11.  On October 17, 2005, the Debtors filed for
bankruptcy under chapter 11 of the Bankruptcy Code.

        **2.    Nature of the Fraud**

        12.  Investigation of the nature and full scope of the
fraud committed by Bennett and any co-conspirators is ongoing by
various government agencies.  Based upon the allegations of the
Criminal Complaint, it appears that the fraud was designed
primarily to conceal from investors hundreds of millions of
dollars in uncollectible debts owed to Refco by unrelated third
parties.  Refco has stated publicly that the scheme could have
commenced as early as 1998.

        13.  At some point before or after 1998, Mr. Bennett
caused the uncollectible obligations to be transferred to RGHI,
a company that was partly, and later wholly, controlled by Mr.
Bennett.  According to the Criminal Complaint, to avoid
reporting the debt from RGHI to Refco, toward the end of every
relevant quarter, RCM, or another Refco subsidiary, would extend
loans to one of several hedge funds, including Liberty Corner
Capital Strategies LLC ("Liberty Corner"), that would, in turn,
lend funds to RGHI to enable it to pay down the debt it owed to
Refco.  RGHI would pay down the debt prior to the end of the
quarter.  The parties would then unwind the entire transaction a

few days into the next quarter.  The effect of these
transactions was, according to the Criminal Complaint, to
convert, at the end of each accounting period and for
bookkeeping purposes only, an obligation from RGHI to Refco into
an obligation from the hedge funds to Refco.  For the remainder
of each period, however, RGHI held the obligation to Refco.

14.  A graphical representation of one set of the
transactions involved in this scheme (the "Bennett Receivables
Scheme"), the transactions identified in the Criminal Complaint,
is provided in the chart annexed hereto as Exhibit "C".

15.  The transactions identified in the Criminal
Complaint related to Mr. Bennett's efforts to conceal the
related-party receivable then in existence between Refco and
RGHI (in the amount of $335 million) on February 28, 2005, the
end of Refco's 2004 fiscal year.  To conceal the receivable over
this year-end period, according to the Criminal Complaint, RCM
loaned to Liberty Corner $335 million on February 23, 2005, on
terms that required the payment of interest and repayment in
full by Liberty Corner on or before March 8, 2005.

16.  On the same date, according to the Criminal
Complaint, Liberty Corner loaned to RGHI $335 million, with this
loan also requiring repayment on or before March 8, 2005.  The
interest rate on the loan from Liberty Corner to RGHI was 75
basis points higher than the interest rate on the loan from RCM

to Liberty Corner, thus ensuring a profit for Liberty Corner.
Mr. Bennett also caused Refco Group, Ltd. to guarantee repayment
of the loan from Liberty Corner to RGHI.

17.    RGHI, in turn, used the proceeds of the loan from
Liberty Corner to repay the relevant portion of its existing
debt to Refco.  According to the Criminal Complaint, the result
of this transaction was to substitute, at the end of the
accounting period, a $335 million debt to Refco from Liberty
Corner for a $335 million debt to Refco from RGHI.  When the
accounting period closed, the entire transaction was, according
to the Criminal Complaint, unwound by Refco making a second loan
to RGHI to repay Liberty Corner and RGHI being returned to its
position as the holder of the debt to Refco for the remainder
the fiscal quarter.

18.    Based upon the allegations of the Criminal
Complaint, Refco engaged in similar transactions over, at a
minimum, the quarters ending May 31, 2005, November 30, 2004,
and August 31, 2004.  In each of these periods, the Criminal
Complaint alleges that a Refco entity made short-term loans, in
amounts ranging up to $545 million, to various Refco customers
who in turn loaned the same sum to RGHI, with a guarantee by
another Refco entity.  In each case these transactions allowed
RGHI to eliminate temporarily its debt to Refco as of the end of
the quarterly reporting period, replacing RGHI's debt with debt

from a Refco customer.  According to the Criminal Complaint,
these transactions thereby allowed Mr. Bennett to hide the
related-party nature of RGHI's continuing indebtedness to Refco.
For this reason, the Debtors announced, in a press release dated
October 10, 2005, that their financial statements, as of, and
for the periods ended, February 28, 2002, February 28, 2003,
February 28, 2004, February 28, 2005, and May 31, 2005, taken as
a whole, for each of Refco, Refco Group Ltd., and Refco Finance,
Inc., should no longer be relied upon.

       3.   **Damage to Refco**

      19.  On October 10, 2005, after the Bennett
Receivables Scheme was disclosed, RGHI and/or Mr. Bennett repaid
in full RGHI's indebtedness to Refco.  According to the Criminal
Complaint, RGHI's repayment was made from the proceeds of a loan
obtained by RGHI and/or Mr. Bennett from a "foreign bank,"
which, based upon published reports, was BAWAG P.S.K. Group --
Austria's fourth largest bank and the one-time holder of a 10%
equity stake in Refco.  Notwithstanding this repayment, the
damage to Refco and the Debtors as a consequence of the fraud
had already been done and/or set in motion.

      20.  The public disclosure of these events
precipitated, according to the Debtors' Bankruptcy Court
filings, a crisis of confidence among the Debtors' customers,
counter-parties and others with whom Debtors do business

resulting in customer defections and disruptions in Debtors'

business. On October 13, 2005, the Debtors announced that the

operations of their regulated subsidiaries were substantially

unaffected by these events and that the business at these

regulated subsidiaries was being conducted in the ordinary

course, including deposits and withdrawals by customers of

segregated funds.

        21.   The Debtors also announced that the liquidity

within their non-regulated subsidiary, RCM, which, according to

the Debtors, represents a material portion of the business of

the Debtors, was no longer sufficient to accommodate customer

withdrawals.   The Debtors therefore imposed a 15-day moratorium

on the withdrawal of customer accounts from RCM to protect the

value of the enterprise and began efforts to stabilize the

Debtors' business.   These efforts culminated in the filing of

the Chapter 11 Cases on October 17, 2005.

**C.   Insider and IPO-Related Claims**

        22.   Separate and apart from the Bennett Receivables

Scheme, there are substantial questions to be answered

concerning the structure, cost and effects of the investment in

Refco by Thomas H. Lee Partners ("Lee Partners") in June of 2004

and Refco's IPO in August of 2005.   The employees, officers and

directors of Refco, and others, appear to have received

substantial returns (the "Insider Payments") as a result of

these transactions, and investigation into the propriety of such payments is appropriate.

23.   Specifically, Mr. Bennett and Tone Grant, Refco's CEO before Mr. Bennett, shared, according to the Debtors' public filings, in a $550 million payment out of the proceeds of Lee Partners' investment.   In addition, according to published reports, Robert Trosten, Refco's former Chief Financial Officer, received a substantial payment when he left Refco.

24.   Moreover, Refco insiders appear to have profited greatly from the IPO.   The Committee is still investigating the details of the distributions of proceeds of the IPO to insiders, but published reports suggest that substantial sums were paid to, among others, Mr. Bennett and Santo Maggio, the former CEO of Refco Securities.

25.   All of the Insider Payments, which stripped the Debtors of much of the cash raised in the IPO and before, are currently under investigation by the Committee and may be subject to challenge or avoidance on fraudulent transfer or other grounds.

<u>**RELIEF REQUESTED**</u>

26.   The Committee seeks authorization to obtain the production of documents from the Respondents concerning (i) the property of the Debtors; (ii) the assets, liabilities and financial condition of the Debtors; (iii) matters that may

affect the administration of the Debtors' estates; and (iv) the
identification and prosecution of certain potential claims
against third parties by a representative of the Debtors'
estates.  The Committee seeks entry of an order substantially in
the form annexed hereto as Exhibit "A" (the "Proposed Order").
The Committee seeks only document discovery at this time, and
not the depositions of the individuals and entities named
herein, but the Committee reserves its right to seek depositions
at a future date. The Committee also reserves its right to serve
supplemental and additional document requests that relate to the
foregoing matters.

27.  Importantly, the Committee does not, at this
time, seek discovery from the Debtors or from any of its current
officers.  This is because the Committee recognizes that the
Debtors' current management is engaged in an effort to sell a
substantial portion of the Debtors' assets.  The Committee
believes that the goal of maximizing value for all creditors
would best be served by permitting management to focus its
energies on the sale process for the foreseeable future.  The
Committee expressly reserves, however, its right to seek
discovery from the Debtors and its current management at a later
date.

A.    **Individuals and Entities From Whom Documents Are Sought**

28.   The Committee seeks authority to serve a document request on each of the Respondents.   Each of the Respondents either (i) served as a member of Refco's Board of Directors and/or was an officer and/or was an employee at some point during the years between 1998 and the Petition Date; or (ii) was a third-party investor, counterparty, and/or other entity or individual with reason to have relevant information concerning the Bennett Receivables Scheme, the Insider Payments, and the other events and circumstances that precipitated the Debtors' chapter 11 filing[1];(iii) or was Refco's accountants or attorneys at the relevant time.

29.   Based solely upon (i) the Debtors' public statements and(ii) the Criminal Complaint, the Respondents appear to have been involved directly and indirectly in, or to have material information concerning, the various activities that resulted in the Debtors' rapid demise, including but not limited to (i) the Bennett Receivables Scheme, (ii) the Insider Payments; and (iii) fraudulent accounting practices related to the Bennett Receivables Scheme, some or all of which may have been used, according to the Criminal Complaint, to conceal

---

[1]     The Committee does not currently seek discovery from Credit Suisse First Boston LLC, Goldman Sachs & Co. or Banc of America Securities LLC, among other participants in the IPO process, but will do so, through conflicts counsel, at a future date.

Refco's actual financial condition from the investing public for
the benefit of certain of the Respondents.

30.  More specifically, the individuals or entities
from whom documents are sought, and the reasons such discovery
is necessary, are as follows:

- **Phillip Bennett**:  Mr. Bennett, the former CEO
  of Refco, is at the center of the events
  leading to the Chapter 11 Cases.  Based upon
  the allegations of the Criminal Complaint, he
  engineered the Bennett Receivables Scheme and,
  as the CEO at relevant times, was both a
  primary beneficiary and is likely to have
  relevant information concerning the Insider
  Payments.

- **Tone Grant**:  Mr. Grant, Refco's President and
  CEO before Mr. Bennett assumed these roles in
  1998, shared ownership, according to the
  Debtors' public filings, with Mr. Bennett prior
  to the IPO of 90% of the equity of Refco and
  shared with Mr. Bennett in more than $550
  million of the Lee Partner's investment. In
  such capacity, he is likely to have material
  information concerning the Bennett Receivables
  Scheme and the bona fides of the Insider
  Payments.

- **Santo ("Sandy") Maggio**:  Mr. Maggio, the former
  head of Refco's capital markets group, was
  dismissed by the Refco board at or about the
  time of Mr. Bennett's dismissal.  Mr. Maggio
  was, according to the Debtors' public filings,
  also a beneficiary of the Insider Payments and
  is likely to have material information
  concerning the Bennett Receivables Scheme.

- **Robert Trosten**:  Mr. Trosten left Refco on
  October 12, 2004, after two years as Chief
  Financial Officer.  According to published
  reports, Mr. Trosten received a substantial
  payment at or around the time of his departure,
  and a total of $53.1 million in compensation

between 2003 and 2005. As Refco's former CFO and a beneficiary of such substantial payments, Mr. Trosten is likely to have material information concerning both the Bennett Receivable Scheme and the Insider Payments.

- **Thomas H. Lee**:  Mr. Lee is the principal of Lee Partners and a member of Refco's board of directors.  Any documents in the custody or under the control of Mr. Lee with respect to the Lee Partners' diligence and the IPO's structure, cost, and effects, as well as any other aspect of the fraud at issue, will be indispensable to the Committee's investigation.

- **David V. Harkins**:  Mr. Harkins is a member of Refco's board of directors and the vice chairman and a managing director of Lee Partners.  Mr. Harkins is likely to have relevant information concerning the due diligence conducted by Lee Partners as to the state of Refco prior to the Chapter 11 Cases, the Insider Payments and the Bennett Receivables Scheme.

- **Scott L. Jaeckel**:  Mr. Jaeckel is a member of Refco's board of directors and a managing director of Lee Partners.  Mr. Jaeckel is likely to have relevant information concerning the due diligence conducted by Lee Partners as to the state of Refco prior to the Chapter 11 Cases, the Insider Payments and the Bennett Receivables Scheme.

- **Scott A. Schoen**:  Mr. Schoen is a member of Refco's board of directors and co-president of Lee Partners.  Mr. Schoen is likely to have relevant information concerning the due diligence conducted by Lee Partners as to the state of Refco prior to the Chapter 11 Cases, the Insider Payments and the Bennett Receivables Scheme.

- **Ronald L. O'Kelley**:  Mr. O'Kelley, who is chairman and chief executive officer of Atlantic Coast Ventures Inc., a private investment company, is a member of Refco's

14

board of directors and the Chairman of its Audit Committee. He is likely to have relevant information and documents concerning the process and results of the Audit Committee's investigation of the Bennett Receivables Scheme and related matters.

- **Nathan Gantcher**: Mr. Gantcher, who, among other positions, served as vice chairman of CIBC Oppenheimer from 1997 to 1999, is a member of Refco's board of directors and its Audit Committee. He is likely to have relevant information and documents concerning the process and results of the Audit Committee's investigation of the Bennett Receivables Scheme and related matters.

- **Leo R. Breitman:** Mr. Breitman, who, among other positions, served as chairman and CEO of Fleet Bank-Massachusetts from 1991 to 2004, is a member of Refco's board of directors and its Audit Committee. He is likely to have relevant information and documents concerning the process and results of the Audit Committee's investigation of the Bennett Receivables Scheme and related matters.

- **RGHI**: The entity controlled, initially, by Mr. Grant and Mr. Bennett together and, ultimately, by Mr. Bennett alone, through which the Bennett Receivables Scheme was implemented. Any documents in the custody or under the control of RGHI will be indispensable to the Committee's investigation.

- **Thomas H. Lee Partners**: Lee Partners, which is now the largest shareholder of Refco, invested $513 million to purchase a stake in Refco. According to published reports, Lee Partners spent millions of dollars on investment bankers and attorneys to conduct diligence as to the state of Refco prior to the Chapter 11 Cases. In addition to becoming the largest shareholder of Refco in the IPO, Lee Partners was also paid substantial sums in connection with the IPO. Any documents in the custody or under the control of Lee Partners with respect to the

15

foregoing issues, as well as any other matters related to the events at issue, will be indispensable to the Committee's investigation.

- **Liberty Corner Capital Strategies LLC:** Based upon published reports, Liberty Corner facilitated implementation of the Bennett Receivable Scheme on at least one occasion. It did so by participating in the circular series of loan transaction at issue in the Criminal Complaint and described <u>supra</u> ¶¶ 14-18, in return, according to the Criminal Complaint, for a profit of at least 75 basis points on the total value of the transaction at issue.

- **Mayer Brown Rowe & Maw LLP:** Based upon published reports, Mayer Brown represented Refco both in connection with the IPO and in documenting the challenged transactions among Refco, RGHI and Liberty Corner. Mayer Brown is likely to have material information concerning the transactions that are the subject of the Committee's investigation.

- **BAWAG P.S.K. Group:** BAWAG acquired a 10% stake in Refco in May 1999, shortly after Mr. Bennett became Refco's CEO. As set forth <u>supra</u> ¶ 19, based upon published reports, BAWAG provided the multi-million loan that permitted Mr. Bennett to repay the $430 million RGHI owed to Refco on October 10, 2005.

- **Grant Thornton LLP:** Based upon published reports, Grant Thornton, the Debtors' auditor for most of the period at issue, at a minimum, failed to discover the Bennett Receivables Scheme despite the presence of obvious red flags. Also alleged are material deficiencies in internal controls at Refco, of which Grant Thornton should have knowledge.

B.   <u>Areas of Requested Discovery</u>

1.   <u>Corporate Structure and Intercompany Transfers</u>

31.  Refco's overall corporate and capital structures are exceedingly complex.  Refco's public filings allude to $2.55

16

billion  of "investments in and advances to subsidiaries," and
Refco's management readily acknowledges that, in light of the
nature of its business, hundreds of millions of dollars flowed
between and among Refco entities on a daily basis.  In order to
carry out its investigatory duties under section 1103(c) of the
Bankruptcy Code, the Committee must obtain broad-ranging
discovery as to the workings of the Debtors' cash management
system and the intercompany flow of funds, including, without
limitation, with respect to the Bennett Receivables Scheme and
the Insider Payments.

### 2.   Debtors' Accounting and Regulatory Policies

32.  Based upon the Criminal Complaint and the
Debtors' public statements, there appear to have been material
deficiencies in the Debtors' accounting and regulatory policies.
Plainly, the Bennett Receivables Scheme could not have gone
undetected for as long as it did if appropriate controls had
been in place.  The Debtors' auditor has acknowledged in SEC
filings that there were "significant deficiencies" in Refco's
internal controls, including a shortage of staff to prepare its
financial statements and a lack of established procedures for
closing the Company's books each quarter.

33.  Issues have also been raised by (i) customers,
regarding the treatment of and accounting for purported customer
securities and cash; (ii) investigators, regarding compensation

17

and IPO payouts to certain current and former officers.  To assess adequately these and other allegations and to determine whether they give rise to any claims on behalf of the Debtors against certain Respondents or others, the Committee needs discovery regarding (i) the oversight of Refco's operations by its Board of Directors and management; (ii) Refco's accounting, customer property, and compensation practices and the Respondents' knowledge thereof; and (iii) Refco's approval and management of the transactions and practices under investigation, including, most notably, the Bennett Receivables Scheme and the Insider Payments.

### 3.    Financial Dealings with the Debtor

34.  It has been widely reported that certain Respondents engaged in significant pre-petition transactions with the Debtors, including loan transactions, excessive payouts and other financial arrangements above and beyond typical compensation.  To assess fully whether the Debtors have claims against some or all of the Respondents for this self-dealing, including, but not limited to, claims arising from breaches of fiduciary duties, negligence, fraud, conspiracy, insider trading, preferences, fraudulent transfers, the Committee requires the discovery requested herein with respect to each of the Respondents' financial dealings with Refco and its affiliates.

**4.    Claims Arising Out Of IPO and
        Lee Partner's Transaction**

35.    As set forth <u>supra</u> ¶¶ 22-25, separate and apart
from the Bennett Receivables Scheme, questions exist about the
structure, cost and effects of Lee Partner's investment in Refco
and the IPO.  Payments arising from these transactions are
currently under investigation by the Committee and may be
subject to avoidance on fraudulent conveyance or related
grounds.

36.    To assess fully whether the Debtors have claims
against some or all of the Respondents arising out of Lee
Partner's investment in Refco and the IPO, the Committee
requires the discovery requested herein with respect to
structure of Lee Partner's investment in Refco and the IPO, and
each of the Respondents' role in and knowledge of the benefits
and burdens of these transactions.

**5.    Other Claims and Issues**

37.    News of the accounting and related problems at
Refco broke just three weeks ago.  The investigation of these
issues by the Debtors and government agencies commenced at about
the same time, and the Committee and its professionals joined
the ranks of the investigators just last week.  The Committee
cannot state that the issues identified to date will be the only
irregularities in Refco's practices.

19

38.   Under such circumstances, the Committee requires
the latitude to expand its inquiries beyond what is currently
known to what becomes known as the investigations proceed.
Hence, the Committee intends to seek from each of the
Respondents – and requests that the Court grant it the authority
to obtain – information or documents each Respondent may have
about any and all additional events or circumstances that he or
she reasonably believes contributed to the Debtors' rapid demise
and the Chapter 11 Cases.

**C.    Need and Narrow Scope**

39.   The documents requested in this Motion will
provide the Committee with information it requires from those
believed to have it.   The Committee must obtain such information
to discharge properly its duties, under section 1103(c) of the
Bankruptcy Code, to the unsecured creditors that it represents.
On behalf of those creditors, the Committee is entitled to seek
and obtain discovery regarding these and other matters relating
to the acts, conduct, property, liabilities and financial
condition of the Debtors and their estates.   The Committee
requires the requested information to assess fully the Debtors'
potential claims against third parties – including, inter alia,
some or all of the Respondents.

40.   The discovery sought herein is narrowly tailored
to the factual matters raised or implicated by the various

issues and events that precipitated the Chapter 11 Cases.  These requests are, however, broad enough to permit the Committee to perform the investigation it is obligated to perform. Compliance with the annexed Rule 2004 subpoenas and document requests by the Respondents will not be burdensome and can be achieved without undue hardship in the time period requested.

**D.    Entry of Omnibus Order**

41.  To facilitate the necessary discovery, the Committee requests that the Court enter the Proposed Order granting the Motion, and requiring the Respondents to produce documents responsive to schedules to be served by the Committee substantially in the form of the schedules annexed to the Proposed Order for (i) each Respondent that is a natural person, as Exhibit "A"; (ii) each Respondent that is a corporate entity or partnership, as Exhibit "B"; and (iii) Grant Thornton LLP, as Exhibit "C."  The Committee requests that the Court order that such production be made on or before the date that is twenty (20) days after entry of the Proposed Order.

**APPLICABLE AUTHORITY**

42.  Bankruptcy Rule 2004 provides, in relevant part, as follows:

(a)  Examination on Motion.  On motion of any party in interest, the court may order the examination of any entity.

21

    (b)   <u>Scope of Examination</u>.  The examination of an
entity under this rule or of the debtor under
§ 343 of the Code may relate only to the acts,
conduct, or property or to the liabilities and
financial condition of the debtor, or to any
matter which may affect the administration of the
debtor's estate, or to the debtor's right to a
discharge ....

    (c)   <u>Compelling Attendance and Production of
Documentary Evidence</u>.  The attendance of an
entity for examination and the production of
documentary evidence may be compelled in the
manner provided in Rule 9016 for the attendance
of witnesses at a hearing or trial.

43.  Examinations under Bankruptcy Rules 2004(a) and
(c) may include within their scope, among many other things:
any matter which may relate to the property and assets of the
estate; the financial condition of the debtor; any matter which
may affect the administration of a debtor's estate; and, in a
Chapter 11 case, any matter relevant to the case or to the
formulation of a plan.

44.  "The purpose of Rule 2004 examination is 'to show
the condition of the estate and to enable the court to discover
its extent and whereabouts and to come into possession of it
that the rights of creditors may be preserved.'"  <u>In re Coffee
Cupboard, Inc.</u>, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing
<u>Cameron v. United States</u>, 231 U.S. 710, 717 (1914)).  <u>See</u> <u>also</u>
<u>In re Ionosphere Clubs, Inc.</u>, 156 B.R. 414, 432 (S.D.N.Y. 1993)
("Because the purpose of the Rule 2004 investigation is to aid
in the discovery of assets, any third party who can be shown to

22

have a relationship with the debtor can be made subject to a Rule 2004 investigation."), aff'd, 17 F.3d 600 (2d Cir. 1994). The scope of inquiry permitted under a Rule 2004 examination is generally very broad and can "legitimately be in the nature of a fishing expedition." In re Wilcher, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). See also In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (same); In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984) (same).

45.    The information sought by the Committee concerns the Debtors' and the Respondents' "acts, conduct, or property" or "liabilities and financial condition." Bankruptcy Rule 2004. Consequently, the documents sought by the Committee are clearly within the scope of a Bankruptcy Rule 2004 examination.

## NOTICE

46.    Notice of this Motion has been given to (i) each of the Respondents and/or their counsel; (ii) counsel for the Debtors; (iii) counsel for the Debtors' pre-petition lenders; (iv) the United States Trustee; and (v) all parties that have filed notices of appearance and demanded service of papers pursuant Bankruptcy Rule 2002(g). Under the circumstances, the Committee submits that such notice will be adequate and sufficient and therefore no other or further notice is required.

23

## WAIVER OF MEMORANDUM OF LAW

47.   Because this Motion presents no novel issues of law and the authorities relied upon by the Committee are set forth herein, the Committee respectfully requests that the Court waive the requirement for the filing of a separate memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1(b), but the Committee reserves the right to file a memorandum in reply to any objection to this Motion.

## NO PRIOR REQUEST

48.   No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Committee respectfully requests entry of the Proposed Order directing each of the Respondents to produce the documents requested in subpoenas or document requests to be served on each of the Respondents on or before

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

the date set forth in the Proposed Order and granting the

Committee such other and further relief as is just and proper.

Dated:  New York, New York
         November 3, 2005

                              MILBANK, TWEED, HADLEY & McCLOY LLP

                              _/S/ Luc A. Despins_____
                              Luc A. Despins (LD 5141)
                              Scott A. Edelman (SE 5247)
                              Dennis C. O'Donnell (DO 3648)
                              1 Chase Manhattan Plaza
                              New York, New York 10005
                              (212) 530-5000

                              Proposed Counsel for Official
                              Committee of Unsecured Creditors
                              of Refco Inc., et al.