LOVELLS
Gary S. Lee (GL-6049)
Karen Ostad (KO-5596)
Matthew P. Morris (MM-8865)
590 Madison Avenue
New York, NY 10022
Tel: (212) 909-0600
Fax: (212) 909-0660

Hearing Date: August 16, 2006
10:00 AM

*Attorneys for Joint Official Liquidators of the SPhinX Funds*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
In re                                                     :    Chapter 11 Cases
                                                          :
                                                          :    Case No. 05 - 60006 (RDD)
Refco Inc., et al.,                                       :
                                                          :    (Jointly Administered)
                          Debtors.                        :
----------------------------------------------------------x

**OBJECTION OF JOINT OFFICIAL LIQUIDATORS OF SPHINX FUNDS TO MOTION OF MARC S. KIRSCHNER AS CHAPTER 11 TRUSTEE OF REFCO CAPITAL MARKETS, LTD. FOR APPROVAL OF AN AGREEMENT AMONG SECURITIES CUSTOMERS AND GENERAL UNSECURED CREDITORS OF <u>REFCO CAPITAL MARKETS, LTD.</u>**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

        Kenneth Krys and Christopher Stride (the "Liquidators"), as Cayman Islands court-appointed Joint Provisional Liquidators of SPhinX Managed Futures Fund SPC ("SMFF") and Joint Official Liquidators of twenty-one of SMFF's affiliates (the "SPhinX Funds")[1], through their undersigned counsel, hereby submit this objection to the Motion of Marc S. Kirschner as

---

[1] The SPhinX Funds for which the Liquidators act consist of the following entities: SPhinX Ltd., SPhinX Macro Fund SPC, SPhinX Macro Ltd., SPhinX Long/Short Equity Fund SPC, SPhinX Convertible Arbitrage Fund SPC, SPhinX Fixed Income Arbitrage Fund SPC, SPhinX Distressed Fund SPC, SPhinX Merger Arbitrage Fund SPC, SPhinX Special Situations Fund SPC, SPhinX Equity Market Neutral Fund SPC, SPhinX Strategy Fund Ltd., SPhinX Plus SPC, Ltd., SPhinX Managed Futures Ltd., SPhinX Long/Short Equity Ltd., SPhinX Convertible Arbitrage Ltd., SPhinX Fixed Income Arbitrage Ltd., SPhinX Distressed Ltd., SPhinX Merger Arbitrage Ltd., SPhinX Special Situations Ltd., SPhinX Equity Market Neutral Ltd., PlusFunds Manager Access Fund, SPC Ltd. and SPhinX Managed Futures Fund SPC.

NYCLIB01/NYMPM/105563.4

Chapter 11 Trustee (the "Trustee") of Refco Capital Markets, Ltd. ("RCM") for Approval of an Agreement Among Securities Customers and General Unsecured Creditors of RCM (the "Motion") and respectfully state as follows:

## I.
## Preliminary Statement

1. The Motion seeks this Court's approval, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of a proposed Settlement Agreement, dated June 29, 2006, (the "Agreement") by and among the Trustee on behalf of RCM and certain of RCM's securities and foreign exchange metals customers and other creditors. Subject to this Court's approval, the Agreement sets forth a procedure whereby the Trustee seeks to distribute identified assets to RCM's customers and creditors upon the satisfaction of specified conditions precedent.

2. The Liquidators object to the Agreement to the extent that: (i) it conflicts with the terms of the Stipulation and Order of Settlement, dated April 26, 2006, (the "SPhinX Settlement") between the Official Committee of Unsecured Creditors of Refco Inc., et al. (the "Committee"), Refco, Inc. and its affiliated debtors (collectively, "Refco") and SMFF, which requires that the proceeds paid thereunder by SMFF to RCM be maintained by RCM in a segregated account until the SPhinX Settlement is subject to final, non-reviewable approval; (ii) it identifies the proceeds of the SPhinX Settlement as an asset of RCM for distribution to RCM's customers and creditors although such proceeds are not RCM assets until a final, non-reviewable approval of the SPhinX Settlement; and (iii) it proposes that the Trustee distribute the SPhinX Settlement proceeds to RCM customers and creditors before the time the SPhinX Settlement is final and non-reviewable.

3. As more fully set forth below, the Agreement must be modified with respect to the SPhinX Settlement proceeds to provide that, until the SPhinX Settlement receives final, non-

2

reviewable approval, (i) the proceeds of the SPhinX Settlement shall not be deemed assets of RCM for distribution to RCM customers or creditors or otherwise and (ii) the Trustee shall not distribute the SPhinX Settlement proceeds and shall continue to maintain such proceeds in a segregated account as required by the SPhinX Settlement.

## II.
## Background

4. On December 16, 2005, the Committee on behalf of Refco commenced an avoidance action against SMFF under section 547 of the Bankruptcy Code to recover certain allegedly preferential transfers totaling approximately $312 Million made by RCM to SPFF (the "Preference Action").

5. The Committee, Refco and SMFF agreed to settle the Preference Action pursuant to the terms set forth in the SPhinX Settlement. Pursuant to Paragraph 1 of the SPhinX Settlement, SMFF transferred $263 Million to a segregated RCM account. Paragraph 1 provides that "[t]he Settlement Amount [i.e., the $263 Million] shall remain in the RCM segregated account until this Stipulation and Order becomes final and is no longer subject to review, at which time RCM will be free to use the Settlement Amount."

6. Following a hearing on June 8, 2006 upon the Committee's motion under Bankruptcy Rule 9019, this Court approved the SPhinX Settlement by order dated June 9, 2006 (the "Settlement Order").

7. Several investors in SMFF, who had objected to this Court's approval of the SPhinX Settlement, subsequently appealed the Settlement Order to the United States District Court for the Southern District of New York (the "District Court"). United States District Judge Robert M. Berman has set a consolidated briefing and hearing schedule in the appeals, requiring that (i) the appellants' joint brief is due August 18, 2006, (ii) the appellees' joint brief is due

September 11; (iii) the appellants' reply brief is due September 20; and (iv) a hearing, if requested and granted, will be held on September 21.[2]

## III.
## The SPhinX Settlement Requires that the Settlement Proceeds be Maintained by RCM in a Segregated Account Until the Settlement is Subject to Final, Non-Reviewable Approval

8. As stated above, the SPhinX Settlement requires that the settlement proceeds "shall remain in the RCM segregated account until this Stipulation and Order becomes final and is no longer subject to review, at which time RCM will be free to use the Settlement Amount." SPHinX Settlement at ¶ 1. It could not be clearer: the $263 Million in settlement proceeds must remain in the RCM segregated account—i.e., is explicitly not available for distribution—until the SPhinX Settlement "becomes final and is no longer subject to review." Only after that time is the Trustee "free to use the Settlement Amount" to distribute to RCM's customers and creditors.

9. The SPhinX Settlement is currently subject to pending appellate review and may well be so for some time. Simply put, the Sphinx Settlement proceeds must remain in RCM's segregated account pending final, non-reviewable approval.

## IV.
## The SPhinX Settlement Proceeds Are Not RCM Assets Until Final, Non-Reviewable Approval of the SPhinX Settlement

10. The Agreement improperly identifies the proceeds of the SPhinX Settlement as an asset of RCM for distribution to RCM's customers and creditors despite the fact the SPhinX Settlement expressly provides that such proceeds are not RCM assets, and must remain in a segregated RCM account, until final non-reviewable approval of the SPhinX Settlement. Under the Agreement, the Trustee proposes to distribute "Assets in Place" in accordance with § 5 ("Distributions of Assets in Place"). "Assets in Place" are defined to include "the proceeds of

---

[2] Judge Berman has suspended the SPhinX Fund's briefing deadline in response to a request from the Liquidators that it be stayed pending the outcome of the Liquidators' motion for recognition of the SPhinX Fund's Cayman Islands liquidation proceedings in which the Liquidators were appointed.

the SPhinX Settlement (see § 7(b))." Section 7(b), in turn, provides for the specific allocation of the SPhinX Settlement proceeds to particular RCM creditors and customers. In addition, if approved, the Agreement would treat the bulk of the "Assets in Place," including the SPhinX Settlement proceeds, as the exclusive, segregated property of RCM's customers. *See* Agreement at ¶ 14(b)(iv) (A)-(C) and Proposed Order at ¶ T(i)-(iii).

11. As noted above, the SPhinX Settlement unambiguously requires that the $263 Million in settlement proceeds must remain in a segregated account until the agreement is subject to final, non-reviewable approval. *See* SPhinX Settlement at ¶ 1. The SPhinX Settlement further provides that "This Stipulation and Order is expressly subject to and contingent upon its approval by the Bankruptcy Court. If this Stipulation and Order, or any portion thereof, is not approved by the Bankruptcy Court or if it is overturned or modified on appeal, this Stipulation and Order shall be of no further force and effect ... ." SPhinX Settlement at ¶ 6. Therefore, it is, at best, premature to include the proceeds of the SPhinX Settlement in the definition of "Assets in Place."

## V.
### The Trustee May Not Segregate the SPhinX Settlement Proceeds For the Benefit of RCM's Customers or Distribute Such Proceeds Until the SPhinX Settlement is Subject to Final, Non-Reviewable Approval

12. Because the SPhinX Settlement is clear that the settlement proceeds must be maintained by RCM in a segregated account until final approval of the SPhinX Settlement, it follows that the Trustee may not withdraw the $263 Million in settlement proceeds from the segregated account and treat such funds as the exclusive property of RCM's customers segregated for their benefit or distribute such proceeds as purported "Assets in Place" of RCM until such final approval.

13. Upon the approval of this Court, the Agreement proposes to treat the "Assets in Place" as the "exclusive property and assets segregated for and available to [RCM customers]."

*See* Agreement at ¶ 14(b)(iv) (A)-(C) and Proposed Order at ¶ T(i)-(iii). Under the terms of the SPhinX Settlement itself, any creation of a property interest of RCM's customers in the SPhinX Settlement proceeds, or the segregation of the proceeds for the benefit of RCM's customers, is impermissible prior to final, non-reviewable approval of the SPhinX Settlement.

14. Further, the Trustee, under the Agreement, may not make distributions to RCM's creditors and customers until a number of conditions precedent are satisfied that result in the "Subsequent Effective Date," which permits distribution. *See* Agreement, § 14 ("Conditions Precedent") and § 10(c) ("Distributions: The RCM Trustee shall as soon as practicable make distributions on or after the Subsequent Effective Date [in such amounts as permitted under the Bankruptcy Code and as he deems appropriate and consistent with his fiduciary duties].") There is no safeguard in the Agreement to prohibit the Trustee's premature distribution of the SPhinX Settlement proceeds before final approval of the SPhinX Settlement. It is possible that, as things stand now, the Trustee could seek to make a distribution of the SPhinX Settlement proceeds under the Agreement before the SPhinX Settlement is finally approved and the funds are his to distribute.

15. A premature distribution of the SPhinX Settlement proceeds would not only violate the SPhinX Settlement, but it would be highly prejudicial to SMFF and the Liquidators: it would be extremely costly and time-consuming (if not outright impossible) for the Liquidators to have to pursue each and every RCM customer and creditor for disgorgement of their share of the SPhinX Settlement proceeds if the settlement is ultimately not approved. On the other hand, since the $263 Million in settlement funds currently sit in a segregated RCM account, there is no risk to RCM that the money will not unavailable if and when the SPhinX Settlement is subject to final, non-reviewable approval.

16. The Liquidators recognize the prevailing standard for approval of proposed settlement agreements pursuant to Bankruptcy Rule 9019(a)—i.e., that the Trustee's settlement

must be fair and equitable, reasonable, and in the best interests of RCM's estate; *In re Ionosphere Clubs, Inc.*, 156 B,R, 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). The Liquidators do not take issue with that standard or question whether, with the exception of the points raised herein, the Agreement meets that standard. Regardless of whether a proposed settlement satisfies the prevailing Rule 9019 criteria, however, a debtor cannot enter into an agreement requiring distribution of property that it does not own. And that is precisely what the Trustee may be called upon to do under the Agreement.

## VI.
## Reservation of Rights

17. In the event the SPhinX Settlement is undone, the Liquidators' reserve all their rights to challenge the Trustee's mechanism for quantifying section 502(h) claims (as set forth in Paragraph 7(e) of the Agreement) and do not hereby concede any point which may operate to limit the amount or value of the Liquidators' section 502(h).

18. Further, the Liquidators' reserve their rights to challenge any attempt by the Trustee to bind them or any of the SPhinX Funds to the Agreement (as referenced by the Trustee in Paragraph 53 of the Motion).

## VII.
## Conclusion

19. The remedy for the defect in the Agreement as regards the SPhinX Settlement is straightforward: the Agreement must provide that (i) the Trustee may not make any distribution of the SPhinX Settlement proceeds until this Court's order approving the SPhinX Settlement has become final and non-reviewable, and (ii) until the SPhinX Settlement is subject to a final, non-reviewable approval, the proceeds of the SPhinX Settlement shall not be deemed "Assets in Place" and shall continue to be maintained by RCM and the Trustee, along with all accrued interest, in a segregated account.

**WHEREFORE**, the Liquidators respectfully request that the Agreement be modified to provide that (i) that the proceeds of the SPhinX Settlement shall not be deemed "Assets in Place" until this Court's order approving the SPhinX Settlement has become final and non-reviewable; (ii) that the Trustee may not make any distribution of the SPhinX Settlement proceeds until this Court's order approving the SPhinX Settlement has become final and non-reviewable, and that this Court grant the Liquidators any additional relief that it deems just and proper.

Dated: August 10, 2006
      New York, New York

LOVELLS

By: /s/ Matthew P. Morris
Gary S. Lee (GL-6049)
Karen Ostad (KO-5598)
Matthew P. Morris (MM-8865)
590 Madison Avenue
New York, NY 10022
Tel: (212) 909-0600
Fax: (212) 909-0660

*Attorneys for Joint Official Liquidators of the SPhinX Funds*