UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------X
In Re:                              :  05-60006
                                    :
        REFCO, INC.,                :
                                    :  One Bowling Green
        Debtors.                    :  New York, New York
------------------------------------X  August 10, 2006
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            RICHARD LEVIN, ESQ.
                            Skadden, Arps, Slate, Meagher & Flom
                            Four Times Square
                            New York, New York  10036

For Chapter 11 Trustee:     TIMOTHY B. DESIENO, ESQ.
                            Bingham, McCutchen, LLP
                            399 Park Avenue
                            New York, New York  10022

For the Creditors Com.:     DENNIS O'DONNELL, ESQ.
                            SUSHEEL KIRPALANI, ESQ.
                            Milbank, Tweed, Hadley & McCloy
                            One Chase Manhattan Plaza
                            New York, New York  10005

For Securities Pltfs.:      JOSHUA ANGEL, ESQ.
                            Cole, Schotz, Meisel, Forman &
                             Leonard, P.A.
                            460 Park Avenue
                            New York, New York  10022

For Premiere Bank:          IRA GREENE, ESQ.
                            Hogan & Hartson, LLP
                            875 Third Avenue
                            New York, New York  10022

(Appearances continued on next page)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


APPEARANCES CONTINUED:


For Ad Hoc Equity:              PAUL SILVERSTEIN, ESQ.
                                Andrews & Kurth
                                450 Lexington Avenue
                                New York, New York  10017


For Chapter 7 Trustee:          SCOTT E. RATNER, ESQ.
                                Togut, Togut & Segal, LLP
                                One Penn Plaza
                                New York, New York  10119


Court Transcriber:              CARLA NUTTER
                                TypeWrite Word Processing Service
                                356 Eltingville Boulevard
                                Staten Island, New York 10312


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1    THE COURT:  <u>Refco</u>.

2    MR. LEVIN:  Good morning, Your Honor.

3    Richard Levin of Skadden, Arps appearing for the

4    debtors and debtors-in-possession.  Maybe I should just say for

5    the debtors-in-possession.

6    There are several uncontested matters, Your Honor --

7    four of them.  The first one is brought by the debtor-in-

8    possession.  It is for the retention of UHY, which was going to

9    be an ordinary course professional but it turns out their work

10   expanded and they came above the caps, so we filed an

11   application that their employment be approved.

12   THE COURT:  Okay.

13   MR. LEVIN:  There have been no objections.

14   There has been some dialogue with the agent for the

15   bank group about some waiver of conflict language that is

16   similar to conflict waiver language that is put in other

17   engagement orders where the professional is working for both

18   the debtors-in-possession and the RCM trustee and we have

19   revised the order to pick up that language for what we'll

20   submit today.

21   THE COURT:  Okay.

22   I reviewed the order and in light of there being no

23   objections -- I'm sorry, the motion -- I'll approve it.

24   The order, I think, had just a glitch in Paragraph 4

25   that said that "The fixed fee is without challenge except by

1  the Court of the U.S. Trustee."  I think what it means to say

2  is that it will not be subject to challenge except under

3  Section 328(a) except by the U.S. Trustee, which is the normal

4  formulation that we've been using.

5           MR. LEVIN:  So it should be "except by the U.S.

6  Trustee" under the standard of review?

7           THE COURT:  Well, no, it should say, "UHY Services,

8  subject to the fixed fee shall not, hereafter, be subject to

9  challenge except under the standard of review of 11 U.S.C.

10  Section 328(a) and by the U.S. Trustee under 11 U.S.C. Sections

11  330 and 331."

12           MR. LEVIN:  We will revise and submit the order, Your

13  Honor.

14           THE COURT:  Okay.

15           MR. LEVIN:  The next matter is a motion by the RCA

16  trustee.

17           MR. DESIENO:  Good morning, Your Honor.

18           Tim DeSieno from Bingham, McCutchen on behalf of the

19  RCM Chapter 11 Trustee Marc Kirschner.

20           I'm here today on two matters.  I think they're

21  sequential.  Neither of which we've received any objection to.

22           The first one is rather pro forma, it's the motion of

23  the trustee to retain formally the services of Omni Management

24  in its continuing capacity as noticing and balloting the claims

25  agent.

1       As you know, Omni is serving in that capacity for all

2  of the estates and has been doing so for RCM as well and by

3  this motion the trustee seeks an order clarifying that it's

4  retained from the RCM estate formally as well.

5       THE COURT:  Okay.

6       So all this reflects is that he is retaining them for

7  RCM as opposed to RCM, itself, retaining them for RCM?

8       MR. DESIENO:  Correct.

9       THE COURT:  It's subject to the same agreement that's

10  been in place and the same allocation?

11       MR. DESIENO:  Everything else is the same, Your

12  Honor.

13       THE COURT:  Okay.

14       I'll approve it on that basis.

15       MR. DESIENO:  Very well.

16       The second motion is also so far, anyway,

17  uncontested, and maybe is slightly more substantive.

18       This is a motion filed by the trustee seeking

19  authority or seeking relief again from the seventh amended

20  stipulation which prevents the disposal of assets in the RCM

21  estate and this time in respect of what we're terming

22  miscellaneous debt securities.

23       Your Honor may recall -- I think it was in May -- the

24  trustee brought on a motion seeking relief from that very same

25  stipulation to enable the trustee to sell two categories of

equity securities at that time; the first was a category of
larger positions which were subject to market volatility and
were only to be sold on notice to a collection of parties
specified.  The second basket were so-called miscellaneous
equity securities de minimis positions, none of which exceeded
$200,000.00 and in the aggregate did not exceed roughly $15
million.

The order that this Court entered approved the
trustee's ability to sell both categories and the trustee has
in fact in the latter category been disposing of some of the
equity positions.

This motion is designed to replicate that latter
category, miscellaneous small positions in the RCM estate,
again, in the aggregate which did not exceed $10 million but to
enable the trustee to dispose of these positions -- roughly 160
of them -- due to the fact that they represent an
administrative burden that doesn't seem worthwhile for this
estate.

The concept is that we would augment the existing
order by the addition of a simple paragraph that we have
referred to -- the small debt positions -- and would require
that any and all sales of those debt positions be in accordance
with the rules established in the previous order for the small
equity positions and we have submitted an order that reflects
that.

1          THE COURT:  Okay.

2          MR. DESIENO:  We actually had a message from chambers

3    indicating a black line would be helpful to compare and

4    contrast --

5          THE COURT:  It's all right.  I don't need that.

6          MR. DESIENO:  Fair enough.

7          THE COURT:  It's approved in light of there being no

8    objections and my review of the motion and the nature of the

9    sales that the trustee is seeking to effectuate.

10         MR. DESIENO:  Very well.

11         MR. O'DONNELL:  Your Honor, Dennis O'Donnell of

12   Milbank, Tweed, Hadley & McCloy on behalf of the official

13   committee of unsecured creditors.

14         Your Honor, the next matter on the calendar is an

15   application by the committee to retain the firm of Wildman,

16   Harold, Allen & Dixon, LLP, as local Chicago counsel to the

17   committee.

18         Wildman, Harold is being retained for the sole

19   purpose of enforcing a subpoena served on Toe & Grant [Ph.] on

20   December 6th of last year.

21         THE COURT:  Well, in case you need them for some

22   other purpose, they'll do that, too, I guess.

23         MR. O'DONNELL:  Agreed.

24         Their primary purpose at this point is to enforce

25   that subpoena because the District of Illinois requires that we

1  have local counsel there.

2          We served the application on the 28th.  The objection

3  deadline was August 7th and we have received no objections and

4  if you have no questions, Your Honor, we have a form of order

5  to submit.

6          THE COURT:  No, I have no questions.  I've reviewed

7  the affidavit and the application and I'll approve it based on

8  my review and there being no objections.

9          MR. O'DONNELL:  Okay.

10          We will submit a form of order, Your Honor.

11          Thank you.

12          THE COURT:  Okay.  Thank you.

13          MR. LEVIN:  Your Honor, Richard Levin again.

14          The next matter is the first contested matter.

15          This is a motion for approval of a stipulation but I

16  want to make clear what it is and what it is not.

17          This is a motion solely on behalf of Refco Capital,

18  LLC, which we refer to as RCC, to approve entering into an

19  agreement with the Committee and with Refco Securities, LLC,

20  which we call RSL, to assist in the collection by RCC of

21  amounts that are owing by RSL.  In short, this stipulation

22  recognizes that RSL agrees that it owes RCC approximately $127

23  million.  RCC agrees to defer collection of some portion of

24  that so as not to upset a parallel agreement between RSL and an

25  unrelated party, Sperbank, the Savings Bank of the Russian

1   Federation, and I want to add, Your Honor, that RSL is an SEC-
2   registered broker/dealer that is not a debtor either in this
3   proceeding or under the Security Investor Protection Act.
4           So the first thing that RCC is agreeing to do is to
5   defer some collection to coordinate with a comparable agreement
6   that RSL entered into with Sperbank.  The second thing is that
7   RCC is allowing the Committee to prosecute any claims against
8   RSL should a future dispute arise in terms of collection by RCC
9   against RSL of the remaining amount owing.
10          That is what this application is, Your Honor.  What
11  it is not --
12          THE COURT:  I guess there's one -- the RCM trustee is
13  also a party to it?
14          MR. LEVIN:  The RCM trustee, yes, and although the
15  motion does not expressly seek authority on behalf of the RCM
16  trustee, that authority is implied by the motion and that's why
17  I didn't address it initially and I'm sure Mr. DeSieno will be
18  able to address that if Your Honor has any questions.
19          THE COURT:  Okay.
20          MR. LEVIN:  What this motion is not is a motion on
21  behalf of RSL to seek authority to do anything.  RSL is not a
22  debtor in this Court.  It is not subject to the jurisdiction of
23  this Court except to the extent it filed a proof of claim along
24  with all of the other intercompany claims that were filed.
25          The only objection that has been brought here has

1  been brought by a group that holds disputed, unliquidated and,

2  I might add, uncertain claims against RSL.  They are also

3  creditors of RCM, Your Honor, but their position here is as

4  creditors of RSL and they are asking this Court to prevent RSL

5  from entering into this stipulation.  RSL is not seeking

6  authority from this Court and I might add the disputed

7  creditors are also seeking an order of this Court requiring RSL

8  to file a bankruptcy proceeding.  They don't cite any authority

9  for that.  I am interested to know if they have any.

10         In short, Your Honor, their objection does not

11  address what the motion is.  It only addresses what it isn't,

12  and it seeks to expand, through an objection, into an

13  injunction proceeding against a non-debtor.  We think the

14  objection should be overruled and the stipulation should be

15  approved.

16         THE COURT:  Okay.

17         MR. KIRPALANI:  Good morning, Your Honor.

18         Susheel Kirpalani of Milbank, Tweed on behalf of the

19  Creditors Committee.

20         Just in support of the motion, Your Honor.  We

21  obviously are a signatory to it.

22         Your Honor may recall that this issue had arisen in a

23  chambers conference quite a number of weeks ago now and the

24  Committee had been concerned that RSL, which is in wind down

25  mode, although we do not believe it insolvent, was making

preparations to pay a judgment creditor, Sperbank, and, on

behalf of one of the debtors, Refco Capital, we believe that

there was an undisputed liquidated debt that was subject to

turnover under Section 542 and that it should be paid and that

it should be paid now.

Your Honor suggested that the parties confer and see

if we could reach some sort of tripartite agreement.  We did

have a series of meetings and even meetings with the SEC to

make sure they would be okay with it and although we were just

about to enter into a three-way agreement with Sperbank and RSL

and Refco Capital/creditors committee, issues relating to

intercompany claims slowed the process down a bit and Sperbank

decided to do a single agreement with RSL, which they were free

to do, absent the Court preventing them from doing that.  So

all we tried to do was enter into a parallel agreement that was

always the intention with RSL and Sperbank and that is what the

stipulation provides.

As to the RCM estate, there are some protections as

to the money and who owns the money once it comes into Refco

Capital.  That issue will be decided another day by the Court

pursuant to an allocation hearing or a resolution separately.

But the reason that I wanted to speak separately was

on the issue specifically raised by the objecting parties

calling into question the satisfaction of the undisputed

liquidated debt of Refco Capital on the grounds that Refco

Capital is in liquidation or not an operating entity.  We take

the position, Your Honor, that it is, of course, appropriate --

(Pause in proceedings.)

MR. KIRPALANI:  Okay.

I think the objection says that the transfer from RSL

to Refco Capital, a non-operating entity without the need for

working capital, would serve no purpose.  All I'm suggesting is

that, of course, there are administrative expenses in the Refco

Capital estate and, more importantly, under Section 542 any

notion that state law would prevent the payment of a debt that

qualifies, we believe, would be preempted under federal law.

THE COURT:  Okay.

MR. ANGEL:  Good morning, Your Honor.

If Your Honor please, I'm here this morning wearing

my hat as one of the counsel for the class action plaintiffs

who consist of the persons who held securities accounts at RCM

and RSL and, indeed, the essence of the class action complaint

is that by the nature of how RSL and RCM intertwined their

activities, that those persons in the class are entitled to the

protections as customers under the Securities Acts.  That's the

essence of that complaint.

Now, Judge, that complaint was filed on January 28,

2006 and a defendant in the complaint is RSL.  So we have a

claim against RSL as a customer for each of the class members

and they are entitled to a superior claim, we believe, to the

1   assets of RSL on a par only with other customer claims.

2           Even if that were not so, Your Honor, we are

3   certainly a creditor of RSL and we are certainly -- this Court

4   should not lend itself to a transaction which does not

5   innocently, as Mr. Levin indicates, simply enter into an

6   agreement that will preserve rights.  What the agreement serves

7   to do is to strip RSL of its assets so that when the class

8   claim is adjudicated there will be no assets to satisfy that

9   claim and everybody will have been taken care of except the

10  claimants in the class who have a genuine claim.

11          Now, what we know is that RSL and RCC, amongst

12  others, were conspirators in the Ponzi scheme that had as its

13  central role the stripping of assets out of RCM and even if we

14  look in the very narrow fact pattern that is put into the

15  motion in support of the 9019, what is admitted is the

16  following.  What they say is that RCC, joint tort feasor with

17  RSL --

18          THE COURT:  Well, they don't say that.

19          MR. ANGEL:  Well, they don't say it but I say it.

20          THE COURT:  All right.

21          MR. ANGEL:  They say that RCC owes RSL $127 million.

22   RCC owes RCM $283 million.  So let's just take the security of

23  that.  You take $283 million of assets out of RCL that go into

24  RCC.  RCC conveniently gives the money -- $127 million -- to

25  RSL and now what they propose to do is to eliminate any

possibility that I may have when our claims are sustained to
get a recovery and what did they want to use the money for and
what have they used the money for?  No. 1, they state in their
papers that with regard to Sperbank they have agreed to pay
back.  We were informed as we were --

THE COURT:  I'm sorry, "they" who?

MR. ANGEL:  Excuse me?

THE COURT:  "Have agreed to pay Sperbank"?

MR. ANGEL:  $123 million.

THE COURT:  No, but RSL has agreed to do that?

MR. ANGEL:  Excuse me?

THE COURT:  RSL has agreed to do that.

MR. ANGEL:  It's agreed to pay --

THE COURT:  The non-debtor.

MR. ANGEL:  Sperbank.

THE COURT:  The non-debtor has agreed to pay?

MR. ANGEL:  The non-debtor.

THE COURT:  Okay.

MR. ANGEL:  What we know is they have already paid
Sperbank about $80 million, counsel?

MR. LEVIN:  RSL has paid Sperbank approximately
eighty percent of $123 million.  I can't do the math right
away.

MR. ANGEL:  Okay.

THE COURT:  Sperbank has a judgment; right?

1    MR. LEVIN:  Sperbank has a judgment --

2    MR. ANGEL:  It has a judgment.

3    MR. LEVIN:  -- in the U.K. and the U.S.

4    MR. ANGEL:  I know.  Okay.

5    THE COURT:  Okay.

6    MR. ANGEL:  But what I'm saying to Your Honor is

7 they've made the payment.  They don't need the 9019 because,

8 obviously, they've already made a payment so that's point one.

9    THE COURT:  But I'm not doing anything about Sperbank

10 here.

11   MR. ANGEL:  No.

12   THE COURT:  There's no request to do anything about

13 Sperbank.

14   MR. ANGEL:  If I may, Your Honor?

15   THE COURT:  Okay.

16   MR. ANGEL:  Second part of it.

17       What they propose to do is to take $120 million and

18 to take forty percent of that amount, approximately $50

19 million, and use that in the administration of RCC but the only

20 function that RCC has ever had is to be part of the conduit for

21 the Ponzi scheme for the funds.  Why do they need $40 million?

22  that $40 million should be set aside to take care of the

23 claims of my class.

24       What you have here, Your Honor, is an attempt to

25 basically sidestep the Debtor and Creditor Law of the state of

New York by rendering RSL insolvent and this Court should not
lend itself to the scheme whereby in essence a transfer which
is fraudulent as to our class by statute is made.  If they
want, what they should have done -- and Mr. Levin says, "There
is no authority that's cited by Mr. Angel in the opposition to
why the Court should direct that the company go into Chapter 7
or Chapter 11."  The answer to that one is quite simple.  There
is no authority.  But if you want the protection of the Court
with regard to transferring of the assets, that you ought to do
that.

            THE COURT:  Well, what protection are they asking
for?  I thought they were just asking for approval to take an
action under 363(b) and 9019.  They're not asking for
protection.

            MR. ANGEL:  What they're asking to do is to strip the
assets and they're asking for the protection of this Court in
an order -- they cannot strip the assets out of RSL and the
Court should not give them a comfort order which allows them to
strip the assets out of RSL which is what's happening.

            THE COURT:  Well, I guess I -- what protection are
they asking of this Court?

            MR. ANGEL:  What's happening is that my class is
being stripped of the --

            THE COURT:  But there's no finding -- first of all,
it's a stipulation that's "so ordered" -- in the stipulation

1 that this is or is not a fraudulent transfer or that this is or
2 is not a preference.  That's all left for a later day.  There's
3 no protection as against your arguments in the future on that
4 point that they're seeking here.

5          MR. ANGEL:  But the assets will be gone.  The assets
6 are being dissipated and I have no protection.

7          THE COURT:  Well, but let's go back to Sperbank of a
8 second.

9          MR. ANGEL:  Okay.

10          THE COURT:  Okay.

11          $127 million will be gone there, too, right?

12          MR. ANGEL:  It's gone.  I can't bring it back --

13          THE COURT:  You have no protection, so what is your
14 request then?

15          MR. ANGEL:  If RSL were in a proceeding I could get
16 that money back.  I could get that money back as a preferential
17 transfer.

18          THE COURT:  Okay.

19          MR. ANGEL:  Okay.  So that's part one.

20          With regard to the $50 million that they're going to
21 use for ongoing RCC activities, which I don't know of any RCC
22 continuing activity.  Why should they be permitted to strip the
23 --

24          THE COURT:  How is Sperbank using the $127 million?

25          MR. ANGEL:  How is it going --

1        THE COURT:  How is Sperbank going to use the money

2   it's getting?  You have no idea; right?

3        MR. ANGEL:  I assume they're going to spend their

4   money.

5        THE COURT:  They may be giving it to Vladimir Putin.

6    You have no idea.

7        MR. ANGEL:  I assume Sperbank is going to take their

8   money to Russia and that's it.  I'm not going to be able to see

9   it.

10       THE COURT:  So what does it matter how the money is

11  being used?

12       MR. ANGEL:  Well, it matters because, Your Honor, I

13  have a claim that's superior to Sperbank's.  If we are correct

14  -- and I have SEC counsel here to discuss it -- as customers we

15  have a superior right to the assets of RSL than does Sperbank

16  as a judgment creditor.  We are customers who are entitled to

17  protection of safekeeping of our securities by our broker who

18  happens by law to have been RSL and RCM.

19       THE COURT:  And how do you exercise that right?

20       MR. ANGEL:  Excuse me?

21       THE COURT:  And how do you exercise that right?

22       MR. ANGEL:  By the lawsuit that we have brought,

23  absolutely.

24       THE COURT:  No, no, vis-a-vis Sperbank.

25       MR. ANGEL:  Sperbank -- there's nothing I can do

1  about it.  They've just taken the money and they've paid

2  Sperbank.  So they don't need Your Honor's order, obviously, to

3  protect them.  They're going to do whatever they want to do.

4        I'm talking about the rest of the money.  That money

5  should not be moved.  That money should be subject to my claim.

6        THE COURT:  Okay.

7        MR. ANGEL:  Thank you, Your Honor.

8        THE COURT:  Okay.

9        There's a reference in the reply or response by, I

10  think it's the debtor, maybe it's the Committee, that the

11  stipulation has been changed in one respect.  Have there been

12  any other changes to the stipulation?

13        MR. LEVIN:  No, Your Honor, just the addition to

14  Paragraph 32.

15        THE COURT:  Okay.

16        Then I had a question about -- Paragraph 2 of the

17  stipulation says, "RSL shall pay to RCC the full amount of the

18  RCC debt to an account designated by RCC through pro rata

19  distributions to RCC on the RCC debt calculated based on the

20  ratio of the RCC debt to all RSL Creditor Claims," so that the

21  distributions go to -- it ties into the Other Creditor Claims;

22  correct?

23        MR. KIRPALANI:  Yes, Your Honor.

24        It's supposed to be pro rata for any claims that RSL

25  feels it needs to reserve for.

1          THE COURT:  Okay.

2          MR. KIRPALANI:  Your Honor, if I could just clarify

3  the question that you were asking Mr. Angel.

4          Your Honor is right, there are no findings being

5  sought.  In fact, Mr. Levin and I have debated with each other,

6  why do we need to go to Court for this, our position was it's a

7  matter of 542.  It's a debt, you should just pay it and RSL

8  doesn't need approval and actually the rationale that we

9  believe to be the correct one and, perhaps, it's not

10  articulated that way in the motion, is that Refco Capital in a

11  sense is agreeing to a payment plan.  It should be entitled to

12  demand money right away but it's agreeing to payment plan over

13  time and just to be cautious we wanted the world to know that

14  rather than being paid right away by an affiliated, we were

15  agreeing to take something less and that's the real reason for

16  the 9019.

17          Then in addition, the RCM estate through the RCM

18  trustee had raised some issues about intercompany allocation

19  and ownership of assets and so we agreed to treat that.  That's

20  the reason, Your Honor, not to insulate it anyway.

21          THE COURT:  Okay.

22          Does anyone else have anything to say on the motion?

23                     (No response.)

24          THE COURT:  Okay.

25          I have in front of me the debtors' motion supported

by the Official Creditors Committee as well as the RCM trustee, Mr. Kirschner, who, through his counsel is a party to the agreement, for approval of their entry into a stipulation which would be "so ordered" with a non-debtor regulated entity, Refco Securities, LLC or "RSL", that in light of RSL's current cash position (which reflects among other things the SEC's requirements that RSL reserve substantial amounts of cash for potential customer claims as well as a reserve that RSL has for RCM claims) provides for deferred payment, pro rata with listed non-customer creditors of RSL, to one of the debtors, RCC. It also provides various mechanisms and reservations of rights with respect to claims by RCM through Mr. Kirschner to that money as well as claims between Mr. Kirschner and RCM on the one hand and RSL on the other.

It's couched as a settlement, appropriately, for the reasons that Mr. Kirpalani just outlined. It provides for deferred payment of a portion of the debt owed by RSL to RCC as well as, again, for the mechanisms to deal with the claims asserted by RCM, both to the money going to RCC as well as other claims asserted by RCM that have not been liquidated, and that are disputed as well, between RCM and RSL and vice versa. Because of that context, the debtors' and the trustee's entry into the agreement is subject to the notice and hearing requirements of 363(b) and Bankruptcy Rule 9019, and the motion accurately sets out the standard by which the Court should

review such a motion.  I'll say that on that basis the motion is unopposed, _i.e._, as to whether it is a proper settlement from the perspective of the respective debtors' estates; and, based upon the statements in the motion and there being no objection by anyone wearing the hat of a creditor of any of the debtors' estates to the settlement, it appears to me that the settlement is in fact reasonable and appropriate in light of not only the litigation risks but, here in particular, the issue of collection -- which is what I view to be the driving force behind the settlement: that is, an analysis by RCC and the Creditors Committee and, I believe, also Mr. Kirschner that, given RSL's current cash position, it's appropriate to agree to a deferred payment plan.

The only objection to the motion is by the lead plaintiff in a class action against RSL, as well as against RCM, pending in the district court.  The lead plaintiff and the class members are creditors of the debtors, or at least of RCM, but in their objection they're wearing their hat as creditors of RSL, the non-debtor.  The objection contends that the motion seeks approval of the stipulation so as to obtain a comfort order or to bless the payments or in some other way to insulate the payments from potential attack as a potential preference or fraudulent transfer.

It's alleged by the objectors that if RSL makes the payments and continues to make further payments before the

class obtains a judgment in its litigation that the class will

be left with merely a shell in the RSL entity and that,

consequently, I should protect the class by precluding RSL from

making the distributions contemplated by the stipulation.

In essence, I believe that the objection is an error

in two respects; first, a comfort order or a cleansing of the

transaction is not what is before me and is not what is sought

by the debtors or the trustee; rather, they are under an

obligation under the Bankruptcy Code and Bankruptcy Rules to

provide notice and an opportunity for a hearing with respect to

their entry into settlement agreements and/or agreements out of

the ordinary course, and the Court needs to review those

agreements from the perspective of the debtors and their

creditors to determine whether, from that perspective, the

agreements are reasonable -- and as I said before, from that

perspective they are.  They have not sought any finding, for

example, going beyond the requirements that a Court must find

for approval of a settlement; for example, they've not sought a

finding that any payment by RSL to RCC under the stipulation is

protected from future fraudulent transfer attack or future

attack as a preference if at some point RSL is in a proceeding

that would give rise to a potential attack on that basis.

In light of the proper context of this motion, I

believe that the objection is also in error because it in

effect seeks injunctive relief without making that request in

1  the proper forum or setting forth a proper basis to obtain an
2  injunction, and that is because, again, the focus of the
3  objection is on the non-debtor entity's actions -- RSL's
4  actions.  In that respect this motion and the payments it
5  contemplates is no different than the payments that RSL has
6  made and will make to judgment creditor Sperbank or any other
7  creditor, which RSL's other creditors, such as the lead
8  plaintiff, would have to attack, if they could attack them at
9  all, pursuant to their applicable state law remedies including
10 potential injunctive relief.

11          So I will deny the objection on that basis and
12 approve the debtors' and Mr. Kirschner's entry into the
13 settlement agreement and the stipulation.

14          MR. ANGEL:  Your Honor, may I have a stay pending my
15 appeal to the district court?

16          THE COURT:  On what basis?

17          MR. ANGEL:  Excuse me?

18          THE COURT:  I'm sorry, on what basis?

19          MR. ANGEL:  On the basis that I will be irreparably
20 harmed.  I'll go immediately to the district court for relief
21 and we will seek injunctive relief in the district court.

22          This is a transfer that will strip my debtor-
23 defendant in the action of all of its assets and I believe that
24 it's proper now for me to go to the district court and seek
25 injunctive relief and since there is no immediate need for the

1  money, a thirty day stay would not harm anyone, and I would

2  request that I be permitted that.

3         THE COURT:  Do you want to confer with the Committee?

4         MR. LEVIN:  Excuse me, Your Honor?

5         THE COURT:  Do you want to confer with the Committee

6  on this one?

7                (Pause in proceedings.)

8         MR. LEVIN:  Your Honor, if I understand Mr. Angel's

9  request, I'm not sure what he said he's going to do in the

10 district court.  At one time he said he was going to appeal,

11 another time he said he was going to seek an injunction.

12        So if we can get clarification on that I'd be better

13 prepared to respond.

14        THE COURT:  Okay.

15        MR. ANGEL:  I intend to do both, Your Honor.

16        I will appeal the ruling and I will seek injunctive

17 relief separately.

18        THE COURT:  But you're seeking a stay pending appeal;

19 right?

20        MR. ANGEL:  I seek to stay the transfer of funds that

21 they expect to make under the order which Your Honor has agreed

22 to sign now and I wish to stay that after thirty days.  In the

23 thirty days, I will take my appeal to the district court of

24 that order.  At the same time, I will bring a separate

25 proceeding in the district court seeking injunctive relief on

1 the grounds that this is a scheme to strip the assets from the

2 debtor RSL --

3          THE COURT:  But that's not --

4          MR. ANGEL:  Whatever it is but --

5          THE COURT:  No, no, that wasn't where I was going.

6          I'm saying that the stay you're asking from me --

7          MR. ANGEL:  Is just from the transfer of the funds.

8 That's all.

9          THE COURT:  No, no, you're not seeking a stay so that

10 you can pursue an injunction, right, from me?

11          MR. ANGEL:  That's correct.

12          I'm seeking a stay from you of a transfer of the

13 funds so I can file an appeal with the district court.  I would

14 hope to have that appeal heard on an expedited basis together

15 with my request for injunctive relief at the district court.

16 That's exactly what I would like to do.  I've asked for thirty

17 days and I don't see any harm in granting that relief since the

18 person who will be harmed is my class because the assets at RSL

19 will have been stripped out and when the class ultimately

20 receives a judgment with regard to their claim, there is no

21 place to go.

22          THE COURT:  Well, I don't know how the -- because

23 it's not part of the record -- but in the Sperbank agreement,

24 is RSL prohibited from making other than pro rata

25 distributions; _i.e._, if the agreement with RCC doesn't go into

effect will Sperbank and the other creditors get a leg up on

RCC?

          MR. LEVIN:  Yes and no.

          Yes, they could get a leg up.  However, under this

stipulation the funds have already been transferred.  They are

sitting at RCC right now.

          THE COURT:  The eighty percent?

          MR. LEVIN:  The eighty percent.  Yes.  The eighty

percent.

          I might suggest, Your Honor, that if you were to

grant the order approving the stipulation and stay, what you

would be staying -- you wouldn't be enjoining RSL from making

transfers because that's not what the order authorizes.  What

you would be staying is RCC holding back on collections and,

therefore, RCC would no longer be bound to collect only eighty

percent but could go forward and collect even more.

          Now, that would or could default the Sperbank

agreement unless RSL made a comparable payment to Sperbank.

But if I understand what Mr. Angel is asking, he's asking that

RCC not be restrained from collecting more money from RSL.

          To the extent he's asking that RSL be enjoined,

that's his action in the district court.  That's no part of

this proceeding.  So a stay pending appeal, I think, would go -

- if he wants a stay pending appeal, I suppose it doesn't hurt

either RCC -- it doesn't hurt RCC at all.  RCC can now move

forward aggressively.  The agreement here was that it would

not.  We think that's in the best interest of the estates, RCC

and RCM.  By the way, the stay would also --

THE COURT:  I'm sorry, before you go on to that, when

is the other twenty percent expected to come in?

MR. LEVIN:  It will come in over time, Your Honor, as

claims are resolved and assets are collected.  The other twenty

percent is due under both this agreement and the Sperbank

agreement on December 22nd of this year.

THE COURT:  But is it conceivable that over the next

thirty days, if I stay the effect of this order, that Sperbank

and the other creditors will be receiving their share -- well,

more than their share and RCC wouldn't?

MR. LEVIN:  Yes, it is conceivable, Your Honor.

I don't have --

THE COURT:  Of the twenty percent.  Because I assume

that Sperbank will receive its eighty percent?

MR. LEVIN:  Sperbank has received its eighty percent.

The agreement with Sperbank in parallel with this

agreement says that as RSL collects available cash it has to

make periodic payments with the final due date of December.

So if you're staying RCC from collecting, then

Sperbank could get a leg up.  If you are not staying RCC from

collecting, Sperbank will not get a leg up but money will

continue to be paid from RSL under at least the Sperbank

1   agreement and it may voluntarily pay to RCC as well.

2           THE COURT:  I guess that's the issue.

3           There's nothing to stop RSL from paying.  That's

4   really the point, isn't it, Mr. Angel?

5           MR. ANGEL:  I'll go up and seek injunctive relief

6   immediately in the district court.  Why don't you just stay the

7   order for ten days and we'll go up and seek injunctive relief

8   because what they're doing is stripping the assets and I

9   believe we could get injunctive relief in the district court.

10          THE COURT:  Well, see, nothing here prevents you from

11  doing that.  I guess that's where I'm coming out.

12          MR. ANGEL:  I don't want the money to disappear while

13  I'm going upstairs.  That's all I want and I think I'm entitled

14  to that.

15          Judge, they're stripping the assets out of RSL.  They

16  can coat it anyway they want but that's exactly what's

17  happening and I believe that we are correct.

18          THE COURT:  But there's nothing to keep it -- that's

19  consistent with my order -- there's nothing to keep it from

20  disappearing if I grant your stay.  That's the distinction

21  between the motion in front of me and a request for an

22  injunction under the Debtor/Creditor Law.  That's the

23  difference.

24          MR. ANGEL:  RCC and RCM are debtors before this Court

25  and you can simply prohibit them from taking any money right

1  now.

2       THE COURT: But that's not a stay of this order.

3  That's, I guess, the --

4       MR. ANGEL: Not accepting any money. If they don't

5  accept any money, money will stay at RSL.

6       The problem here, Your Honor, is you have -- Skadden

7  is the attorney for RCC, Skadden is the attorney for RSL,

8  Skadden, etc. You have a definite conflict in interest that is

9  to my client's detriment. It should not be permitted. They

10  should have put RSL into a proceeding. If they put RSL into a

11  proceeding, my clients would be entitled to at the very least

12  separate protection.

13       MR. LEVIN: Your Honor, one of the provisions of the

14  stipulation attempts to resolve any conflict by designating the

15  Committee as the entity to enforce any RCC claims so that

16  Skadden gets out of the middle of that.

17       THE COURT: Right.

18       I guess really going back to the basis of my ruling

19  denying the objection, I'm going to deny the request for a

20  stay, too, because I really think the request for a stay is in

21  essence a request for an injunction of payment, which isn't

22  before me, and, again, that type of relief can be sought

23  elsewhere and, secondly, as I read the stipulation, I agree

24  with Mr. Levin as to the consequences of staying it, which is

25  that RSL would not be precluded from still making whatever

payments it wants to make and feels it's under an obligation to
make.  So I don't believe that the relief that the lead
plaintiff is seeking here is anything other than an injunction
of RSL making the payment as opposed to a stay of an order that
actually relieves RSL of an obligation to make full payment and
requires that only at this time, which it's already done, to
pay eighty percent.

So in weighing the harms, I don't see a harm to the
lead plaintiff on the relief they really want, which is to
somehow get back the money that RSL has already paid and
preclude RSL from making any payments in the future.

Moreover, I believe that that opportunity -- the
opportunity to seek that type of relief -- as I said before, is
not precluded by my order and, further, as a practical matter
isn't precluded by it either given the timing here and the
protections that the stipulation contains for the RCM money;
and as far as the RCC money is concerned, it's very hard for me
to imagine RCC blowing out forty percent of it, the money in
escrow, in the next thirty days.  It just isn't going to happen
given the requirements of the Bankruptcy Code.  So I'll deny
the request for an injunction on that basis.

I want to be clear, I'm making no finding as to
whether there's a basis for an injunction of RSL at all.  I
don't think there's a record before me under which I could make
a finding either way as to whether there's a basis under the

1 Debtor/Creditor Law for an injunction, and that's really for

2 another court to make.

3          MR. ANGEL:  Your Honor, may I have a settled order?

4          THE COURT:  It's just a stipulation.  It's a "so

5 ordered" stipulation.

6          MR. ANGEL:  Thank you, Your Honor.

7          MR. LEVIN:  Your Honor, I heard you say that you were

8 denying an injunction.

9          Did I understand that to also mean you were denying a

10 stay pending appeal?

11          THE COURT:  Yes.

12          MR. LEVIN:  Thank you.

13          THE COURT:  Because I think what's really sought is

14 in the nature of an injunction as opposed to a stay pending

15 appeal.

16          MR. LEVIN:  Your Honor, if I may approach with the

17 stipulated order?

18          THE COURT:  Yes.

19          MR. LEVIN:  The next matter on the calendar, Your

20 Honor, is the motion by the purported removed members of the

21 Committee.  I believe that's been continued but I'm not --

22          THE COURT:  Well, I received a bridge order this

23 morning.  Is that the current state of play?

24          MR. GREENE:  Yes, Your Honor.

25          Ira Greene of Hogan & Hartson for Premiere Bank, one

1  of the movants.

2       Your Honor, by way of brief background, on July 21st

3  the United States Trustee filed a notice of reconstitution of

4  the official creditors committee in this case or in these cases

5  whereby six of the nine members were removed and the remaining

6  three members then constituted the committee.

7       Subsequently, the removed members filed the motion

8  asking for among other things the re-reconstitution of the

9  committee under Section 1102(a)(4).  Subsequent to that, the

10  United States Trustee filed two notices of bifurcation of the

11  committee whereby the original committee was bifurcated into

12  two committees; one committee consisting of the three remaining

13  members plus Cargill, the other additional committee consisting

14  of the other removed members.

15       We then held a chambers conference with

16  representatives of all of the removed members, the remaining

17  members, counsel to the committee, counsel to RCM trustee and

18  the U.S. Trustee and as a result of that conference the parties

19  have been working on an agreed order looking towards resolving

20  this case.  We have not completed those negotiations and so we

21  have submitted last night and filed a bridge order which

22  provides that the motion would be adjourned to August 16th, it

23  provides that both of the committees may use all of the

24  retained professionals and it's deemed that both committees

25  shall have retained and may use them except to the extent that

1    Milbank would only act on behalf of the existing committee --

2    would only act on behalf of the additional committee with the

3    consent of the other committee.  It also provides that neither

4    committee shall use any of the professionals as an expert

5    witness in any litigation where they would be adverse to each

6    other and it further provides that both committees will

7    negotiate in good faith towards establishing a global

8    subcommittee which would consist of members of both committees

9    and that's the bridge order that you have that was submitted

10   this morning and I have another copy for you this morning.

11              THE COURT:  Okay.

12              I'm assuming that pending resolution of this matter,

13   the consent would be freely given on all matters where all of

14   the estates share a joint interest and that the interests of

15   RCM are not different than the interests of the other estates?

16    Is that sort of a working assumption?

17              MR. GREENE:  I believe that's true, Your Honor.

18              THE COURT:  Okay.

19              All right.

20              MALE VOICE:  May I approach?

21              THE COURT:  Well, I'm not encouraging other people to

22   speak up.  I think the bridge order speaks for itself and is

23   consistent with what we were discussing the other day but if

24   people have something to say they can say it.

25              MR. SILVERSTEIN:  I do, briefly, Your Honor.

1      Paul Silverstein of Andrews & Kurth for the ad hoc

2 equity committee.

3      Your Honor, we obviously saw Mr. Sage's [Ph.]

4 pleading that he filed the other day and, frankly, raised a

5 bunch of issues for our committee which is that there appear to

6 be plan term sheets circulating.  They appear to be at the plan

7 discussion stage and I distinctly recall and I think my clients

8 distinctly recall that in Your Honor's denial of our motion for

9 an official equity committee, the Court indicated that the

10 other parties should include the equity group in those

11 discussions and in those negotiations.  That has not happened.

12      I don't want to be --

13      THE COURT:  Well, I think that, first of all, your

14 point really isn't as to this particular issue.

15      MR. SILVERSTEIN:  No, because obviously we're not

16 going forward with the meat of the pleadings that have been

17 filed.

18      My point is to raise the issue that we would like a

19 direction from Your Honor that the ad hoc equity group can be

20 included in those discussions, be provided with a copy of the

21 plan term sheet because, frankly, I don't think it's a real

22 productive use of time to come back moving for the appointment

23 of an official equity committee again.

24      THE COURT:  Okay.

25      MR. SILVERSTEIN:  We would like that direction.

1          THE COURT:  I'll address your point in a second.

2          MR. SILVERSTEIN:  Thank you.

3          THE COURT:  With regard to the bridge order based on

4     your remarks and the chambers conference, I'll enter that order

5     today.

6          MR. GREENE:  May I approach, Your Honor, with a copy?

7          THE COURT:  Yes, thank you.

8          Then as far as plan negotiations are concerned,

9     obviously, I view it as a judgment call as to when various

10    parties get involved in various negotiations and it's my view

11    that this is a complex enough case that progress needs to be

12    made incrementally.  So in the first instance, at least, I'll

13    leave it up to the judgment of the professionals involved and

14    their clients as to when to bring other parties into their

15    discussions and which parties they should bring into those

16    discussions.  I think that the creditors of the non-RCM estates

17    and RCM in dealing with those creditors as opposed to the RCM

18    creditors and the RCM trustee dealing among themselves, have

19    enough of a handful of issues to deal with at this point on an

20    expedited basis, as I've directed them to deal with them, not

21    to broaden the loop at this point, at least not to have me tell

22    them to broaden the loop at this point.  I'm sure they will at

23    some point, but if they don't, I'm sure that the equity holders

24    are well represented enough to raise their legitimate concerns

25    at that point.

1          Okay.

2          Does that leave the LLC matters?

3          MR. RATNER:  Yes, Your Honor, I believe it does.

4          Your Honor, Scott Ratner of Togut, Segal & Segal on

5  behalf of the Chapter 7 trustee for Refco, LLC.

6          There are just two uncontested matters on the

7  calendar this morning respecting Refco, LLC.

8          First, Your Honor, this concerns --

9          THE COURT:  I'm sure this is no disrespect to you why

10 everyone is leaving and --

11         MR. RATNER:  Yes --

12         THE COURT:  -- it's fine for them to leave.  I'm

13 happy to have them leave.

14         MR. RATNER:  I don't take it personally, Your Honor.

15  It's a beautiful day.

16         THE COURT:  Well, they have the negotiations to get

17 back to.

18         MR. RATNER:  Right.

19         THE COURT:  Okay.

20         MR. RATNER:  Your Honor, the first motion concerns

21 the trustee's request for authorization to wind down and

22 dissolve an entity known as Refco Trading Services, LLC,

23 otherwise known as RTS, yet another acronym in the case.  RTS

24 is a non-debtor entity.  Refco, LLC is its only member as a

25 limited liability company.  As a result, Mr. Togut, as the

Chapter 7 trustee of Refco, LLC is the only representative,
really, of RTS at this point in time. The ownership interests
of the Chapter 7 debtor in RTS represents an asset of the
Chapter 7 estate that we have to administer. Accordingly, Mr.
Togut as Chapter 7 trustee would like to wind down and dissolve
RTS under applicable Delaware state law, having made a
determination that it would be probably more effective, cost
efficient and expeditious to do it that way.

RTS ceased trading operations on November 25, 2005
when Refco, LLC filed for Chapter 7. It did have some
operations in Canada which is one of the reasons why we're
seeking what this type of order authorizing and making clear
that Mr. Togut as Chapter 7 trustee has the authority to
dissolve and wind down RTS.

There have been no objections to the motion. I would
like to note on the record, though, Your Honor, if I could
maybe approach the bench, there is a revised order which adds
two paragraphs to the relief requested which was relief
requested in the motion itself and it was deemed best to
perhaps include that in the order itself. It makes explicit
what is implicit when one winds down and dissolves a corporate
entity under state law, namely the decretal paragraphs
specifically authorize the Chapter 7 trustee to pay and satisfy
liabilities and obligations of RTS under applicable non-
bankruptcy law and further authorizes the trustee to cause any

surplus at the RTS level to be distributed to its equity owner

which is the Chapter 7 debtor.

THE COURT:  Okay.

MR. RATNER:  If I may approach the bench, Your Honor,

I have the order on a disk along with a blackline copy.

THE COURT:  Okay.  That's fine.

MR. RATNER:  Thank you.

THE COURT:  All right.

Based on my review of the motion as well as there

being no objections, I'll approve it.  The additions to the

order as summarized by Mr. Ratner seem fine to me and implicit

in approving the motion as a whole.  So they are fine as well.

I did slightly change the exculpation language just

to be consistent with the other orders I've entered in the case

also providing for exculpation of the trustee in connection

with his operation of LLC and it's just a slight difference

that I've added.

MR. RATNER:  Okay, Your Honor.

THE COURT:  A good faith test.

MR. RATNER:  Yes.  Thank you, Your Honor.

THE COURT:  Okay.

MR. RATNER:  If I may, the second matter on the

calendar concerns the motion by the Chapter 7 trustee for a

clarifying order concerning prior operating orders entered by

this Court authorizing Mr. Togut as Chapter 7 trustee to take

certain actions in connection with his administration of the

Chapter 7 estate, namely his compliance with the sale order

governing the transaction with Mahon Financial, the

effectuation and consummation of the acquisition with Mahon

Financial and otherwise complying with the obligations of the

Chapter 7 trustee for a future commissions merchant under

Chapter 7 of the Bankruptcy Code.

It's a very simple clarifying order, Your Honor.

There could be viewed as an ambiguity in a supplemental

operating order that was entered that would terminate the

authority of the Chapter 7 trustee at the end of the so-called

transition period under the Mahon sale transaction.  That

transition period ends on or about August 22nd.  All we'd like

to make clear, Your Honor, in this clarifying order is that the

authority previously granted to the Chapter 7 trustee continues

beyond August 22nd until further order of the Court.  We're not

otherwise seeking to expand substantively the nature of the

trustee's authority to operate or act.

THE COURT:  Right.

I think that was clear from the motion and the

proposed order which simply makes it clear that Mr. Togut is

authorized to perform his duties under the Bankruptcy Code and

Part 190 of the regulations and, specifically, Subchapter 4 of

Chapter 7 of the Code.  So I'll grant the relief.

MR. RATNER:  Thank you, Your Honor.

1          If I may approach the bench?

2          THE COURT:  Yes.

3          MR. RATNER:  Your Honor, that concludes the matters

4 with respect to LLC and --

5          THE COURT:  I think you're the last man standing.

6          MR. RATNER:  Yes.

7          Given the fact that counsel for the Chapter 11

8 debtors have gone --

9          THE COURT:  You and your colleagues from the

10 creditors committee are the last people standing so thank you

11 very much.

12          MR. RATNER:  Thank you, Your Honor.

13          THE COURT:  Okay.

14                    * * * * *

15

16

17

18

19

20

21

22

23

24

25

1                              * * * * *

2          I certify that the foregoing is a transcript from an

3    electronic sound recording of the proceedings in the above-

4    entitled matter.

5

6    _____

7                        CARLA NUTTER

8

9    Dated:   August 10, 2006

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25