SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
J. Gregory Milmoe (JGM 0919)
Sally McDonald Henry (SMH 0839)
J. Gregory St. Clair (GS 8344)

Attorneys for Refco Inc., et al.,
Debtors and Debtors-in-Possession

-and-

BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
(212) 705-7000
Edwin E. Smith

Counsel for the Chapter 11 Trustee of
Refco Capital Markets, Ltd.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                      :
       In re                          :     Chapter 11
                                      :
Refco Inc., et al.,                   :     Case No. 05-60006 (RDD)
                                      :
                 Debtors.    :     (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## NOTICE OF AMENDED PROPOSED ORDER UNDER 11 U.S.C. §§ 105, 362, 363 AND 364 (I) AUTHORIZING POST-PETITION CASH MANAGEMENT ADVANCE ON A SECURED AND SUPERPRIORITY BASIS; (II) AUTHORIZING USE OF CASH; (III) APPROVING AGREEMENTS RELATED TO THE FOREGOING; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

PLEASE TAKE NOTICE that Refco Group Ltd., ("Refco Group), New Refco

Group Ltd., LLC ("New Refco Group"), and certain of its subsidiaries, in each case as debtors

and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), together with the chapter 11 trustee (the "Chapter 11 Trustee") of Refco Capital Markets, Ltd. ("RCM") intend to present a revised Proposed Order Under 11 U.S.C. §§ 105, 362, 363 and 364 (I) Authorizing Post-Petition Cash Management Advance on a Secured and Superpriority Basis; (II) Authorizing Use of Cash; (III) Approving Agreements Related to the Foregoing; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief, in substantially the form annexed hereto as Exhibit A (the "Amended Order") at the hearing scheduled for **October, 16 2006, at 10:00 a.m. (prevailing Eastern Time)**, before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 610 of the United States Bankruptcy Court for the Southern District of New York, to consider the Joint Motion for Order Under 11 U.S.C. §§ 105, 362, 363 and 364 (I) Authorizing Post-Petition Cash Management Advance on a Secured and Superpriority Basis; (II) Authorizing Use of Cash; (III) Approving Agreements Related to the Foregoing; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief [Docket Entry No. 2963] (the "Joint Motion").  The Amended Order supersedes Exhibit C of the Joint Motion.  The Amended Order annexed hereto is presented in "blackline" form to highlight the modifications made to Exhibit C of the Joint Motion.

Dated: October 5, 2006
      New York, New York

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ J. Gregory Milmoe
    J. Gregory Milmoe (JGM 0919)
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    Attorneys for Refco Inc., et al.,
      Debtors and Debtors-in-Possession

BINGHAM McCUTCHEN LLP

By: /s/ Edwin E. Smith
    Edwin E. Smith
    399 Park Avenue
    New York, NY 10022
    (212) 705-7000

    Counsel for the Chapter 11 Trustee of Refco Capital
    Markets, Ltd.

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
                                        :
**In re:**                                      :
                                       :     **Chapter 11 Case**
**REFCO INC.,** *et al.*,                      :     **No. 05-60006 (RDD)**
                                       :     **(Jointly Administered)**
                         **Debtors.**          :
                                       :
-------------------------------------------------------- x

**ORDER PURSUANT TO BANKRUPTCY CODE**
**SECTIONS 105, 362, 363 AND 364 (I) AUTHORIZING SECURED**
**POST-PETITION CASH MANAGEMENT ADVANCE ON A SECURED**
**AND SUPERPRIORITY BASIS; (II) AUTHORIZING USE OF CASH;**
**(III) APPROVING AGREEMENTS RELATED TO THE FOREGOING; <u>(IV)</u>**
**<u>MODIFYING AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>"), dated September 29, 2006, of Refco Group Ltd., LLC

("<u>RGL</u>"), New Refco Group Ltd., LLC ("<u>New RGL</u>"), and each of the subsidiaries of New RGL

listed on <u>Exhibit A</u> hereto, in each case as debtors and debtors in possession (collectively, the

"<u>Debtors</u>"), and Refco Capital Markets, Ltd. ("<u>RCM</u>"), acting through Marc S. Kirschner as

chapter 11 trustee (the "<u>RCM </u>Trustee"), pursuant to sections 105, 362, 363(c)(2), 364(c)(1),

364(c)(2), 364(c)(3) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as

amended, the "<u>Bankruptcy Code</u>") and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>") seeking entry of an order (the

"<u>Order</u>"), *inter alia*:

(i)         authorizing the Debtors to obtain, and RCM to make, a secured postpetition

advance on a superpriority basis as part of the cash management operations of the Debtors and

RCM (the "<u>Facility</u>") pursuant to the terms and conditions of that certain Cash Management

Credit Agreement (as amended and in effect from time to time, the "<u>Cash Management Advance</u>

<u>Agreement</u>") among (a) RGL, as borrower (the "<u>Borrower</u>"), (b) New RGL and certain of its

Debtor subsidiaries listed on Exhibit A hereto, as guarantors (collectively, the "<u>Guarantors</u>"), and (c) the chapter 11 estate of RCM, acting by and through the RCM Trustee, as lender (the "<u>Lender</u>"), substantially in the form filed with the Court on October __, 2006;

(ii) authorizing and directing the Debtors and Lender to perform under the Cash Management Advance Agreement and the security agreement and other documents related to the Facility (collectively with the Cash Management Advance Agreement, the "<u>Facility Documents</u>") likewise filed with the Court on October __, 2006, and to perform such other acts as may be necessary or desirable in connection with the Facility Documents;

(iii) authorizing the RCM Trustee and the Lender to use cash or other immediately available funds from the RCM estate to make the advance and incur other obligations provided in the Cash Management Advance Agreement and the other Facility Documents;

(iv) granting to the Lender an allowed superpriority administrative expense claim in each of the Debtors' chapter 11 cases to secure payment of the advance, guaranty and other obligations under the Facility Documents and this Order (the "<u>Obligations</u>"), which superpriority claims shall be subject only to the Carve Out (as hereinafter defined) and will otherwise be accorded superpriority status in each of the Debtors' bankruptcy cases, having priority over any and all other administrative expenses in the Debtors' chapter 11 cases;

(v) granting to the Lender, to secure payment of the Obligations, automatically perfected security interests and liens in and on all of the Collateral (as hereinafter defined), senior in priority to all other security interests and liens to the extent provided herein;

(vi) authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the Facility Documents as such become due and payable, all in accordance with the terms of the Facility Documents; and

(vii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Facility Documents and this Order.

The Court having considered the Motion, the exhibits attached thereto, the Facility Documents, the evidence submitted at the hearing on the Motion conducted on October __, 2006 (the "Hearing"); and adequate notice of the Hearing having been provided in accordance with Bankruptcy Rules 4001(c) and 6004; and all objections, if any, to the Order approving the Facility having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. *Petition Date:* On October 17, 2005 (the "Petition Date"), each of the Debtors and RCM filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, commencing these bankruptcy cases (each Debtor's case, a "Chapter 11 Case," and collectively, the "Chapter 11 Cases").

B. *Debtors In Possession:* The Debtors are continuing in the management and operation of their businesses and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors of Refco Inc., *et al*. (the "Official Committee") on October 28, 2005, and reconstituted the Official Committee on March 29 and July 21, 2006. On August 3, 2006, the U.S. Trustee filed Notices of Bifurcation of Official Committee of

Unsecured Creditors by Further Reconstitution and Amended Appointment, further reconstituting the Official Committee and establishing the Additional Committee of Unsecured Creditors of Refco Inc., *et al*. (the "<u>Additional Committee</u>").

C. *RCM Trustee:* The RCM estate is being administered by the RCM Trustee. The U.S. Trustee appointed the RCM Trustee by notice dated April 10, 2006 and the Court approved such appointment by order dated April 12, 2006 (as amended on April 19 and April 24, 2006).

D. *Jurisdiction and Venue:* This Court has jurisdiction over these proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and for proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E. *Cash Management< Order and Corrected Appointment> Order:* On November 28, 2005, the Court entered that certain *Order Under 11 U.S.C. Sections 363 and 553 Authorizing (I) Continued Use of Existing Cash Management System, and (II) Preservation of Intercompany Setoff Rights* (the "<u>Cash Management Order</u>"). Pursuant to the Cash Management Order, the Debtors are authorized (i) to continue to use their existing cash management system and (ii) to engage in Intercompany Transactions (as defined in the Cash Management Order); *provided*, *however*, that the Debtors shall not make a loan or intercompany advance to other Debtor or non-Debtor affiliates unless authorized by this Court and on motion noticed to parties in interest in these Chapter 11 Cases. In addition, the Cash Management Order placed certain restrictions on the use of cash held at RCM. <In addition, on April 24, 2006, the Court entered that certain *(Corrected) Amendment to Order Approving Appointment of Chapter 11 Trustee for Refco Capital Markets, Ltd.* (the "Corrected Appointment Order"). Pursuant to the Corrected

Appointment Order, funds in a Restricted Account (as defined in the Corrected Appointment Order) may not be withdrawn without the express order of the Court.>

F.    *Lender Settlement Order:*  Pursuant to that *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement of Controversies and Disputes Among the Debtors, the RCM Trustee, the Pre-petition Secured Lenders and Certain Other Parties* dated September 27, 2006 (the "<u>Lender Settlement Order</u>"), the Debtors are to use their reasonable best efforts to raise the funds to pay, and to pay, the Payment Amount (as defined in the Lender Settlement Order);

G.    *Findings Regarding the Financing Contemplated by the Facility:*

(i)    *Compliance with Cash Management Order:*  The Facility authorized hereby is in accordance with and in compliance with the Cash Management Order.

(ii)    *Priming of the Prepetition Liens:*  The Liens (as defined in the Lender Settlement Order) are to be subordinated to the security interests and liens securing the Obligations to the extent provided in the Lender Settlement Order.

(iii)    *Need for Post-Petition Financing:*   In the absence of the Facility, the Debtors may be unable to make timely payment in full of the Payment Amount under the Lender Settlement Order and to obtain the full benefit of the settlements and compromises contemplated by the Lender Settlement Order.

(iv)    *No Credit Available on More Favorable Terms:*  The Debtors are unable to obtain financing from sources other than the Lender on terms more favorable than the Facility, especially taking into account the interest rate on the advance proposed to be charged by the Lender and the absence of any commitment or closing fees under the Facility.  The Debtors have been unable to obtain interim unsecured credit solely under

section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also have been unable to obtain credit (a) unsecured and having priority over that of administrative expenses of the kind specified in sections 503(b) and 507(a) and (b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting to the Lender the perfected first-priority security interests in, priming liens and junior liens on, as provided herein, all of the Debtors' existing and after-acquired assets, superpriority claims and the other protections set forth in this Order.

<(v) *Need for Relief from the Corrected Appointment Order.* The Lender will not have sufficient funds to make the advance contemplated by the Facility without withdrawing funds from one or more Restricted Accounts (as defined in the Corrected Appointment Order). The protections given to the Lender under the Facility Documents and this Order sufficiently justify the use of funds in one or more Restricted Accounts for the Lender to make the advance.>

H.     *Facility Documents:* The Debtors seek authority to enter into the Facility Documents, and the Lender seeks authority to use cash or other immediately available funds to make the advance under the Facility to the Borrower, all on the terms described herein and in the Facility Documents.

I.     *Sections 506(c):* Given that the proceeds of the advance contemplated by the Facility are to be used, together with other funds of the Debtors, solely to pay the Payment

Amount, the Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.       *Good Faith of the Lender, Etc.:*

(i)       The Lender has indicated a willingness to make the advance to the Borrower subject to (a) the entry of this Order, (b) approval of the terms and conditions of the Facility and the Facility Documents, and (c) entry of findings by this Court that such financing is in the best interest of the Debtors' and RCM's estates and their creditors, that the Lender is a good faith financier, and that the Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Order and the Facility Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of <this >Order or any other order, as provided in sections 363(m) and 364(e) of the Bankruptcy Code.

(ii)       Both the Debtors and the Lender will receive additional benefits from the advance.  By the proceeds of the advance enabling the Debtors to pay the Payment Amount and to obtain the full benefits of the Lender Settlement Order, there is a greater likelihood that the plan contemplated by the Global Term Sheet (as defined in the Motion) and for which the Debtors and the Lender are co-proponents will be consummated.  Indeed, the obtaining by the Debtors of the full benefits of the Lender Settlement Order is an important component of the plan.

(iii)       Even without taking into account greater likelihood of the achievement of the consummation of the plan contemplated by the Global Term Sheet, but certainly after taking into account that factor, the terms of this Order and the Facility are fair and reasonable and reflect the Debtors' and the RCM Trustee's, on behalf of the Lender,

exercise of reasonable and prudent business judgment consistent with their fiduciary duties and are in the best interest of the Debtors' and RCM's estates and their creditors. The making of the advance and the incurrence of the Obligations authorized hereby are supported by reasonably equivalent value and fair consideration and have been negotiated in good faith and at arm's length among the Debtors and the RCM Trustee, on behalf of the Lender. The advance made to the Borrower pursuant to the Facility Documents shall be deemed to have been made in good faith by the Lender as required by, and within the meaning of, sections 363(m) and 364(e) of the Bankruptcy Code, shall have been made in accordance with and in compliance with the terms of the Cash Management Order to the extent that any of the restrictions on the use of cash held at RCM remain applicable after taking into account any orders and rulings of this Court entered or made since the entry of the Cash Management Order, and shall have all of the benefits and protections of this Order.

K.    *Notice:* Notice of the Hearing and the relief requested in the Motion has been provided by the Debtors to (i) the Office of the United States Trustee for the Southern District of New York; (ii) Bingham McCutchen LLP, counsel to the RCM Trustee; (iv) Milbank Tweed, Hadley & McCloy LLP, counsel for the Official Committee; (v) Kasowitz, Benson, Torres & Friedman LLP, counsel to the Additional Committee; (vi) Davis Polk & Wardwell, counsel for the administrative agent for certain of the Debtors' prepetition credit facility lenders; (vii) Loeb & Loeb LLP, counsel for Wells Fargo Bank, N.A., as the indenture trustee for certain of the Debtors' noteholders; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Hearing and the relief requested in the Motion

is sufficient and complies with the requirements of sections 102(1), 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c) and 6004.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED that:

1. *Motion Granted.* The Motion is granted, subject to the terms and conditions set forth in this Order.

2. *Authorization of the Facility and the Facility Documents.* The Facility Documents are hereby approved. The Lender is expressly authorized to provide the advance pursuant to the terms of the Facility Documents and this Order, and the Debtors are expressly and immediately authorized, empowered and directed to perform the Obligations pursuant to the terms of the Facility Documents and this Order. The Facility Documents evidence the valid and binding Obligations enforceable against the Debtors, their estates and their creditors in accordance with their terms. The Debtors are hereby authorized and directed to pay the principal, interest, fees, expenses and other amounts described in the Facility Documents as such become due and payable, including the fees and disbursements of the Lender's attorneys and financial advisors, all to the extent provided in the Cash Management Advance Agreement and the other Facility Documents.

3. *Amount.* The Lender is hereby authorized to make (in cash or other immediately available funds), and the Borrower is hereby authorized to request and obtain, a single advance of credit up to the principal amount of one hundred fifteen million dollars ($115,000,000). The advance shall constitute a debit to the Borrower's inter-company account with the Lender maintained as part of the cash management operations of the Borrower and its subsidiaries<

The Lender may withdraw funds from one or more Restricted Accounts (as defined in the Corrected Appointment Order) to make the advance>.

4.    *Obligations; Mandatory Prepayments; Maturity.*  The Obligations will include the advance and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the Lender under any of the Facility Documents or hereunder, including, without limitation, all principal, accrued interest, costs, fees, expenses, indemnifications and other amounts under the Facility Documents.  The Obligations must be prepaid to the extent of the Debtors' subsequent receipt of cash or cash equivalents to the extent provided in the Facility Documents and in any event shall be due and payable upon the earlier to occur of March 31, 2007, and the effective date of any chapter 11 plan of the Borrower.

5.    *Postpetition Liens.*  The Lender is hereby granted pursuant to sections 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, to secure payment of the advance and other Obligations, continuing, valid, binding, enforceable, and automatically perfected postpetition security interests in and liens on (collectively, the "<u>Facility Liens</u>") any and all existing and after-acquired assets of the Debtors, including, without limitation, goods, deposit accounts, investment property, accounts, chattel paper, instruments, documents, letter of credit rights, commercial tort claims, insurance claims, supporting obligations and liens, any other contract rights or rights to payment of money, real estate interests and general intangibles (all of the foregoing assets and property, whether now owned or hereafter acquired, wherever in the world located, and all of the products and proceeds thereof, being referred to herein, collectively, as the "<u>Collateral</u>").  The Collateral shall include avoidance power claims and proceeds of any avoidance power claims arising under the Bankruptcy Code.

6.    *Priority of Facility Liens*.  The Facility Liens shall be subordinate only to any

Permitted Prior Liens (as hereinafter defined) and the Carve Out, but shall otherwise be senior in priority to all other security interests in, liens on, or claims against, any of the Collateral.  The Facility Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (a "<u>Successor Case</u>"), or upon the dismissal of any of the Chapter 11 Cases.  The Facility Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.  As used in this Order, the following terms have the meanings set forth below:

(a)     "<u>Permitted Prior Liens</u>" means pre-petition liens and security interests which are (i) valid and perfected, (ii) senior in priority to the Liens (as defined in the Lender Settlement Order), and (iii) not avoidable.  Permitted Prior Liens shall include the Liens (as defined in the Lender Settlement Order) only to the extent that the priority of the Liens is not subordinated to the Facility Liens pursuant to the terms of the Lender Settlement Order.

(b)     "<u>Carve Out</u>" means allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6).

7.     *Superpriority Claims.*     The Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases (collectively, the "<u>Superpriority Claim</u>") to secure payment of the advance and any other Obligations, contingent or otherwise, at any time owing under any of the Facility Documents or hereunder, including, without limitation, all principal, accrued interest and other amounts under the Facility Documents, (a) with priority over any and all administrative

expense claims and unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The Superpriority Claim shall be subject only to the Carve Out.

8. *Conditions Precedent; Use of Proceeds.* The Lender shall have no obligation to make the advance pursuant to the Facility Documents unless all of the conditions precedent to the making of the advance under the Facility Documents are satisfied. The Borrower shall use the proceeds of the advance only for the purpose of paying, together with other funds of the Debtors, the Payment Amount under the Lender Settlement Order.

9. *Perfection of Facility Liens.* This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Facility Liens, without the necessity of filing or recording any financing statement or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the Facility Liens or to entitle the Lender to the priorities granted herein. The Debtors may execute, and the RCM Trustee and Lender are authorized to file or record, financing statements or other instruments to evidence the Facility Liens, and the Debtors are hereby authorized and directed, promptly upon demand by the Lender, to execute and file or record any such statements or instruments as the Lender may request. Although no

such execution, filing, or recordation shall be necessary or required in order to create or perfect the Facility Liens, nevertheless, if the Lender, in its sole discretion, shall choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such liens, all such documents shall be deemed to have been filed or recorded as of the date of entry of this Order. A photocopy of this Order may, in the discretion of the Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby directed to accept such copy of this Order for filing and recording.

10.     *Events of Default.*  The occurrence of an "Event of Default" under the Cash Management Advance Agreement shall constitute an Event of Default under this Order. A list of the "Events of Default" under the Cash Management Advance Agreement is attached hereto as <u>Exhibit B</u>,

11.     *Rights and Remedies Upon Event of Default.*  Immediately upon the occurrence of an Event of Default, the Lender may declare all Obligations to be immediately due and payable. Any automatic stay otherwise applicable to the Lender is hereby modified so that after the occurrence of any Event of Default, and at any time after the Lender has given five (5) business days' prior notice of such occurrence (the "<u>Remedies Notice Period</u>") by facsimile or other writing to counsel to the Borrower, counsel to the Official Committee, counsel to the Additional Committee, and the United States Trustee, (a) the Lender shall be entitled to exercise its rights and remedies in accordance with the Facility Documents and this Order and shall be permitted to satisfy the Superpriority Claim and enforce the Facility Liens, subject to the Carve Out. Upon expiration of the Remedies Notice Period, the Lender shall be permitted to exercise all remedies set forth in the Facility Document or herein and as otherwise available at law without further

order of or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the Facility Liens or any other rights and remedies granted to the Lender pursuant to the Facility Documents or this Order.  During the Remedies Notice Period, the Borrower shall be entitled to request an emergency hearing before the Bankruptcy Court for the sole purpose of contesting whether an Event of Default has occurred.  Unless the Bankruptcy Court determines during the Remedies Notice Period that an Event of Default has not occurred, the automatic stay as to the Lender shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.

12.  *Other Modification of the Automatic Stay*.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is also hereby modified to permit (a) the Debtors to grant the Facility Liens and the Superpriority Claim, and to perform such acts as the Lender may request in its sole discretion to assure the perfection and priority of the Facility Liens and (b) the Debtors to pay, and the Lender to receive and apply to the Obligations, the amounts required to be paid under the Facility Documents.

13.  *Nature of Payments and Prepayments<; Credit of Payments to Restricted Accounts>*.  All payments by the Debtors under the Facility Documents and this Order shall be free of any defense or claim in the nature of recoupment or setoff and will not otherwise be subject to reduction on account of any claim or defense<.  Any payment of all or any portion of the advance under the Facility funded by the Lender from a Restricted Account (as defined in the Corrected Appointment Order), and any interest paid thereon, shall be credited by the Lender to such Restricted Account>.

14.  *Section 506(c); No Marshaling:*  Neither the Debtors nor any other party in

interest shall assert a claim under section 506(c) of the Bankruptcy Code for any costs or expenses incurred in connection with the preservation, protection, disposition, or enhancement of, or realization by the Lender upon, the Collateral. The Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

15. *Survival.* The terms and provisions of this Order, and any actions taken pursuant hereto shall survive the entry of any court order (a) confirming a chapter 11 plan of any of the Debtors, and the Obligations shall not be discharged by the entry of any such order, each Debtor having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code with respect to the Obligations; (b) converting any of the Chapter 11 Cases into a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases, or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases. The terms and provisions of this Order concerning the Lender's claims, liens, security interests, and other protections granted pursuant to this Order, including such terms and provisions concerning the Obligations, the Facility Liens and the Superpriority Claim, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of any Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided herein, until, in respect of the Facility, all the Obligations have been indefeasibly paid in full. The terms and provisions concerning the indemnification of the RCM Trustee and the Lender shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the Cash Management Advance Agreement or the indefeasible repayment of the Obligations.

16. *Good Faith under Sections 363(m) and 364(e) of the Bankruptcy Code.* The

RCM Trustee and the Lender have acted in good faith in connection with this Order and their reliance on the provisions of this Order is in good faith. Accordingly, if any provision of this Order is hereafter modified, vacated, or stayed by subsequent order of this Court or any other court for any reason, the RCM Trustee and the Lender are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code.

17.    *Proofs of Claim.*  The Lender will not be required to file proofs of administrative claim in any of the Chapter 11 Cases, and any order entered by the Court in relation to the establishment of an administrative bar date in any of the Chapter 11 Cases shall not apply to the Lender.

18.    *No Modification of Order.*  The Debtors shall not seek or consent to, directly or indirectly, without the prior written consent of the Lender, (a) any modification, stay, vacatur or amendment to this Order; (b) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, equal or superior to the Superpriority Claim, other than the Carve Out; or (c) any lien on any of the Collateral with priority equal or superior to the Facility Liens, except for Permitted Prior Liens or as specifically provided in the Facility Documents.

19.    *Indemnification.*  The Debtors shall indemnify and hold the RCM Trustee and the Lender and their respective directors, agents, officers, successors and assigns, and professional advisors harmless from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party by reason of or

resulting from the Facility, the Cash Management Advance Agreement or the other Facility Documents, the transactions contemplated hereby or any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any of such indemnified persons is a party thereto, except to the extent resulting from the gross negligence or willful misconduct of the indemnified party. In all such litigation, or the preparation therefor, the RCM Trustee and the Lender shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Debtors agree to pay promptly the reasonable fees and expenses of such counsel.

20.     *Order Controls.*  To the extent any terms and conditions of any of the Facility Documents are in conflict with the terms and conditions of this Order, the provisions of this Order shall control.

21.     *Failure to Seek Relief.*  The Lender's failure to seek relief or otherwise exercise its or their rights and remedies under the Facility Documents, the documents related thereto, or this Order shall not constitute a waiver of any of the Lender's rights hereunder, thereunder or otherwise.

22.     *Amendments to Facility.*  The Cash Management Advance Agreement or any other Facility Document may from time to time be amended by the parties thereto without notice or a hearing if (a) the amendment is beneficial to the Debtors or is not prejudicial in any material respect to the rights of third parties, (b) a copy of the amendment is provided to the Official Committee, the Additional Committee and the United States Trustee, and (c) the amendment is filed with the Court.

23.     *Effect of Order.*  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  This Order shall be effective immediately upon entry as a final order for purposes of 28 U.S.C. § 157, and its effectiveness shall not be stayed pursuant to

Bankruptcy Rule 6004(g). The terms and provisions of this Order shall valid and binding upon the Debtors, the RCM Trustee, the Lender, all other creditors of any of the Debtors, Official Committee, the Additional Committee or any other court appointed committee appointed in the Chapter 11 Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases or in any Successor Cases as a legal representative of the Debtors' estates from and after execution of this Order by the Court. This Order does not modify the restrictions set forth in paragraph 13 of the Cash Management Order to the extent that the restrictions remain applicable after taking into account any orders and rulings of the Court entered or made since the entry of the Cash Management Order.

24. *Retention of Jurisdiction*. The Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: New York, New York
_____ __, 2006

_____
UNITED STATES BANKRUPTCY JUDGE

**(New Refco Group Ltd. LLC Subsidiary Guarantors)**

Bersec International LLC
Kroeck & Associates LLC
Lind-Waldock Securities, LLC
Marshall Metals, LLC
Refco Administration, LLC
Refco Capital LLC
Refco Capital Holdings, LLC
Refco Capital Management, LLC
Refco Capital Trading LLC
Refco Financial, LLC
Refco Fixed Assets Management, LLC
Refco F/X Associates, LLC
Refco Global Capital Management LLC
Refco Global Futures, LLC
Refco Global Holdings, LLC
Refco Information Services, LLC
Refco Managed Futures, LLC
Refco Mortgage Securities, LLC
Refco Regulated Companies, LLC
Summit Management, (Newco) LLC
Westminster-Refco Management LLC